UNITED STATES DFISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION



DUSTIN J. HIGGS,
              Petitioer,

   V.

TJ WATSON, WARDEN, FCC, TERRE HAUTE
              Respondent,

Capital Proceeding
Pro⋅Se Petitioner

2:20-cv-0665-JPH-DLP

---

## MOTION TO RETURN TO FILE A MOTION , PURSUANT 28 U.S.C. 2241

---

     Petitioer, Dutsin J. Higgs (Higgs), pro se, moves to this Court to file motion, pursuant 28 U.S.C. 2241; challenging the unconstitutionality of Higgs's confinement, custody, charge, conviction, and continued execution of Higgs's unconstitutional sentence as a prisoner on Federal Death Row. Where said confinement, custody, charges, conviction, and continued execution of Higgs unconstitutional sentence is in clear violation of the Fifth Amendment's demand that "[n]o person", including Higgs, "shall not be held to answer for a Capital [] crime, 'unless'" on a presentment, or an indictment of a grand jury. ""(quoting U.S. Const. amend V)(emphasis added), and the sixth Amendment's demand that Higgs must "be informed of the nature and cause of the allegation(s) " against him. (quoting U.S. Const. amend VI). Thus, requiring Higgs immediate or a speedy release. Samirah v. O'connell, 335 F.3d 545, 549 (7th Cir. 2003). See. Gamble v. United States, 204 L.Ed 322, 350 (2019) (Finding there's "no legitimate reason why a Court may privilege a demonstrably erroneous interpretation of the constitution 'over the constitution itself.'") (emphasis added) (Thomas J., concurring, writing, separately).

     Also, Higgs's petition. within the structure of the claim, challenges the unconstitutionality of Higgs's confinement, custody, charges, conviction, and the continous execution of Higgs's unconstitutional sentence because the omitted statutory aggravation.

aggravators were legally relevant and used agaginst Higgs and used against Higgs at trial to constructively amend Higgs's indictment to broaden the possible basis for conviction from that which appeared in Higgs's indictment. See United States v. Leichenam, 948 F.3d 370, 379 (7th Cir. 1991) (" The possible basis for conviction are limited to those contained in the indictment...New ones may not be added without resubmitting, the indictment to a grand jury whether they are added literally, by formal amendment to the indictment or constructively- 'by proof at trial of a crime not clearly and fully charged'... which would allow a conviction [and snetence] on grounds not charged by the grand jury.") (emphasis added); See also, Stirone v. United States, 361 U.S. 212, 218-19 (1960) (" The right to have the grand Jury make the change on its own judgment is a substantial right' which cannot be taken away with without Court amendment'...[and] 'because of the Court's admission of evidence and under its charge this might have been the basis upon which the trial jury convictedpetitioer. 'If so, he was convicted on -charge the grand  jury never made against him. 'This was fatal error'") (emphasis added).

Thus, making Higgs's custody, confinement, and the continued execution of Higgs unconstitutional sentence a '"violation of the constitution or/laws of... The United States". Samirah v. O'Connell, 335 F.3d 545, 549 *7th Cir, 2003). and requires an immediate and ) or speedier release. Or, "a new trial ' should be granted " as a matter of right. "Weaver v. Massachusetts 137 S.Ct. 1899, 1914 (2017).

## BACKGROUND

## STATEMENT OF JURISDICTION AND SHOW OF CAUSE

Higgs has sought postconviction relief in this Court under 28 U.S.c. 2241, where Congress has created within 2255 a narrow exception to the "general rule" that requires a petitioner to bring a collatreal attack under 2255- the Saving Clause.

Under the savings clause, a petitioner can seek a writ of habeas corpus through 2241 if the petitioner can show "that the remedy by [2255] motion is inadequate or ineffective to test the legality of his detention. ' 28 U.S.C. 2255 (e), where the sentence was imposed, a 2241 motion must be brought in thedistrict where the prisoner is in custody. Webster v. Daniels, 784 F.3d 1123, 1124 (7th Cir. 2015) (en banc). And Higgs submits to this Court's 2241 Jurisdiction, as a prisoner on Federal Death row, in Terre Haute, Indiana.

A Federal petitioner may seek relief under 2241 "[o]nly in rare circumstances where 2255 is inadequate or ineffcetive to test the legality of the prisoner's detention .... "Light v. Caraway, 761 F.3d 809, 812 (7th Cir. 2014). Where 2255 is inadequate or ineffective as applied to specific case only when there is " some kind of structural problem with section 2255. " Webster, 784 F.3d at 1136.

A structural problem with 2255 requires "something more than a lack of success with a section 2255 motion." Id. It must "foreclose[] even 'one round of effective collateral review,' [on the issue] unrelated to the petitioner's own mistakes." Poe v. lariva, 834 f.3d 770, 773 )7th Cir. 2016) (emphasis added). And 2255 is inadequate or ineffective where the Court finds that the petitioner did not have a " reasonable opportunity [in a prior 2255 proceedings] to obtain 'a reiable judicial determination of the findamental legality of his conviction and sentence.'" Chazen v. Marske, 938 F.3d 851, 856 (7th Cir. 2019) (altenation in original) (emphasis added).

The seventh Circuit has found a structural problem with 2255 in three instances:

1). In re Davenport, 147 F.3d 605, 610 (7th Cir. 1998).

2). Garza v. Lappin,  253 F.3d 918, 920 (7th Cir 2001).

3). Webster, 784 F.3d at 1139 (when the claim "would reveal that constitution categorically prohibits a certain penalty.'")

Higgs principle relies on Webster to show cause for why this Court should exercise its jurisdiction under 2241's Savings Clause, where for the first time, the Seventh Circuit would conclude that a constitutional claim could pass the threshold of the savings Clause. Webster challenged that his death sentence was barred by Atkins v. Virginia, 536 U.S. 304 (2002), where the Eighth Amendment forbids the execution of a person with an intellectual disability. And although Webster raised an Atkins, claim in his 2255 proceedings, he sought to present "newly discovered evidence" to support that claim in his 2241 petition. Webster, 784 F.3d at 1125.

