2:20-CV-665-JPH DLP

UNITED STATES DFISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

**FILED**

**12/17/2020**

**U.S. DISTRICT COURT**
SOUTHERN DISTRICT OF INDIANA
Roger A.G. Sharpe, Clerk

DUSTIN J. HIGGS,
          Petitioer,

          V.

TJ WATSON, WARDEN, FCC, TERRE HAUTE
          Respondent,

Capital Proceeding
ProSe Petitioner

_____
_____

MOTION TO RETURN TO FILE A MOTION , PURSUANT 28 U.S.C. 2241

_____
_____

Petitioer, Dutsin J. Higgs (Higgs), pro se, moves to htis Court to file
motion, pursuant 28 U.S.C. 2241; challenging the unconstitutionality of Higgs's con-
finement, custody, chnage, conviction, and continued execution of Higgs's
unconstitutional sentence as a prisoner on Federal Death Row. Where said confinement,
custody, charges, conviction, and continued execution of Higgs unconstitutional sentence
is in clear violation of the Fifth Amendment's demand that "[n]o person", including
Higgs, "shall not be held to answer for a Capital [] crime, 'unless' on a presentment,
or an indictment of a grand jury. ""(quoting U.S. Const. amend V)(emphasis added), and
the sixth Amendment's demand taht Higgs must "be informed of the nature and cause of the
allegation(s) " against him. (quoting U.S. Const. amend VI). Thus, requiring Higgs
immediate or a speedy release. Samirah v. O'connell, 335 F.3d 545, 549 (7th Cir. 2003).
See. Gamble v. United States, 204 L.Ed 322, 350 (2019) (Finding there's "no
legitimate raeson why a Court may privilege a demonstrably erroneous interpretation
of the constitution 'over the constitution itself.'") (emphasis added) (Thomas J.,
concurring, writing, separately).

Also, Higgs's petition. within the structure of the claim, challenges the
unconstitutionality of Higgs's ocnfinement, custody, charges, conviction, and the con-
tinous execution of Higgs's unconstitutional sentence because the omitted statutory
aggravator

aggravators were legally relevant and used agaginst Higgs and used against Higgs at trial to constructively amend Higgs's indictment to broaden the possible basis for conviction from thlat which appeared in Higgs's indictment. See United States v. Leichenam, 948 F.3d 370, 379 (7th Cir. 1991) (" The possible basis for conviction are limited to those contained in the indictment...New ones may not be added without resubmitting, the indictment to a grand jury whether they are added literally, by formal amendment to the indictment or constructively- 'by proof at trial of a crime not clearly and fully charged'... which would allow a conviction [and snetence] on grounds not charged by the grand jury.") (emphasis added); See also, Stirone v. United States, 361 U.S. 212, 218-19 (1960) (" The right to have the grand Jury make the change on its own judgment is a substantial right' which cannot be taken away with without Court amendment'...[and] 'because of the Court's admission of evidence and under its charge this might have been the basis upon which the trial jury convictedpetitioer. 'If so, he was convicted on ˃charge the grand  jury never made against him. 'This was fatal error'") (emphasis added).

Thus, making Higgs's custody, confinement, and the continued execution of Higgs unconstitutional sentence a  "violation of the constitution or/laws of... The United States". Samirah v. O'Connell, 335 F.3d 545, 549 ✻7th Cir, 2003). and requires an immediate and ) or speedier release. Or, "a new trial ' should be granted " as a matter of right. "Weaver v. Massachusetts 137 S.Ct. 1899, 1914 (2017).

Both the Government and the Fourth Circuit have and contine to concede that the indictment submitted to Higgs's Grany jury (APPENDIX A), by the government, "cannot be reasonably construed to charges a [single] statutory aggravating factor, [or capital mens rea] 'as required for imposition of the death penalty', [and] it is constitutionally deficient to chrage a capital offense.'" UNITED STATES V. HIGGS 353 F.3d 281, 301-02 ( 4th Cir. 2003) ("Accordingly, we hold that the ""multiple killings'" aggravator cannot act as the sole statutory aggravator which rendered these murders death-eligible,"); See also Higgs, 353 F.3d at 304-5 (Courting ointing out that "[e]ven assuming that the indictmentwar defective 'because it failed to allege the requisiate statutory aggravatin

2

## STATEMENT OF JURISDICTION AND SHOW OF CAUSE

Higgs has sought postconviction relief in this Court under 28 U.S.c. 2241, where Congress has created within 2255 a narrow exception to the "general rule" that requires a petitioner to bring a collatreal attack under 2255- the Saving Clause.

Under the savings clause, a petitioner can seek a writ of habeas corpus through 2241 if the petitioner can show "that the remedy by [2255] motion is inadequate or ineffective to test the legality of his detention. ' 28 U.S.C. 2255 (e), where the sentence was imposed, a 2241 motion must be brought in thedistrict where the prisoner is in custody. Webster v. Daniels, 784 F.3d 1123, 1124 (7th Cir. 2015) (en banc). And Higgs submits to this Court's 2241 Jurisdiction, as a prisoner on Federal Death row, in Terre Haute, Indiana.

A Federal petitioner may seek relief under 2241 "[o]nly in rare circumstances where 2255 is inadequate or ineffcetive to test the legality of the prisoner's detention .... "Light v. Caraway, 761 F.3d 809, 812 (7th Cir. 2014). Where 2255 is inadequate or ineffective as applied to specific case only when there is " some kind of structural problem with section 2255. " Webster, 784 F.3d at 1136.