The Seventh Circuit found that "there is no categorical bar against resort to section 2241 in cases where new evidence would reveal that the Constitution categorically prohibits a certain penalty.'" Id. at 1139 (emphasis added). Where the structural problem identified by the Seventh Circuit was based on at least (2) concerns. First, the Court found 2255(h)(1) only allows a second or sucessive 2255 motion if newly discovered evidence meets a certain threshold to demonstrate that the petitioner is not guilty of the offense. Id. at 1134-35, 1138. It does not allow for such motions if the petitioner is ineligible to receive his "sentence." Id. Second, the Court found that Congress could not have contemplates whether claims of categorical ineligibility for the death penalty should be permitted in second or successive 2255 motions because the relevant cases - Atkins, and Roper v. Simmons, 543 U.S. 551 (2005) had not been decided when 2255 was enacted. Webster, 784 F.3d at 1138 ("]T]he fact that the Supreme Court had not yet decided Atkins, and Roper at the time AEDPA was passed 'supports the conclusion that the narrow set of cases presenting issues of constitutional ineligibilty for execution is another lacuna in the statute.'") (emphasis added) Id. at 1139 (Webster's case, the problem is that the Supreme Court has now established that 'the constitution itself forbids the execution of certain people': those who satify the criteria for intellectual disability that the Court has established, and those who were below the age of 18 why they committed the crime.'')

HIGGS"S PETITION CHALLENGES THE LEGALITY OF HIS
DETENTION AND THE EXECUTION OF HIGGS"S UNCONSTITUTIONAL
SENTENCE.

This Court has held that "[a] motion seeking relief on grounds concerning the execution but not validity of the conviction and sentence... may not be brought under 2255 and therefore falls into the domain of 2241 Valona v. United States, 138 F.3d 693, 694, (7th Cir. 1998).

Higgs's claim clearly challenge the legality of Higgs's detention and the execution of Higgs's unconstitutional senetnce, where Higgs invokes the Fifth Amendments demand upon both prosecutors and courts that "[n]o person", including Higgs, "shall be 'held to answer for a capital [] crime, 'Unless on a presnetment, or an indictment of a Grand jury." (quoting U.S. Const. amend. V.) (emphasis added). When "held to naswer for", in the context of how Higgs presnets his claim in his petition, can only be attributed to challenging the legality of Higgs's detention and the execution of Higgs's unconstitutional sentence; aftre Higgs's trial, and after Higgs's conviction.

The District in which Higgs was sentence no longer has the jurisdiction to deter-mine whether the duration, nor the continous execution of Higgs's sentence is unlawful unconstitutional. Then, Higgs is incustody within this Court's sole jurisdiction, where only this Court can determine, after Higgs's trial, after Higgs's conviction, and after the fourth Circuit has sentenced Higgs to serve the duration of his time and the execution of his sentence here; 7th cir., whether the duration of Higgs's time and the sentences that Higgs's custodians have been tasked to carry out allow Higgs's "custodians" to "inflict" upon Higgs "an unconstitutional sentence." Webster, F.3d at. Which in Higgs's case, the fifth Amendment clearly prohibits, because "unless on a presentment, or "an indictment of a Grand Jury", then "[n]o person", including Higgs, "shall 'be held to answer for a capital [] crime'"; the duration of time, nor the execution of a sentence that would spawn from such a violation.

Higgs's claims are those that clearly challenge the duration of his time and the execution of Higgs continuos unconstitutional sentence.

## THE STRUCTURAL PROBLEMS WITH 2255
## FOR HIGGS

The structural problem identified by the seventh Circuit in Webster was based on (2) concerns that Higgs now also relies on. First, 2255(h) did not and does not permits Higgs to file the claim set forth in his 2241 petition, because "issues that were raised and decided on direct appeal 'cannot be relitigated in a 2255 motion." See. ( United States v. Wiley, 245 F.3d, 245 F.3d 750, 752 (8th Cir. 2001).[1] Which "foreclosed even one round of 'effective collateral review', unrelated to [Higgs's own mistakes." Poe, F.3d at 773 (emphasis added). Then 2255(h)(1) only allows a second or successive 2255 motion if newly discovered evidence meets a certain threshold to demonstrate that the petitioner is not guilty of the "offense." Id. at 1134-35, 1138. But it does not allow for such motions if the petitioners is ineligible to receive his "sentence".

Congress would not have contemplated whether claims of categorical ineligibility for the death penalty would be necessary or should be permitted in a second or successive 2255 motion, because the day would come when both prosecutors and Courts would decide to ignore the clear demand by Fifth Amendment upon them that "[n]o person", including Higgs, "shall be held to answer for a capital [] crime, unless on a presentment, or an indictment of a grand jury." Where specifically in Higgs's case  both the prosecutor and the Fourth Circuit have disregarded that Fifth Amendment, stripped Higgs's grand jury of their Constitutional duty and authority, stepped outside of the Fourth Circuit and the prosecutor's jurisdiction and into the of Higgs's grand jury by speculating that "'if [Higgs's] grand jury had been asked to charge" the aggravating factors that the grand jury would have indicted for capital murder, they don't know that.

Congress could not have contemplated whether claims of categorical ineligible for the death penalty would be necessary or should be permitted in second or successive 2255 motions because prosecutors and courts would not only ignore what the Constitution demends, and prohibits with those demands. But that such actions should be permitted in a second or successive 2255 motion because prosecutors and Courts would also ignore precedent case law, reaffirming the Constutuion, the Constitutional role of grand jury,

the grand jury's jurisdiction, and the Constitutional role of the grand jury over those of the prosecutor and the courts; see <u>Stirone v. United States,</u> 361 U.S. 212, 215-216 (1960); <u>Russell v. United States,</u> 369 U.S. 749, 770 (      ); <u>ex parte Bain,</u> 121, U.S. 1, 10 (1887); <u>Costello v. United States,</u> 350 U.s. 359 (1956) <u>United States v. Dionisio,</u> 410 U.S. 1, 16-17 (1973); and <u>Vasques v. Hillery,</u> 474 U.S. 254,263 (1986), which were decided before the "AEDPA was passed[,] [and] supports the conclusion that the narrow set of cases presenting issues of Constitutional ineligibility for execution is another lacuna in the statute. "<u>Webster,</u> 784 F.3d at 1138.