A structural problem with 2255 requires "something more than a lack of success with a section 2255 motion." Id. It must "foreclose[] even 'one round of effective collateral review,' [on the issue] unrelated to the petitioner's own mistakes." Poe v. lariva, 834 f.3d 770, 773 )7th Cir. 2016) (emphasis added). And 2255 is inadequate or ineffective where the Court finds that the petitioner did not have a " reasonable opportunity [in a prior 2255 proceedings] to obtain 'a reiable judicial determination of the findamental legality of his conviction and sentence.'" Chazen v. Marske, 938 F.3d 851, 856 (7th Cir. 2019) (altenation in original) (emphasis added).

The seventh Circuit has found a structural problem with 2255 in three instances:

1). In re Davenport, 147 F.3d 605, 610 (7th Cir. 1998).

2). Garza v. Lappin,  253 F.3d 918, 920 (7th Cir 2001).

3). Webster, 784 F.3d at 1139 (when the claim "would reveal that constitution categorically prohibits a certain penalty.'")

3

Higgs principle relies on Webster to show cause for why this Court should exercise its jurisdiction ubder 2241's Savings Clause, where for the first time, the Seventh Circuit would conclude that a constitutional claim could pass the threshold of the savings Clause. Webster challenged that his death sentence was barred by Atkins v. Virginia, 536 U.S. 304 (2002), where the Eighth Amendment forbids the execution of a person with an intellectual disability. And although Webster raised am Atkins, claim in his 2255 proceedings, he sought to present "newly discovered evidence" to support that claim in his 2241 petition. Webster, 784 F.3d at 1125.

The Seventh Circuit found that "there is no categorical bar against resort to section 2241 in cases where new evidence would reveal that "the Constitution categorically prohibits a certain penalty.'" Id. at 1139 (emphasis added). Where the structural problem identified by the Seventh Circuit was based on at least (2) concerns. First, the Court found 2255(h)(1) only allows a second or sucessive 2255 motion if newly discovered evidence meets a certain threshold to demonstrate that the petitioner is not guilty of the offense. Id. at 1134-35, 1138. It does not allow for such motions if the petitioner is ineligible to receive his "sentence." Id. Second, the Court found that Congress could not have contemplates whether claims of categorical ineligibility for the death penalty should be permitted in second or successive 2255 motions because the relevant cases - Atkins, and Roper v. Simmons,  543 U.S. 551 (2005) had not been decided when 2255 was enacted. Webster,784 F.3d at 1138 ("]T]he fact that the Supreme Court had not yet decided Atkins, and Roper at the time AEDPA was passed 'supports the conclusion that the narrow set of cases presenting issues of constitutional ineligibilty for execution is another lacuna in the statute.'") (emphasis added) Id. at 1139 (Webster's case, the problem is that the Supreme Court has now established that 'the constitution itself forbids the execution of certain people': those who satify the criteria for intellectual disability that the Court has established, and those who were below the age of 18 why they committed the crime.'')

4

### HIGGS"S PETITION CHALLENGES THE LEGALITY OF HIS DETENTION AND THE EXECUTION OF HIGGS"S UNCONSTITUTIONAL SENTENCE.

This Court has held that "[a] motion seeking relief on grounds concerning the execuutioon but not validity of the conviction and sentence... may not be brought under 2255 and therefore falls into the domain of 2241 Valona v. United States, 138 F.3d 693, 694, (7th Cir. 1998).

Higgs's claim clearly challenge the legality of Higgs's detention and the execution of Higgs's unconstitutional senetnce, where Higgs invokes the Fifth Amendments demand upon both prosecutors and courts that "[n]o person", including Higgs, "shall be 'held to answer for a capital [] crime, 'Unless on a presnetment, or an indictment of a Grand jury." (quoting U.S. Const. amend. V.) (emphasis added). When "held to naswer for", in the context of how Higgs presnets his claim in his petition, can only be attributed to challenging the legality of Higgs's detention and the execution of Higgs's unconstitutional sentence; aftre Higgs's trial, and after Higgs's conviction.

The District in which Higgs was snetence no longer has the jurisdiction to deter-mine whether the duration, nor the continous execution of Higgs's sentence is unlawful unconstitutional. Then, Higgs is incustody within this Court's sole jurisdiction, where only this Court can determine, after Higgs's trial, after Higgs's conviction, and after the fourth Circuit has sentenced Higgs to serve the duration of his time and the execution of his sentence here; 7th cir., whether the duration of Higgs's time and the sentences that Higgs's custodians have been tasked to carry out allow Higgs's "custodians" to "inflict" upon Higgs "an unconstitutional sentence." Webster, F.3d at. Which in Higgs's case, the fifth Amendment clearly prohibits, because "unless on a presentment, or "an indictment of a Grand Jury", then "[n]o person", including Higgs, "shall 'be held to answer for a capital [] crime'"; the duration of time, nor the execution of a sentence that would spawn from such a violation.

Higgs's claims are those that clearly challenge the duration of his time and the execution of Higgs continuos unconstitutional sentence.

## THE STRUCTURAL PROBLEMS WITH 2255
## FOR HIGGS

The structural problem identified by the seventh Circuit in Webster was based on (2) concerns that Higgs now also relies on. First, 2255(h) did not and does not permits Higgs to file the claim set forth in his 2241 petition, because "issues that were raised and decided on direct appeal 'cannot be relitigated in a 2255 motion." See. ( United States v. Wiley, 245 F.3d, 245 F.3d 750, 752 (8th Cir. 2001). [1] Which "foreclosed even one round of 'effective collateral review', unrelated to [Higgs's own mistakes." Poe, F.3d at 773 (emphasis added). Then 2255(h)(1) only allows a second or successive 2255 motion if newly discovered evidence meets a certain threshold to demonstrate that the petitioner is not guilty of the "offense." Id. at 1134-35, 1138. But it does not allow for such motions if the petitioners is ineligible to receive his "sentence".