> <u>2255 IS INADEQUATE OR INEFFECTIVE BECAUSE</u>
> <u>HIGGS HASN"T HAS A REASONABLE OPPORTUNITY</u>
> <u>TO OBTAIN "A RELIABLE JUDICIAL DETERMINATION</u>
> <u>OF THE FUNDAMENTAL LEGALITY OF HIS CONVICTION</u>
> <u>AND SENTENCE"</u>

Higgs agrees with the Court, where in its Order it states that "[a] federal prisoner is not entitled to file an unlimited number of 2241 petitioners." Where the Court went further to state, "[o]n the contrary,

> "No circuit or district judge shall be required to enterain
> an application for a writ of habeas corpus to inquire into the
> detention of a person pursuant to a judgment of a court of the
> United States if it appears that the legality of such deten-
> ion has been determined by a judge or Court of the United States
> on a prior application for a writ of habeas corpus, except as
> provided in section 2255." (quoting 28 U.S.C. 224 (a)0.

Higgs ask this Court to take into consideration that the AEDPA "stops short of imposing a complete bar on federal court 'relitigation of claims already rejected'", but requires that the petitioner show that ruling "was so lacking in justification that there was an error well understood and comprehended in "existing law' beyond any possibilty of fairminded agreement." <u>Harrington v. Richter,</u>562 U.S. 86, 131 (2011) (emphasis added). And "AEDPA" established that another court may grant habeas relief on a claim adjudicated on the merits only if that adjudication "(10 reuslted in decision that was so contrary to, or involved an unreasonbale application of, clearly established Federal law, as determined by the Supreme Court of the United States; (2) resulted in a decision that was based on an unreasonable determination of the facts

in light of the evidence presented."

As Higgs poimts out in his arugment, the claims presented do not fall under harmless error analysis, where Higgs shows exactly how, under Fulminate, that the admitted error and/or defect is structural, and how the "defect affect[ed] the frame-work within which" Higgs's "trial proceed[ed]. rather than simply an error in the trial process itself." Fulminante, 499 U.S. at 309-10. See generally

Secondly, Higgs points out in his agrument, that both the Government and the Fourth Circuit concede that Higgs's indictment, failed to charges the mandatory statutory aggravating factors and capital mens rea; as required for the imposition of the death penalty chrages, proceedings, and the option of the death penalty to be used against either Higgs. See. United States, 353 F.3d 281, 301-02 (4th Cir. 2003) (" Accordingly, we hold that the "multiple killings'" aggravator cannot act as the sole statuory aggrvator which rendered these murders death-eligible'"); see Higgs, 353 F. F.3d at 304-5 (Court pointing out that "[e]ven assuming that the indictment was defi defective " because it failed to allege the requisiate statutory aggrvating factors or factor...""") (emphasis added). Because "[t]he prosecutor 'did not ask the grand jury to charge the statutory aggrvating factor[s]." Id at762. Which makes both the continuous duration and execution of Higgs's sentences unconstitutional, and both immune from being capital in nature and effect; pursuant the Fifth Amendment's demend upon both prosecutor's and courts that "[n]o person", including Higgs "shall be held to answer for a capital [] crime, 'unless' on a presentment, or 'an indictment of a grand jury.'" (quoting U.S. Const. amend. V) )emphasis added). Thus, putting the Fourth Circuit's finding and holding in clear conflict with the Constitution itself; what it demands, and what it prohibits.

Even though Higgs points out in his argument, that the Fourth Circuit acknow-ledges that " it is clear that Higgs's indictment suffers from a Fifth Amendment defect", Id. It still made an unreasonable determination of the law that "was so lacking in justification that there was an error well understood and comprehended in

[the Constitution and] in existing law beyond any possibilty of fairmined agreement",
Richter, 562 U.S. at 131, by holding the defect and violation was "harmless". Where
the Fourth Circuit would base its ruling, not on any law, nor the Constitution itself.
The Fourth Circuit's holding would be based solely on the Fourth Circuit assuming that
""if [Higgs's ] grand jury had been asked 'to 'charge required aggravator factors",
that the Fourth Circuit can guarantee that Higgs's grand jury "would have done so."
Higgs,353 F.3d at 304-05. This assuming process adopted by the Fourth Circuit is clearly
in conflict with the Supreme Court and the Constitution itself.

The Fifth Amendmnet itself doesn't ask, but demands that "[m]O person", including
Higgs, "shall 'be held to answer for a capital [] crime', unless on a presentment, 'or
an indictment of a grand jury.'' (quoting U.S. Const. Amend.V.). In no way does such
straight forward language suggest in the least that what the Fifth Amendment demands
would allow either a prosecutor nor the eighth Circuit to speculate, guess, or infer
that Higgs should "be held to answer for a capital []iCrime.'" without "an indictment
of a Grand Jury." And there's clearly 'no legitimate reason whya court may privilege a
demonstrably erroneous interpretation of the Constitution 'Over itself.'" Gamble, 204
L.ed 2d at 350 (Thomas, J., concurring, writing seperately) (emphasis added).

There are times when words within the Constitution and within its Amendments
will be in aid of a Court's interpretation and /or claraification when trying to apply
the Constitution and its Amendments fairly and correctly. But in this case, "unless",
in the context of how it's proceeded by "[n]o person" including Higgs, "shall be held
to answer", makes the Clause remarkably clear inits demand, and even more clear in what
it ppohibits if those demands aren't followed. That "unless' the grand Jury gives its
authority "to charge a greater offense or lesser offense; numerous counts or a single
count; and perhaps most significant of all, a capital offense or a noncapital offense..
"vasques, 474 U.S. at 263. Then "no person", including Higgs, "shall 'be held to answer
for " a conviction, the duration of time, the execution of that time, nor the execution
of any punishment that would spawn from a violation of such a straight-forwrad demand.
Because such a violation would

Because such a violation would be unconstitutional and fundamentally unfair to any defendant, and the "effects of the error are simply too hard to measure." Weaver, 137 S.Ct. at 1908.