Congress would not have contemplated whether claims of categorical ineligibility for the death penalty would be necessary or should be permitted in a second or successive 2255 motion, because the day would come when both prosecutors and Courts would decide to ignore the clear demand by Fifth Amendment upon them that "[n]o person", including Higgs, "shall be held to answer for a capital [] crime, unless on a present-ment, or an indictment of a grand jury." Where specifically in Higgs's case, both the prosecutor and the Fourth Circuit have disregarded the Fifth Amendment, stripped Higgs's grand jury of their Constitutional duty and authority, stepped outside of the Fourth Circuit and the prosecutor's jurisdiction and into the of Higgs's grand jury by speculating that "'if [Higgs's] grand jury had been asked to charge" the aggravating factors that the grand jury would have indicted for capital murder, they don't know that.

Congress could not have contemplated whether claims of categorical ineligible for the death penalty would be necessary or should be permitted in second or successive 2255 motions because prosecutors and courts would not only ignore what the Constitution demends, and prohibits with those demands. But that such actions should be permitted in a second or successive 2255 motion because prosecutors and Courts would also ignore precedent case law, reaffirming the Constutuion, the Constitutional role of grand jury,

6

the grand jury's jurisdiction, and the Constitutional role of the grand jury over those of the prosecutor and the courts; see Stirone v. United States, 361 U.S. 212, 215-216 (1960); Russell v. United States, 369 U.S. 749, 770 (    ); ex parte Bain, 121, U.S. 1, 10 (1887); Costello v. United States, 350 U.s. 359 (1956) United States v. Dionisio, 410 U.S. 1, 16-17 (1973); and Vasques v. Hillery, 474 U.S. 254,263 (1986), which were decided before the "AEDPA was passed[,] [and] supports the conclusion that the narrow set of cases presenting issues of Constitutional ineligibility for execution is another lacuna in the statute. "Webster, 784 F.3d at 1138.

2255 IS INADEQUATE OR INEFFECTIVE BECAUSE
HIGGS HASN"T HAS A REASONABLE OPPORTUNITY
TO OBTAIN "A RELIABLE JUDICIAL DETERMINATION
OF THE FUNDAMENTAL LEGALITY OF HIS CONVICTION
AND SENTENCE"

Higgs agrees with the Court, where in its Order it states that "[a] federal prisoner is not entitled to file an unlimited number of 2241 petitioners." Where the Court went further to state, "[o]n the contrary,

> "No circuit or district judge shall be required to enterain
> an application for a writ of habeas corpus to inquire into the
> detention of a person pursuant to a judgment of a court of the
> United States if it appears that the legality of such detent-
> ion has been determined by a judge or Court of the United States
> on a prior application for a writ of habeas corpus, except as
> provided in section 2255." (quoting 28 U.S.C. 224 (a)0.

Higgs ask this Court to take into consideration that the AEDPA "stops short of imposing a complete bar on federal court 'relitigation of claims already rejected'", but requires that the petitioner show that ruling "was so lacking in justification that there was an error well understood and comprehended in "existing law' beyond any possibilty of fairminded agreement." Harrington v. Richter,562 U.S. 86, 131 (2011) (emphasis added). And "AEDPA" established that another court may grant habeas relief on a claim adjudicated on the merits only if that adjudication "(10 reuslted in decision that was so contrary to, or involved an unreasonbale application of, clearly established Federal law, as determined by the Supreme Court of the United States; (2) resulted in a decision that was based on an unreasonable determination of the facts

in light of the evidence presented."

As Higgs poimts out in his arugment, the claims presented do not fall under harmless error analysis, where Higgs shows exactly how, under Fulminate, that the admitted error and/or defect is structural, and how the "defect affect[ed] the framework within which" Higgs's "trial proceed[ed]. rather than simply an error in the trial process itself." Fulminante, 499 U.S. at 309-10. See general.

Secondly, Higgs points out in his agrument, that both the Government and the Fourth Circuit concede that Higgs's indictment, failed to charges the mandatory statutory aggravating factors and capital mens rea; as required for the imposition of the death penalty chrages, proceedings, and the option of the death penalty to be used against either Higgs. See. United States, 353 F.3d 281, 301-02 (4th Cir. 2003) (" Accordingly, we hold that the "multiple killings'" aggravator cannot act as the sole statuory aggrvator which rendered these murders death-eligible'"); see Higgs, 353 F.. F.3d at 304-5 (Court pointing out that "[e]ven assuming that the indictment was def. defective " because it failed to allege the requisiate statutory aggrvating factors or factor...."") (emphasis added). Because "[t]he prosecutor 'did not ask the grand jury to charge the statutory aggrvating factor[s]." Id at 762. Which makes both the continuous duration and execution of Higgs's sentences unconstitutional, and both immune from being capital in nature and effect; pursuant the Fifth Amendment's demend upon both prosecutor's and courts that "[n]o person", including Higgs "shall be held to answer for a capital [] crime, 'unless' on a presentment, or 'an indictment of a grand jury.'" (quoting U.S. Const. amend. V) )emphasis added). Thus, putting the Fourth Circuit's finding and holding in clear conflict with the Constitution itself; what it demands, and what it prohibits.