Higgs points out in his petition, the Fourth Circuit's holding proves that the Fourth Circuit has stepped out of their respected jurisdiction and into that of Higgs' grand jury. Where it's well understood that Higgs's grand jury belongs to no branch of government, that Higgs's grand jury is a "constitutional fixture 'inits own right,'" United States v. Chanen. 549 F.2d 1306, 1312 (Ca9) (quoting Nixon v. Sirica, 159 U.S. App. DC. 58, 70, n. 54 (1973)), (emphasis added), that Higgs's grand jury "presupposes an investigative body 'acting independently ofeither prosecuting attorney or judge'", Dionisio, 410 U.S. at 61-17 (quoting Stirone, 361 U.S. at 2180 (emphasis added), that "'no judge" presides to monitor its proceedings, it "deliberates in secret', and 'may determine alone the course of its inquiry'", Calndra, 414 U.S. at 343 (emphasis added), and that there is nothing that gives a prosecutor nor judges the "authority for looking into and revising the judgement of the grand jury upon the evidence. '" Costello, 350 U.S. at 362- 63 (emphasis added). Because "[i]f it lies within the provice of a court to change the charging part of an indictment "to suit its own notins of what it ought to have been,' or 'what the garnd jury **would have proably have made it if their attention had been called to suggested changes'**, the great importance which the common law attaches to an indictment 'by a grand jury', as a prerequisite to a prisoner's trial for a crime, and without which the Constitution says 'no person shall be held to answer,' may be frittered away until its value is almost destroyed." ex parte Bain, 121 U.S. at 10 (emphasis added ).

Higgs points out in his argument, with the Fourth Ciruit holding Higgs's claim "harmless' Higgs,          , and then restings it's holding of the fact that the statutory aggrvating factors were "vaguely" present in the Government's Notice of Intent To Seek The Death Penalty ("Notice") and not in the indictment, shows the unreasonableness of the holding on its face.

This is clearly not a state case. This is a Federalcase and the government sought to seek the Fedral Penalty against Higgs. Where as a Federal case, when seeking the death penalty, Higgs was and still is afford the protection of the fifth Aemndment demand that "[n]o person", including Higgs. "shall "be held to answer for a capital crime, unless on a presentment, or "an indictment of a grand jury.'" (quoting U.S. Const. Amend. VI). And the fact "[t]hat the Constitution outranks other sources of law is inherent in its nature." Gamble, 139 S.Ct. 1960, ( Thomas, J., concurring, writing seperately); See Keavan, The Three Tiers Of Federal Law, 100NW. U.L. Rev. 1479, 1499 n. 99 (2006) (arguing that" [i]t is necessary for the Constitution to specify that it is superior...").

AEDPA established that another court may grant habeas relief on a claim adjudicated on the merits. Higgs's agrument and the claim therein shows cause for why this court should entertain this petition and grant relief sought. Because a sthe Supreme Court Justice Thomas would rightfully point out in Gamble, that "judicial decision may incorrectly interpret the law, and when they do  subsequent courts "must confront the question when to depart from them." Thomas would go on to state that "[a] demonstratably incorrect judicial decision, by contrast, is tantamount to making law', and adherring to it both disregards the supremacy of the Constitution and perpetuates a usurpation of the legislative power." 139 S.Ct at 1984-85. And Justice Thomas, (Quoting 1 J. Kent, Commentaries on American Law, 439 (1826) would state that "[i]f... any solemnly adjuged case can be shown to be founded in error, it is not doubt the right 'and the duty of judges who have a similiar case before them, to correct the error." Hi. Higgs's claim presents such an error in need of correction that the Constitution contradicts.

<u>HIGGS IS CATEGORICALLY INELIGIBLE</u>
<u>TO RECEIVE THE DEATH PENALTY</u>

Higgs is categorically ineligible to receive the death penalty.  Unlike <u>Webster</u>, where the Seventh Circuit held that "the problem is that the Supreme Court 'has now

established that 'the Constitution' itself forbids the execution of certain...'" Id. at
1149. (emphasis added)). The Constitution has and continue to establishes  that "the
Constitution itself forbids the execution of certain people" Id. those who, "unless on
presentment, or indictment be a grand jury"..."shall [not] 'be held to answer for a
capital ]]crime.'"

Higgs argument points out, the proper analysis that should've been used by the
Fourth Circuit, should've been the Constitution itself first, and then the Supreme
Court's holding in Stirone Where in Stirone, tyhe Supreme Court held taht "the right
to have a grand jury 'make the charge on its own judgement is a substantial right'
which cannot be taken away with, or without court amendment", and because 'teh Court's
admission of evidence' and under its charge this 'might have been the basis upon which
the jury never made against him.' This was a fatal error.' 361 U.S. at 218-19 (
emphasis added). And "[d]e rivation of such a basic right 'is far too serious' to be
treated as nothing more than a variance and "then dismissed as harmless error.'" 361
U.S. at 217 (emphasis added).

In leichtnam, teh Seventh Circuit has echoed the Supreme Court in Stirone when it
held thata charge was improperly amended where the government charged.

Neither the Constitution itself, nor any Supreme Court precedent case law supports
the Fourth Circuit's interpretation of the Fifth Amendment's demand upon both
prosecutors where the seventh Circuit acknowledges "that the Supreme Court "has now
established that the Constitution itself forbids the execution of certain people".
Constitution, in the 1800's "set forth the demand that [n]o person shall 'be held to
answer for a capital [] crime'", and established the criteria that 'unless on a present-
ment, or an indictment of a Grand Jury", then whatever followed was something that '
[n]o person shall be held to answer for .'"  And because the government did not obey
the Constitution's demands to make Higgs's charges, purported facts, elements, evidence,
custody, confinement, the duration of time, the execution of Higgs's sentence, and the
possibilty of punishment one that was death eligible "without a presentment   or

or indictment of a grand jury". Then Higgs clearly falls within the rare types of persons who are categroically ineligible for the death penalty". And the Constitution of the United States forbids Higgs's detention as a prisoner on Federal Death row, it forbids the continued execution of Higgs's unconstitutional sentence, and forbids Higgs from beings eligible for the death penalty.