Even though Higgs points out in his argument, that the Fourth Circuit acknowledges that " it is clear that Higgs's indictment suffers from a Fifth Amendment defect", Id. It still made an unreasonable determination of teh law that "was so lacking in justification that there was an error well understood and comprehended in

8

[the Constitution and] in existing law beyond any possibilty of fairmined agreement", Richter, 562 U.S. at 131, by holding the defect and violation was "harmless". Where the Fourth Circuit would base its ruling, not on any law, nor the Constitution itself. The Fourth Circuit's holding would be based solely on the Fourth Circuit assuming that ""if [Higgs's ] grand jury had been asked 'to 'charge required aggravator factors", that the Fourth Circuit can guarantee that Higgs's grand jury "would have done so." Higgs,353 F.3d at 304-05. This assuming process adopted by the Fourth Circuit is clearly in conflict with the Supreme Court and the Constitution itself.

The Fifth Amendmnet itself doesn't ask, but demands that "[m]0 person", including Higgs, "shall 'be held to answer for a capital [] crime', unless on a presentment, 'or an indictment of a grand jury.'' (quoting U.S. Const. Amend. V.). In no way does such straight forward language suggest in the least that what the Fifth Amendment demands would allow either a prosecutor nor the eighth Circuit to speculate, guess, or infer that Higgs should "be held to answer for a capital [].Crime.'" without "an indictment of a Grand Jury." And there's clearly 'no legitimate reason whya court may privilege a demonstrably erroneous interpretation of the Constitution 'Over itself.'" Gamble, 204 L.ed 2d at 350 (Thomas, J., concurring, writing seperately) (emphasis added).

There are times when words within the Constitution and within its Amendments will be in aid of a Court's interpretation and /or claraification when trying to apply the Constitution and its Amendments fairly and correctly. But in this case, "unless", in the context of how it's proceeded by "[n]o person" including Higgs, "shall be held to answer", makes the Clause remarkably clear inits demand, and even more clear in what it ppohibits if those demands aren't followed. That "unless' the grand Jury gives its authority "to charge a greater offense or lesser offense; numerous counts or a single count; and perhaps most significant of all, a capital offense or a noncapital offense.. "vasques, 474 U.S. at 263. Then "no person", including Higgs, "shall 'be held to answer for " a conviction, the duration of time, the execution of that time, nor the execution of any punishment that would spawn from a violation of such a straight-forwrad demand. Because such a violation w[illegible]

9

Because such a violation would be unconstitutional and fundamentally unfair to any defendant, and the "effects of the error are simply too hard to measure." Weaver, 137 S.Ct. at 1908.

Higgs points out in his petition, the Fourth Circuit's holding proves that the Fourth Circuit has stepped out of their respected jurisdiction and into that of Higgs' grand jury. Where it's well understood that Higgs's grand jury belongs to no branch of government, that Higgs's grand jury is a "constitutional fixture 'inits own right,'" United States v. Chanen. 549 F.2d 1306, 1312 (Ca9) (quoting Nixon v. Sirica, 159 U.S. App. DC. 58, 70, n. 54 (1973)), (emphasis added), that Higgs's grand jury "presupposes an investigative body 'acting independently ofeither prosecuting attorney or judge'", Dionisio, 410 U.S. at 61-17 (quoting Stirone, 361 U.S. at 2180 (emphasis added), that "'no judge" presides to monitor its proceedings, it "deliberates in secret', and 'may determine alone the course of its inquiry'", Calndra, 414 U.S. at 343 (emphasis added), and that there is nothing that gives a prosceutor nor judges the "authority for looking into and revising the judgement of the grand jury upon the evidence. '" Costello, 350 U.S. at 362- 63 (emphasis added). Because "[i]f it lies within the province of a court to change the charging part of an indictment "to suit its own notins of what it ought to have been,' or 'what the garnd jury **would have proably have made it if their attention had been called to suggested changes'**, the great importance which the common law attaches to an indictment 'by a grand jury', as a prerequisite to a prisoner's trial for a crime, and wihbout which the Constitution says 'no person shall be held to answer,' may be frittered away until its value is almost destroyed." ex parte Bain, 121 U.S. at 10 (emphasis added ).

Higgs points out in his argument, with the Fourth Ciruit holding Higgs's claim " harmlesss' Higgs,           , and then restings it's holding of the fact that them " statutory aggrvating factors were "vaguely" present in the Government's Notice of Intent To Seek The Death Penalty ("Notice") and not in the indictment, shows the unreasonableness of the holding on its face.

10

This is clearly not a state case. This is a Federalcase and the government sought to seek the Federal Death Penalty against Higgs. Where as a Federal case, when seeking the death penalty, Higgs was and still is afforded the protection of the Fifth Amendment demend that "[n]o person", including Higgs. "shall be held to answer for a capital crime, Unless on a presentment, or 'an indictment of a grand jury.'" (quoting U.S. Const. Amend. VI). And the fact "[t]hat the Constitution outranks other sources of law is inherent in its nature." Gamble, 139 S.ct. 1960, (Thomas, J., concurring, writing seperately); See Keaavan, The Three Tiers Of Federal Law, 100 NW. U.L. Rev. 1479, 1499 n. 99 (2006)(arguing that"[i]t is neccessary for the Constitution to specify that it is superior...').

AEDPA established that another court may grant habeas relief on a claim adjud-icated on the merits. Higgs'a agrument and the claim therein shows cause for why this court should entertain this petition and grant the relief sought. Because as the Supremme Court Justice Thomas would rightfully point out in Gamlbe, that "Judicial decision may incorrectly interpret the law, and when they do subsequent courts "must confront the question when to depart from them.'' Thomas would go on to state that "[a] demonstratbaly incorrect judicial decision, by contrast, is tantamount to making law', and adherring to it both disregards the supremacy of the Constitution and perpetuates a usurpation of the legislative poer." 139 S.ct. at 1984-85, And Justice Thomas, (Quoting 1 J. Kent, Commentaries on American Law, 439 (1826) would state that "[i]f.... any solemnly adjudged case can be shown to be founded in error, it is not doubt the right 'and the duty of judges who have a similiar case befor them, to correct the error." Higgs's claim presents such an error in need of correction that the Const. Constitution contradicts.