<u>ARGUMENT</u>

III.    APPELLANT WAS CONVICTED AND SENTENCED TO DEATH IN VIOLATION OF THE FIFTH
        AMENDMENT AS THE INDICTMENT FAILED TO CHARGE THE AGGRAVATING FACTORS
        REQUIRED FOR A CAPITAL OFFENSE.

Standard of review: The legal sufficiency of an indictment is reviewed denovo. United states v. Loayza, 107 F.3d 257, 260 (4th Cir 1997).

"Much turns on the determination that a fact is an element of an offense rather than a sentencing consideration, given that elements must be charge in the indictment, submitted to a jury, and proven by the Government beyond a reasonable doubt." Jones v. United States, 526 U.S. 227, 232 (1999) (emphasis added); see also United States v. Dvais, 184 f.3d 366. 368 (4th Cir. 1999). The indictment in this case failed to charge the essential elements of the capital crime for which Higgs was charged, convicted, and sentenced to death. The indictment did not charge the aggrvating factor reuqired for a capital offense and mad eno mention of the federal death penalty statute. Higgs' capital convictions and death sentences are all invalid and violate the Fifth Amendment's grand jury protections.

From our nation's beginning, the Grand Jury has played a critical role in our criminal justice system, a s a shield, standing between the accuser and the accused, protecting the individual citizen against oppressive and undounded governemnt prosecution." United Sattes v. Hogan, 712 F.2d 757, 759 (2d Cir 19983). As the first Justice Harlan wrote,

[I]n the secrecy of the investigations by grand juries, the weak and help-less- proscribed, perhaps, because of their race, or pursued by an unreasining public clamor have found, and will continue to find, security against official oppression, the cruelty of mobs, the machinations of falsehood, and teh malevolence of private persons

the cruelty of mobs, the machinations of falsehood, and the malevolence
of private persons who would use the machinery of the law to bring ruin
their personal enemies.

Hurtado V. California, 110 U.S. 516, 554-55 (1884) (harlan, J., dissenting).

That teh Grand Jury's role as a shield" is particularly important in capital cases-

which not only expose defendants to the ulitimate penalty, but also arouse tremendous

"public clamor"- is evident from the words of the Grand Jury Clause of the Fifth

Amendment itself, which provides, in part, that "no person shall be held to answer for

a capital, or otherwise infamous crime, unless on a presentment or indictment of a

Grand Jury."

> The grand jury, like the petit jury, 'acts as a vital check against the
> wrongful exercise of power by the States and its prosecutors.' It controls
> not only the initial decision to indict, but also significant decisons
> such a s how many counts to chrage and whether to charge a greater or
> lesser crime, including the imprtant decision to charge a capital crime.

Campbell v. louisiana, 523 U.S. 392, 399 (1998) (citation omitted) (emphasis added).

See also Smith V. United states, 360 U.S. 1, 10 (1959) (capital defendant may not

waive indictment).

Higgs was indicted a grand jury, but he was not indicted by the grand jury for a

capital crime. Crimes are creatures of statute, and a  defendant may be found guilty

of a particular crime only upon a finding that he or she has met each of the essential

elements of the statute. E.G., Sullivan v. Louisiana, 508 U.S. 275, 277-278 (1993).

In order for the grand jury to fulfill its role as shield," an indictment must do more

than merely identify the crime with which the edfendant is charged. It must evidence

the grand jury's conclusion that the defendant  has committed each of the elelments

that must be porved before the defendnat may sffer the punishment prescribed for that

crime. Jones, 523 U.S. at 232-234.

Footnote   Higgs raised this issue in his pretrial motions (Dkt. No. 113,), Motion

To Preclude The Death Penalty, at pp. 5051.

crime. Jones, 526 U.S. at 232-234.

The indictment in this case fails. It is absolutely silent with regard to critcal elements of the offense for which Higgs was convicted and sentenced to death under Counts 1, 2, 4, 6, 7, 9, 11, 12, and 14,. The indictment makes no mention of the statutory aggravating facors conatined in 18 U.S.c. 3592(c) Or any of the additional, non-statutory aggravating factors relied on by the goevernment at trial. Section 3591 requires a jury determination on the 3592 factors in order to convert a simple murder offense into a capital offense.

The Supreme Court's capital punishment jurisprudence since Furman v. Georgia, 408 U.S. 238 (1972), and Gregg v. Georgia, 428 U.S. 153 (1976), has drawn a clear distinction between simple murder and capital murder. Conviction for murder may not, by itself, subject a defendant to the death penalty, absent proof of additional facts that narrow the class of murders eligible for the death penalty. E.G., Spaziano v. Florida, 468 U.S. 447, 460 (1984) (capital punishment system must "rationally distinguish between those [murderers] for whom death is an apprpriate sanction and those for whom it is not."). Aggravating factors" narrow the class of persons eligible for the death penalty and ... jsutify the impostition of a more severe sentence on the defendant compared to others found guilty of muredri" Zant V. Stephens, 462 U.S. 862, 877 (1983).

Although Higgs was indicted by grand jury on various violations of 18 U.S.C. 111 111 and 1201 (a)(2), standing alone the indictment is insufficient to charge him with capital murder. The grand jury did not make findings on the critical issue of whether Higgs should be held to answer with his life. Infact, the indictment contains no mention of 18 U.S.C 3591, et seq., the controlling statute.