### HIGGS IS CATEGORICIALLY INELIGIBLE
#### TO RECIEVE THE DEATH PENALTY

Higgs is categorically ineligible to receive the death penalty. Unlike Webster, where the Seventh Circuit held that "the problem is that the Sureme Court 'has now established...

11

established that 'the Constitution' itself forbids the execution of certain... '" Id. at 1149. (emphasis added). The Constitution has and continues to establishes that "the Constitution itself forbids the execution of certain people" Id; those who, "unless oms presentment, or indictment be a grand jury"... "shall [not] 'be held to answer for a capital [] crime.'"

Higgs agrument points out, the proper analysis that should've been used by the Fourth Circuit, should've been the Constitution itself first, and then the Supreme Court's holding in Stirone. Where in Stirone, the Supreme Court held that "the right to have an grand jury 'make the charge on its own judgement is a substantial right' which cannot be taken away with or without court amendment", and "because 'the Court's admission of evidence' and under its charge this might have been the basis upon which the jury never made against him.' this was a 'fatal error.'" 361 U.S. at 218-19 (emphasis added). And "]deprivation of sucha basic right 'is far too serious' to be treated as nothing more than a variance and "then dismissed as harmless error."" 361 U.S. at 217 (emphasis added).

In leichtnam, the Seventh Circuit has echoed the Supreme Court in Stirone when it held that a chrage was improperly amended where the government charged

Neither the Constitution itself, nor nay Supreme Court precedent case law supports the Fourth Circuit's interpretation of the Fifth Amendment's demand upon both pros prosecutors where the Seventh Circuit acknowledges "that the Supreme Court 'Has now established that the Constitution itself forbids the execution of certain people". Constitution, in the 1800's "set forth the demand that [n]o perso shall 'be held to answer for a capital [] crime'", an destablished the criteria that "unless on a prose presentment, or an indictment of a Grand Jury", then whatever followed was something that "[n]o person shall "be held to anwser for."" And because the government did not obey the Constitution's demand to make Higgs's chrages, purported facts, elements, evidence, custody, confinment, the duration of time, the execution of Higgs's sentence, and the possibility of punishment one that was death eligible "without a presentment or indictment of a grand jur

12

or indictment of a grand jury". Then Higgs clearly falls within the rare types of persons who are categroically ineligible for the death penalty". And the Constitution of the United States forbids Higgs's detention as a prisoner on Federal Death row, it forbids the continued execution of Higgs's unconstitutional sentence, and forbids Higgs from beings eligible for the death penalty.

ARGUMENT

III.    APPELLANT WAS CONVICTED AND SENTENCED TO DEATH IN VIOLATION OF THE FIFTH AMENDMENT AS THE INDICTMENT FAILED TO CHARGE THE AGGRAVATING FACTORS REQUIRED FOR A CAPITAL OFFENSE.

Standard of review: The legal sufficiency of an indictment is reviewed denovo. United states v. Loayza, 107 F.3d 257, 260 (4th Cir 1997).

"Much turns on the determination that a fact is an element of an offense rather than a sentencing consideration, given that elements must be charge in the indictment, submitted to a jury, and proven by the Government beyond a reasonable doubt." Jones v. United States, 526 U.S. 227, 232 (1999) (emphasis added); see also United States v. Dvais, 184 f.3d 366. 368 (4th Cir. 1999). The indictment in this case failed to chrage the essential elements of the capital crime for which Higgs was charged, convicted, and sentenced to death. The indictment did not charge the aggrvating factor reuqired for a capital offense and mad eno mention of the federal death penalty statute. Higgs' capital convictions and death sentences are all invalid and violate the Fifth Amendment's grand jury protections.

From our nation's beginning, teh Grand Jury has played a critical role in our criminal justice system, a s a shield, standing between teh accuser and the accused, protecting the individual citizen against oppressive and undounded governemnt prosecution." United Sattes v. Hogan, 712 F.2d 757, 759 (2d Cir 19983). As the first Justice Harlan wrote,

[I]n the secrecy of the investigations by grand juries, the weak and help-less- proscribed, perhaps, because pf their race, or pursued by an unreasining public clamor have found, and will continue to find, security against official oppression, the cruelty of mobs, the machinations of falsehood, and teh malevolence of private persons

13

the cruelty of mobs, the machinations of falsehood, and the malevolence of private persons who would use the machinery of the law to bring ruin their personal enemies.

Hurtado V. California, 110 U.s. 516, 554-55 (1884) (harlan, J., dissenting). That teh Grand Jury's role as a shield" is particularly important in capital cases- which not only expose defendants to the ulitimate penalty, but also arouse tremendous "public clamor"- is evident from the words of the Grand Jury Clause of the Fifth Amendment itself, hwich provides, in part, that "no person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury."

> The grand jury, like the petit jury, 'acts as a vital check against the wrongful exercise of power by the States and its prosecutors.' It controls not only the initial decision to indict, but also significant decisons such a s how many counts to chrage and whether to charge a greater or lesser crime, including the imprtant decision to charge a capital crime.

Campbell v. louisiana, 523 U.S. 392, 399 (1998) (citation omitted) (emphasis added). See also Smith V. United states, 360 U.S. 1, 10 (1959) (capital defendant may not waive indictment).