The Federal Death Penalty Act of 1994 vests the prosecutor rather than the grand jury with the critical responsibilty of identifying the elements (the aggravating factors) that convert murders charged in anindictment into capital offenses for which a defendant should answer with his life. In order for 18 U.S.C. 3591, et seq., to be a vaik

a valid death penalty statute, it must provide that a grand jury decide whether the
aggravating factors are sufficiently estbalished to proceed with a capital prosecution.
having failed to do so, the 1994 sttaute is unconstitutional under the Fifth Amendment
indictment clause, and is also in conflict with the Eighth Amendment as it permits the
imposition of death in an arbitray or capricious manner.

In Jones v. United States, 526 U.S. 227 (1999), the Supreme Court considered
the question of what "elements" of a criminal statute must be specified in teh indict-
ment. The edfendant in taht case was convicted of carjacking under 18 U.S.C. 2119,
which provided that:

> Whoever, [possessing a fireman[ ... takes a motor vehicle....from
> the person or the presence of another by force and violence or by
> intimidation, or attempts to do so, shall-
>
> (i)  be fined undet this title or imprisoned not more than 15 years,
>      or both,
>
> (ii) if serious bodily injury ...results, be fined under this title or
>      imprisoned not more than 25 years, or both, and
>
> (iii) If death results, be fined under this title, or imprisoned for
>       any number of years up to life, or both..

The indictment made no reference to 'serious bodily injury," but after Jones was
convicted, teh governemnt osught a sentence of 25 years, based on injuries suffered
by the vcitim. The defendant argued taht "serious bdoily injury" was an element of the
crime for which the government sought the extended sentence, and therefore was requied
to be specified in the indictment and proved to teh jury. The distirct court held
that "serious bodily injury" was not an element of the crime but a sentencing factor,"
which need neither be charged nor proved to the jury.

The Suprmem Court disagreed. The court noted that the carjacking statute:

> [a]t first glance has a look to it suggesting that the numbered sub-
> sections are only sentencing provisions. It begins with a principal pargraph listing
> a series of obvious elements "possessions of a firearm, taking a motor vehcle,
> connection with interstate commerce, and so on). That paragraph comes close to
> standing on its own, followed by sentencing provisions, the  first of which, sub-
> section (l). certainly adds no further elements.

Id. at 233.  In order to avoid "serious constitutional questions" that would otherwise
be raised, the Court concluded that despite its structure- which suggested that sentence
"serious bodily injury" might be a "sentencing factor" not required to be charged in
the indictment pr proved beyond a reasonable doubt to the jury- 2119 should be read as
establishing "three separate offenses by the specification of distinct elements, each
of which must be charged by indictment, proven beyond a reasonable doubt, and submitted
to a jury for its verdict. " Id. at 252. Since the element of "serious bodily injury"
had not been charged in the indictment or proven to the jury beyond a reasonable doubt,
the Court reversed Jones' conviction under the statute.

Just as the Court found that 18 U.S.C. 2119 creates three separate carjacking
offenses, with different penalties and differnt elements that must be proved, 18 U.S.C
1111 and 1201 established separate murder and kidnapping offenses-capital and non-
capital- and require for conviction of capital murder or kidnapping, that elements in
addition to those requied for conviction of the non-capital offenses (i.e., the
aggravatoring factors) be charged in the indictment and found by the jury beyond a
reasonable doubt. In other words, conviction of the charged offense alone is legally
insufficient to establish the aggravating factors required for a capital sentence.

In Apprendi v. New Jersey, 530 U.S. 466 (2000(, the Court extended the raesoning
of Jones. What had been prescribed in Jones by virtue of statutory construction was,
in fact, constitutionally mandated. In Apprendi, the defendant fired a weapon into the
home of an African-american family, allegedly because of the family's race. The
defendabt was charged in an indictment with unlawful possession of weapons, but
sentence was enhanced under New Jersey's hate crime" statute, which was enhanced under
New Jersey's "hate crime" statute , which provided for enhanced penalties where an
offense was motivated by racially motivated, and the finding on which the defendant's
sentence was enhanced was made by the judge rather than the jury, by preponderance

of the evidence rather then beyond a reasonable doubt. The Court revered:

> New Jersey threatened Apprendi with certain pains if he unlawfully
> possessed a weapon and with additional pains if he sleected his victims
> with apurpose to intimidate them because of their race. As a matter of
> simple justice, it seems obvious that the procedural safeguards designed
> to protect Apprendi from unwarranted pains should apply equally to the
> two acts that New jersey has single out for punishment.

Id. at 476.

Again, Higgs' case is indistinguishable. Each federal criminal statute dictated a sentence of up to life imprisonment or death if he committed murder or kidnapping. However, death could be imposed only if higgs committed additional acts that constituted the aggravating factors reuqired by 3592(c). Under Apprendi, the procedural safeguards designed to protect him, including the Fifth Amendment's requirement that the indictment charged every element of the crime, apply equally to the two different sets of actions punished first under the federal felony statutes and second under the federal death statute. As the Court wrote in Apprendi:

> [F]acts that expose a defendnat to a punishment greater than that
> otherwise legally prescribed [are] by definition "element" of a
> separate legal offense.

Id.at 483.   Proof of every single allegation contained in the grand jury indictment would not, without more, subject Higgs to a capital sentence. Under the statute, he could only be exposed to a greater punishment upon proof of additional facts which were not alleged in the indictment. Under Apprendi, those additional facts facts are, "by definition 'element' of a separate legal offense," which were not charged. See Apprendi, 530 U.S. at 483.

The government submitted four statutory aggrvating factors: (i) death during the commission of another crime, 3592 (c)(1) (this factor applied to the two, first degree murder offenses only); (ii) previous conviction of a violent felony involving a fireman 3592(c)(2); (iii) previous conviction for a serious federal drug offense 3592(c) (12); and (iv) and multiple killings in the same criminalepisode, 3592(c)(16). The Government also presented two nonstatutory aggravating factors, i.e., victim impact and obstruction of justice. None of these aggravating factors are charged in any count of the indictment as grounds supporting a capital charge against Higgs

as grounds supporting a capital charges against Higgs. No grand jury

determined as to any count that the elements supporting a death sentence had been

established. Moreover, the grand jury could have failed to find one or more of the

aggravating factors submitted Given that Higgs was not the triggerman in these offense

but had been indicted under a theory that he aided and abetted the actual shooter, the

grand jury could have refused to indict for capital offenses. thus, the grand jury's

role as a "shield" between the government and the accused was usurped in violation of

the Fifth Amendment.