Higgs was indicted a grand jury, but he was not indicted by teh grand jury for a capital crime. Crimes are creatures of statute, and a  defendant may be found guilty of a particular crime only upon a finding that he or she has met each of the essential elements of the statute. E.G., Sullivan v. Louisiana, 508 U.S. 275, 277-278 (1993). In order for teh grand jury to fulfill its role as shield," an indictment must do more than merely identify teh crime iwth which the edfendant is charged. It must evidence the grand jury's conclusion that the defendant  has committed each of the elelments that must be porved before the defendnat may sffer the punishment prescribed for that crime. Jones, 526 U.S. at 232-234.

Footnote   Higgs raised this issue in his pretrial motions (Dkt. No. 113,), Motion To Preclude The Death Penalty, at pp. 5051.

crime. Jones, 526 U.S. at 232-234.

The indictment in this case fails. It is absolutely silent with regard to critcal elements of the offense for which Higgs was convicted and sentenced to death under Counts 1, 2, 4, 6, 7, 9, 11, 12, and 14,. The indictment makes no mention of the statutory aggravating facors conatined in 18 U.S.c. 3592(c) Or any of the additional, non-statutory aggravating factors relied on by the goevernment at trial. Section 3591 requires a jury determination on the 3592 factors in order to convert a simple murder offense into a capital offense.

The Supreme Court's capital punishment jurisprudence since Furman v. Georgia, 408 U.S. 238 (1972), and Gregg v. Georgia, 428 U.S. 153 (1976), has drawn a clear distinction between simple murder and capital murder. Conviction for murder may not, by itself, subject a defendant to the daeth penalty, absent proof of additional facts that narrow the class of murders eligible for the daeth epnalty. E.G., Spaziano v. Florida, 468 U.S. 447, 460 (1984) (capital punishment system must "rationally distinu distinguish between those [murderers] for whom death is an apprpriate sanction and those for whom it is not."). Aggravating factors" narrow the class of persons eligible for the death penalty and ... jsutify the impostition of a more severe sentence on the defendant compared to others found guilty of muredr." Zant V. Stephens, 462 U.S. 862, 877 (1983).

Although Higgs was indicted by grand jury on various violations of 18 U.S.C. 111 111 and 1201 (a)(2), standing alone the indictment is insufficient to chrage him with capital murder. The grand jury did not make findings on the critical issue of whether Higgs should be held to answer with his life. Infact, the indictment contains no mention of 18 U.S.C 3591, et seq., the controlling statute.

The Federal Death Penalty Act of 1994 vests the prosecutor rather than the one grand jury with the critical responsibilty of idnetifying the elements (the aggravating factors) that convert murders charged in aniindictment into capital offenses for which a defendant should answer with his life. In order for 18 U.S.C. 3591, et seq., to be a valik

15

a valid death penalty statute, it must provide that a grand jury decide whether the aggravating factors are sufficiently estbalished to proceed with a capital prosecution. having failed to do so, the 1994 sttaute is unconstitutional under the Fifth Amendment indictment clause, and is also in conflict with the Eighth Amendment as it permits the imposition of death in an arbitray or capricious manner.

In Jones  v. United States, 526 U.S. 227 (1999), the Supreme Court considered the question of what "elements" of a criminal statute must be specified in the indict-ment. The edfendant in taht case was convicted of carjacking under 18 U.S.C. 2119, which provided that:

> Whoever, [possessing a fireman[ ... takes a motor vehicle....from the person or the presence of another by force and violence or by intimidation, or attempts to do so, shall-
>
> (i)   be fined under this title or imprisoned not more than 15 years, or both,
>
> (ii)  if serious bodily injury ...results, be fined under this title or imprisoned not more than 25 years, or both, and
>
> (iii) If death results, be fined under this title, or imprisoned for any number of years up to life, or both..

The indictment madeno reference to 'serious bodily injury," but after Jones was convicted, the governemnt sought a sentence of 25 years, based on injuries suffered by the vcitim. The defendant argued that "serious bdoily injury" was an element of the crime for which the government sought the extended sentence, and therefore was requied to be specified in the indictment and proved to the jury. The distirct court held that "serious bodily injury" was not an element of the crime but a sentencing factor," which need neither be charged nor proved to the jury.

The Suprmem Court disagreed. The court noted that the carjacking statute:

> [a]t first glance has a look to it suggesting that the numbered sub-seetions are only sentencing provisions. It begins with a principal pargraph listing a series of obvious elements "possessions of a firearm, taking a motor vehcle, connection with interstate commerce, and so on). That paragraph comes close to standing on its own, followed by sentencing provisions, the  first of which, sub-section (1). certainly adds no further elements.

16

Id. at 233.  In order to aviiod "serious constitutional questions" that would otherwise be raised, the Court concluded that despite its structure- which suggested that serious "serious bodily injury" might be a "sentencing factor" not required to be charged in the indictment pr proved beyond a raesonable doubt to the jury- 2119 should be read as establishing "three separate offenses by the specification of distinct elements, each of which must be charged by indictment, proven beyond a reasonable doubt, and submitted to a jury for its verdict. " Id. at 252. Since the element of "serious bodily injury" had not been charged in the indictment or proven to the jury beyond a reasonable doubt, the Court reversed Jones' conviction under the statute.

Just as the Court found that 18 U.S.C. 2119 creates three separate carjacking offenses, with different penalties and differnt elements that must be proved, 18 U.S.C 1111 and 1201 established separate murder and kidnapping offenses-capital and non-capital- and require for conviction of capital murder or kidnapping, that elements in addition to those requied for conviction of the non-capital offenses (i.e., the aggravatoring factors) be chraged in the indictment and found by the jury beyond a reasonable doubt. In other words, conviction of the charged offense alone is legally insufficient to establish the aggravating factors required for a capital sentence.