This term the Supreme Court decided Ring v. Arizona, 122 S.Ct. 2428 (20020, and

directly applied its holding in Apprendi v. New Jersey to capital sentencing. In Ring,

the Court held that the Sixth Amendment guarentee of a right to trial by jury requires

that the aggravating circumstances required for the imposition of the death penalty

must be found by a jury, not a sentencing judge. "Capital defendants, no less than non-

capital defendants, we conclude, are entitle to a jury determination of any fact on

which the legislative conditions an increase intheir maximun punishment." Id. at 2432.

Ring had been convicted of felony murder, which was punishable death or life imprison-

ment. However, a death sentence could not be imposed unless further factual determinati

determinations were made at a sentencing hearing. Under state law, a judge not a jury,

determinedthe aggravating circumstances supporting a death sentence/

The critical question, the Court wrote in Ring, is the effeet the facutal

finding has on the defendant's sentence:

> If a state makes an increase in a defendant's authorized punishment
> contingent on the finding of a fact, that fact- no matter how the state
> labels it- must be found by a jury beyond a reasoanble doubt.
> [Apprendi], at 482-83. A defendant may not be "expose[d]... to a penalty
> exceeding teh maximun he owuld receive if punished according to the facts
> reflected in the jury verdict alone.' Id. at 483; see also id. at 499 (See
Scalia, J., concurring) ('[A]ll the facts which must exist in order to subject the
> defendant to a legally prescribed punishment must be found by the jury.').
Id. at 2435-40. The court

Id. at 2439-40. The Court rejected the state's argument that becuase the statutory maximun sentence was death, the judge imposed sentence did not exceed the statutory maximun. The Court found that a death snetence could only be imposed after additional factual findings, and these findings must be made by a jury. Thus, the aggravating circumstances "operate as 'the functional equivalent of an element of a greater offense, Apprendi, 530 U.S., at 494 n. 19' and under the Sixth Amendment must be found by a jury beyond a reasonable doubt. Id. at 2443.

Immediately following its decision in Ring, the Court granted the petition for writ of certiorari in Allen v. United States, 122 S.ct. 6253, 2654 (2002), vacting and remanding, United States v. Allen, 247 f.3d 741, 761-62 (8th cir. 2001), to the Eighth Circuit Court of Appeals for further consideration in light of Ring. Allen's petition presented the grand jury question raised in this appeal. I.E., whether the aggravating factors reuqired for a sentence of death under 18 U.S.C. 3591, et seq., are elements of a capital crime and  must be alleged in the indictment to comply with Fifth Amendment.

The Fifth Amendment guarantees that a defendant may be only tried for the offense chraged in the indictment. Substantive amendments to indictments are reversible error. See Stirone v. United States, 361 212, 217--219 (1960); United States v. Randall, 171 F.3d 195, 203 (4th Cir 1999) (constructive amendment is perse reversible error and must be corrected on appeal even when defendant did not preserve issue by ojection). A Constrcutive amendment of the indictment occurs when the evidence presented proves a crime differnet from that charged in the indictment (see Randall, at 203-204), or when the jury

---

FN:   The Suptreme Court noted taht ring case was limited to the facts . Ring had not Challenged the constitutionality of his indictment under the Fifth Amendmnet. furthermore his case did not involve any aggravating circumstances relaeted to the past convictions. Id.at n.4.

instrcutions broaden the scope of the indictment by permitting conviction for an uncharg...

charge offense (see United States v. Floresca, 38 F.3d 706, 710 (4th cir. 1994).

In Higgs' case, the existence of aggravating factors supporting a death sentence transformed na indictment that chraged no capital offenses into an indictment that charge nine capital offenses. the Court's penalty phase jury instrcutions broadened the scope of the indictment and permitted conviction for uncharge capital pffenses. tha... Thus, the evidence presented to the trial jury was used to convict Higgs of capital crime crimes never authorized by the grand jury. See Lucas v. O'dea, 179 F.3d 412, 417 (6th Cir. 1999) (constrcutive amendment because defendant indicted for intentional murder but convicted for wanton murder). Higgs' indictment never even referenced the applicable statutory death penalty provisions. furthermore, the grand jury may have beend unaware of the government's intention to seek the death penalty against Higgs. the indictment was invalid as it omttied essential elements of the offense, The subsequent constrcutive amendment of the indictment was reversed error.

Appellant's capital convictions must be reversed, and the corresponding death sentences vacted.

The Supreme Court certiorari in United States v. Resendiz-ponce, 549 U.S 102, 127 S.Ct. 782, 166 L.Ed.2d 591 (2007), to resolve this split but decided the case on other grounds. In dissent, Justice Scalia noted that he would have agreed with the Ninth Circuit and held that an indictment lacking an essential element is structural error. See id. at 116-17, 127 S.Ct. 782 (Scalia j., dissenting).

See United States v. Pennington, 2003 U.S. Dist. LEXIS 24478 No.3:01-cr-35-R, Slip op. at 3 (W.D. Ky. Feb. 21, 2003) (APPENDIX C) (granting defendant's motion to preclude imposition of the death penalty where the indictment did not allege death -qualifying s .. statutory aggravating factors or requisite mens rea, and the government did not seek a superseding indictment prior to jeopordy attaching. Notwithstanding the caknowledged mandate from the Attorney General to seek a superseding indictment "in all pending Federal Death Penalty cases" so as to include teh requisite intent and statutory aggra... a ...........

aggravators.); see also United States v. Regan, 221 F.Supp. 2d 672,675 (E,d. Va. 2002) (noting in light of Ring v. Arizona, the government filed a superseding indictment "re-alleging" espionage chrages" and including the statutory aggravating factors previously set forth "only" in the notice of intent to seek the death penalty."