In Apprendi v. New Jersey, 530 U.S. 466 (2000(, the Court xetended the raesoning of Jones. What had been prescribed in Jones by virtue of statutory construction was, in fact, constitutionally mandated. In Apprendi, the defendant fired a weapon into the home of an African-american family, allegedly because of the family's race. The defendabt was charged in an indictment with unlawful possession of weapons, but sentence was enhanced under New Jersey's hate crime" statute, which was enhanced under New Jersey's "hate crime" statute , which provided for enhanced penalties where an offense was motivated by racially motivated, and the finding on which the defendant's sentence was enhanced was made by the judge rather than the jury, by preponderance

of the evidence rather then beyond a reasonable doubt. The Court revered:

> New Jersey threatened Apprendi with certain pains if he unlawfully possessed a weapon and with additional pains if he sleected his victims with apurpose to intimidate them because of their race. As a matter of simple justice, it seems obvious that the procedural safeguards designed to protect Apprendi from unwarranted pains should apply equally to the two acts that New jersey has single out for punishment.

Id. at

Id. at 476.

Again, Higgs' case is indistinguishable. Each federal criminal statute dictated a sentence of up to life impriosnment or death if he committed murder or kidnapping. However, death could be imposed only if higgs committed additional acts that constituted the aggravating factors reuqired by 3592(c). Under Apprendi, the procedural sfaeguards designed to protect him, including the Fifth Amendment's requirement that the indictment chrage every element of the crime, apply equally to the two difefrnet sets of actions punished first under the federal felony statutes and second under the federal death statute. As the Court wrote in Apprendi:

> [F]acts that expose a defendnat to a punishment greater than that otherwise legally prescribed [are] by definition "element" of a separate leagl offense.

Id.at 483.   Proof of every single allegation contained in the grand jury indictment would not, without more, subject Higgs to a capital sentence. Under the statute, he could only be exposed to a greater punishment upon proof of additional facts which were not alleged in the indictment. Under Apprendi, those additional facts facts are, "by definition 'element' of a separate legal offense," which were not charged. See Apprendi, 530 U.S. at 483.

The government submitted four statutory aggrvating factors: (i) daeth during the commission of another crime, 3592 (c)(1) (this factor applied to the two, first degree murdeer offenses only); (ii) previous conviction of a violent felony involving a fireman 3592(c)(2); (iii) previous conviction for a serious federal drug offense 3592(c) (12); and (iv) and multiple killings in the same criminalepisode, 3592(c)(16). The Government also presented two nonstatutory aggravating factors, i.e., victim impact and obstruction of justice. None of these aggravating factors are charged in any count of the indictment

as grounds supporting a capital charge against Higgs. No grand jury determined as to any count that the elements supporting a death sentence had been established. Moreover, the grand jury could have failed to find one or more of the aggravating factors usbmitted. Given that Higgs was not the triggerman in these offense but had been indicted under a theory' that he aided and abetted' the actual shooter, the grand jury could have refused to indict for capital offenses. thus, the grand jury's role as a "shield" between the government and the accused was usurped in violation of the Fifth Amendment.

This term the Supreme Court decided Ring v. Arizona, 122 S.Ct. 2428 (20020, and directly applied its holding in Apprendi v. New Jersey to capital sentencing. In Ring, the Court held taht the Sixth Amendment guarentee of a right to trial by jury requires that the aggravating circumstances required for the imposition of the death penalty must be found by a jury, not a snetencing judge. "Capital defendants, no less than non-capital defendants, we conclude, are entitle to a jury determination of any fact on which the legislative conditions an increase intheir maximun punishment." Id. at 2432. Ring had been convicted of felony murder, which was punishable death or life imprison-ment. However, a death sentence could not be imposed unless further factual determinations were made at a sentencing hearing. Under state law, a ludge, not a jury, determined the aggravating circumstances supporting a death sentence/

The critical question, the Court wrote in Ring, is the effcet the facutal finding has on the defendant's sentence:

> If a state makes an increase in a defendant's authorized punishment contingent on the finding of a fact, that fact— no matter how the state labels it— must be found by a jury beyond a reasoanbale doubt. [Apprendi], at 482–83. A defendant may not be "expose[d]... to a penalty exceeding the maximun he owuld receive if punished according to the facts reflected in the jury verdict alone.' Id. at 483; see also id. at 499 (Scalia, J., concurring) ('[A]ll the facts which must exist in order to subject the defendant to a legally prescribed punishment must be found by the jury.').

19

Id. at 2439-40. The Court rejected the state's argument that becuase the statutory maximun sentence was death, the judge imposed sentence did not exceed the statutory maximun. The Court found taht a death snetence could only be imposed after additional factual findings, and these findings must be made by a jury. Thus, the aggravating circumstances "operate as 'the functional equivalent of an element of a greater offense, Apprendi, 530 U.S., at 494 n. 19' and under the Sixth Amendment must be found by a jury beyond a reasonable doubt. Id. at 2443.

Immediately following its decision in Ring, the Court granted the petition for writ of certiorari in Allen v. United States, 122 S.ct. 6253, 2654 (2002), vacting and remanding, United States v. Allen, 247 f.3d 741, 761-62 (8th cir. 2001), to the Eighth Circuit Court of Appeals for further consideration in light of Ring. Allen's petition presented the grand jury question raised in this appeal. I.E., whether the aggravating factors reuqired for a sentence of death under 18 U.S.C. 3591, et seq., are elements of a capital crime and  must be alleged in the indictment to comply with Fifth Amendment.