Instead of seeking a superseding indictment against Higgs, the government, forewarned beforehand; first, by the Fifth and sixth Amendment's demands that [n]o person', incliding higgs, "shall be held to answer for a capital [] crime, "unless" on a[n] in indictment of a grand jury", and that Higgs must "be informed of the nature and cause of the allegation[s]" against him, (quoting U.S. Const. amend. V. and VI); and second, by Higgs's objection to the strcutural defect in Higgs's indictment before trial, would instead     to proceed forward with its case against Higgs, knowing that a violation was leading the way.

Yet, by proceeding forward with their case against Higgs, the government would constructively amend Higgs indictment; through its use of the statutory aggravating circumstances/factors that were intentionally omitted from Higgs's indictment; which in themselves contained additional and different offenses that were legally and essentially relevant when proved at trial, were not fully contained in Higgs's indictment, and as a result, trial evidence would amend the indictment by broadening the possible bases for conviction from that which appeared in the indictment's allegation, purported facts, elements, evidence, and charges. which would allow Higgs to be convicted for a criminal plan broader than, but, not included wihtin Higgs's actual indictment, and was a fatal error." See stiorne, 361 U.S. at 218-19 ("The right to have the grand jury make charges on its own judgment is a substantial right' which cannot betaken away with without court amendment....[and] 'because of the court's admission of evidence and under its chrage this "might" have been the basis upon which the trial jury convicted petitioner." If so, he was convicted on a charge the grand jury never made against him.' This was a fatal error.'") (emphasis added).

The facts presented show that higgs's custody, confinement, and the continued exer. exention of all

execution of Higgs's unconstitutional sentence, because the omitted statutory aggrvators were legally relevant, and used agaisnt Higgs at trial to constructively amend Higgs's indictment.

Mr. Higgs would like to ensure the court that they have jurisdiction to hear and address Higgs claims. The Court may grant a writ of habeas corpus to a prisoners who "is in custody in  violation of the Constitution or laws or treaties of the United States." Id. 2241(c)(3).

28 U.S.C 2255 represents "the exclusive postconviction remedy for a federal prisoner ". Purkey V. United States, 964 F.3d 603, 611 (7th Cir. 2020). Section 2255 motion involve strict procedural requirements, including a one-year staute of limitations. ID. The criteria for filing a second or sucessive Section 2255 motion are even more "Draconia "draconia": they erquire" compelling newly discovered evidence of innocence or 'a new rule of constitutional law, made retrocative to cases on collateral review by the Supreme Court." Id. (quoting 28U.S.C. 2255(h)).

Section 2255 provides, however, that a federal prisoner may file a section 2241 petition for a write of habeas corpus if it appears taht teh remedy by [Section 2255] motion is in adequate or ineffective to test the legality of his detention." 28 U.S.C 2255(e). This provision is called the savings clause," Beasson v. Marske, 926 F.3d (7th Cir. 2019), or "safety Vaule," Purkey 964 F.3d 611. Higgs has detail the reason why he believes he fix with in the savings clause and why 2255 was ineffective to address this claim.  2255 was clearly foreclose to higgs because he had raised this issue on direct appeal, and according to Fourth Circuit rules and laws, if a claim is raised on direct appeal it cannot be raised a 2255. And since that time new law has been made with and pertaing to the indictment issue that would have help Higgs gain relief on  this claim.

Mr. Higgs directs this court attent to Alleyne. In Alleyne, the Supreme Court made clear that an aggrvating fact that produced a higher sentencing range is, in fact, an  element of a new," "distinct, "and "aggravated" crime. 570 U.S. at 113 ("(T)he core crime an dthe fcat triggering the mandatory minimun sentence together constitute a new, aggravated

a new, aggravated crime..."); id. at 114-15 ("[w]hen a finding of the facts alters the legally prescribed punishment so as to aggrvate it, the fcat necessarily forms a constituent part of a new offense..."); id at 115-16 ("The essential points is that the aggravating fact produced a higher range, which, inturn, conclusively indicates that the fcat is an element of a distinct and aggravated crime.').

   Higgs may seek relief under Section 2241 because Section 2255 "does not now and has never provided an adequate avenue for testing Higgs present challenge to the legality of his sentence," See Garza, 253 F.3d at 923. At the time Higgs filed his Section 2255 motion in the District Court of greenbelt maryland, Higgs could not have invoked All alleyne because alleyne had not yet been decided. Higgs may therefore raise the claim in section 2241 petition. See Chazen v. Marske, 938 F.3d 851, 861 (7th Cir. 2019) (Seventh Circuit has "held that a petitioner seeking relief under 2241 need only show that the cas case on which he relies has not yet been decided at the time of his 2255 petition") (citing Brown v. Rios, 696 F.3d. 638, 649 (7th Cir. 2012)). In Beason v. Marske, 926 F.3d 932 (7th Cir. 2019), teh Seventh Circuit held that a section 2241 petitioner has bee been "actuall foreclosed" from raising an argument in Section 2255 proceeding, where the argument had been rejected on direct appeal and law of thecase precludes relitigation of the same issue in a collateral proceeding. Id. 937. In the Seventh Circuit's view, it did not matter that the agrument advanced on direct appeal was "a bit different" than the argument raised in the Section 2241 petition, where the general contention was the same. Id. the Seventh Circuit reasonaed that a petitioner in this situation, "[a]s a prcatical and legal matter... need a superseding development," such as an intervening judicial decision, to receive renewed consideration of the argument. Id Here, that inetrvening judicial decision is Alleyne.  Higgs should meet the jursidiction criteria to proceed on 2244l ....Higgs prays that the court will grant relief the argum

CONCLUSION

For all the reasons stated above, this Court should grant this 2241  and dismiss the indictment in this case and demad that Higgs be reindicte don this Non-Capital indictment, for gwich is schedule to be executeed.

Respectfully Submitted,

Dustin J.Higgs
Pro se petitioner
Special Confinement Unit
PO BOX 33
Terre Huate, In 47808

Pro se Petitioner