The Fifth Amendment guarantees that a defendant may be only tried for the offense chraged in the indictment. Substantive amendments to indictments are reversible error. See Stirone v. United States, 361 212, 217--219 (1960); United States v. Randall, 171 F.3d 195, 203 (4th Cir 1999) (constructive amendment is perse reversible error and must be corrected on appeal even when defendant did not preserve issue by ojection). A Constrcutive amendment of the indictment occurs when the evidence presented proves a crime differnet from that charged in the indictment (see Randall, at 203-204), or when the jury

---

FN:   The Suptreme Court noted taht ring case was limited to the facts . Ring had not Challenged the constitutionality of his indictment under the Fifth Amendmnet. furthermore his case did not involve any aggravating circumstances relaeted to the past convictions. Id.at n.4.

instrcutions broaden the scope of the indictment by permitting conviction for an unchaged chraged offense (see United States v. Floresca, 38 F.3d 706, 710 (4th cir. 1994).

In Higgs' case, the existence of aggravating factors supporting a death sentence transformed an indictment that chraged no capital offenses into an indictment that chraged nine capital offenses. the Court's penalty phase jury instrcutions broadened the scope of teh indictment and permitted conviction for unchraged capital pffenses. Thus, the evidence presented to the trial jury was used to convict Higgs of capital crimes crimes never authorized by the grand jury. See Lucas v. O'dea, 179 F.3d 412, 417 (6th Cir. 1999) (constrcutive amendment because defendant indicted for intentional murder but convicted for wanton murder). Higgs' indictment never even referenced the applicable statutory death penalty provisions. furthermore, the grand jury may have beend unaware of the government's intention to seek the death penalty against Higgs. the indictment was invalid as it omttied essential elements of the offense, The subsequent constrcutive amendment of the indictment was reversed error.

Appellant's capital convictions must be reversed, and the corresponding death sentences vacted.

The Supreme Court certiorari in United States v. Resendiz-ponce, 549 U.S 102, 127 S.Ct. 782, 166 L.Ed.2d 591 (2007), to resolve this split but decided the case on other grounds. In dissent, Justice Scalia noted that he would have agreed with the Ninth Circuit and held that an indictment lacking an essential element is structural error. See id. at 116-17, 127 S.Ct. 782 (Scalia j., dissenting).

See United States v. Pennington, 2003 U.S. Dist. LEXIS 24478 No.3:01-cr-35-R, Slip op. at 3 (W.D. Ky. Feb. 21, 2003) (APPENDIX C) (granting defendant's motion to preclude imposition of the death penalty where the indictment did not allege death -qualifying statutory aggravating factors or erquisite mens rea, and the government did not seek a superseding indictment prior to jeopordy attaching. Notwithstanding the caknowledged mandate from the Attorney General to seek a superseding indictment "in all pending Federal Death Penalty cases" so as to include teh requisite intent and statutory

21

aggravators.); see also United States v. Regan, 221 F.Supp. 2d 672,675 (E,d. Va. 2002) (noting in light of Ring v. Arizona, the government filed a superseding indictment "re-alleging" espionage chrages" and including teh statutory aggravating factors previously set forth "only" in the notice of intent to seek the death penalty."

Instead of seeking a superseding indictment against Higgs, the government, forewarn warned beforehand; first, by the Fifth and sixth Amendment's demands taht [n]o person', incliding higgs, "shall be held to answer for a capital [] crime, "unless" on a[n] in indictment of a grand jury", and that Higgs must "be informed of teh nature and cause of teh allegation[s]" against him, (quoting U.S. Const. amend. V. and VI); and second, by Higgs's objection to teh strcutural defect in Higgs's indictment befores trial, would instead coose to proceed forward with its case against Higgs, knowing that a violation wa leading the way.

Yet, by proceeding forward with their case against Higgs, the government would constructively amend Higgs indictment; through its use of the statutory aggravating circumstances/factors that were intentionally omitted from Higgs's indictment; which in thenselves contained additional and different offenses taht were legally and essentially relevant when proved at trial, were not fully contained in Higgs's indictment, and as a result, trial evidence would amend the indictment by broadening the possible bases for conviction from that which appeared in the indictment's allegation, purported facts, elements, evidence, and charges. which would allow Higgs to be convicted for a criminal plan broader than, but, not included wihtin Higgs's catual indictment, and was a fatla error." See stiorne, 361 U.S. at 218-19 ("The right to have the grand jury make charges on its own judgment is a substantial right' which cannot betaken away with without court amendment....[and] 'because of the court's admission of evidence and unedr its chrage this "might" have been the basis upon which the trial jury convicted petitioner." If so, he was convicted on a charge the grand jury never made against him.' This was a fatal error.'") (emphasis added).

The facts presented show that higgs's custody, confinement, and the continued
examinio on all

execution of Higgs's sentence(s) are "all unconstitutional", because they were obtained "in violation of the Constitution or law [] of the United States", Samirah v O'Connell, 335 F.3d 545, 549 (7th Cir. 2003), and Higgs requires immediate and/or speedier release. Or, "new trial" hsould be granted "as a matter of right.'" Weaver, 137 S.Ct at 1914 (mephasis added).

This court should put a stay, or injunction on this case pending a Decision in Billie Allen case that is also pending, or in litigation in this District Court, on this current/same agrument.

Also the 9th Circuit Just ruled in the Qasi case that the indictment lacking an essential element is structural error. And a structural error cannot be struck down by applying harmless error. Weaver v. Massachusetts 137 S.Ct 1899, 1914 (2017).

## CONCLUSION

For these reasons, it is respectfully requested that this Court grant this Petition for New trial, or reversal, grant the Suggestion for new trial in this federal death penalty case resulting in a sentence of death given the questions of exceptional importance involved and grant such other relief as appropriate under the circumstances.

Respectfully submitted,


Pro se Petitioner

*Dustin J. Higgs*
Dustin J. Higgs 31133-037
Special Confinement Unit
PO. BOX 33
Terre Haute, IN 47808


23