# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA
### TERRE HAUTE DIVISION

———————————————————————— )
DUSTIN HIGGS,                                    )        No. 2:20-cv-00665-JPH-DLP
                                                 )
                    Petitioner,                  )
                                                 )        **DEATH PENALTY CASE**
          v.                                     )
                                                 )        *EXECUTION SCHEDULED
T.J. WATSON, Warden,                             )        FOR JANUARY 15, 2021*
Federal Correctional Complex, Terre Haute,       )
                                                 )
                    Respondent.                  )
———————————————————————— )

——————————————————————————————

## MOTION FOR STAY OF EXECUTION
——————————————————————————————

Matthew C. Lawry
Federal Community Defender Office
  for the Eastern District of Pennsylvania
The Curtis, Suite 545-West
601 Walnut Street
Philadelphia, PA 19106
(215) 928-0520
Matthew_Lawry@fd.org

December 24, 2020

## PRELIMINARY STATEMENT

Petitioner Dustin Higgs shall be referred to as Petitioner or Mr. Higgs. All emphasis in this Motion is supplied unless otherwise indicated.

# <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ...................................................................................... i

TABLE OF CONTENTS ............................................................................................... ii

INTRODUCTION ........................................................................................................ 1

PROCEDURAL HISTORY ............................................................................................ 3

MR. HIGGS IS ENTITLED TO A STAY OF EXECUTION ............................................. 6

I.    Mr. Higgs Can Demonstrate a Significant Possibility of Success on the Merits of    His Claim. ............................................................................................................... 6

    A.    Mr. Higgs's 2d Amended Petition Establishes That He Was Denied Due    Process Under *Brady v. Maryland*. .............................................................. 6

        1.    The Government Withheld Exculpatory Evidence of Mr. Gloria's    Lenient Treatment in Exchange for His Testimony. ........................... 7

        2.    The Withheld Information Was Material ............................................... 9

        3.    Relief Is Appropriate Under 28 U.S.C. § 2241 ................................. 10

    B.    Mr. Higgs's 2d Amended Petition Establishes That His Indictment Did Not Charge a Capital Offense and, Therefore, the Trial Court Lacked Jurisdiction    to Try Him for Capital Offenses .................................................................. 11

II.    Mr. Higgs Will Suffer Irreparable Injury Without a Stay. .................................... 14

III.    A Stay Will Not Substantially Harm the Government; the Potential Injury to Mr.    Higgs Outweighs Any Harm to Respondents. ..................................................... 14

IV.    The Public Interest Weighs in Favor of a Stay .................................................... 16

REQUEST FOR RELIEF ............................................................................................ 17

## INTRODUCTION

Petitioner Dustin Higgs respectfully requests a stay of execution pending the Court's consideration of his Second Amended Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 ("2d Amended Petition"). *See* ECF No. 14-1. Mr. Higgs is scheduled to be executed on January 15, 2021, pursuant to his convictions and death sentences rendered by the United States District Court for the District of Maryland, for his role in the murders of Tanji Jackson, Tamika Black, and Mishann Chinn.

In his 2d Amended Petition, Mr. Higgs sets forth a *Brady* claim that was impossible to properly raise during § 2255 proceedings because the Government withheld the evidence until two years after the conclusion of those proceedings. Specifically, as explained in greater detail in the 2d Amended Petition, the Government withheld from the defense the facts that (a) Mr. Victor Gloria – a cooperating co-defendant and "the critical link in [Mr. Higgs's] conviction" (*See* ECF No. 13-1 at 16 (Gloria Sentencing Tr. at 16:14-20)) – was a suspect in a Baltimore murder, and (b) the Government intervened with Baltimore authorities to suggest a theory for why the evidence implicating Mr. Gloria for that murder was flawed. Those facts constitute exculpatory impeachment evidence within the meaning of *Brady v. Maryland*. Mr. Gloria's knowledge that the Government was aware of his vulnerability to first-degree murder charges in Baltimore gave him a powerful interest in making himself as indispensable as possible to the Government in Mr. Higgs's case in the hopes that he might be shielded from accountability in Baltimore. This evidence was material, given that Mr. Gloria was the central witness against Mr. Higgs at trial, and without his testimony – as one trial prosecutor admitted – the Government "could not have proceeded and obtain[ed] a conviction against Mr. Higgs." ECF No. 13-1 at 4 (Gloria Sentencing Tr. at 4:10-12).

1

Mr. Higgs's *Brady* claim is properly brought under § 2241 because the Government withheld evidence supporting the claim until after Mr. Higgs's § 2255 proceedings had concluded. It was thus impossible for Mr. Higgs to present this evidence during the original § 2255 proceedings, and he is precluded from attempting to use § 2255 to do so again now, due to the strict barriers to raising successive § 2255 petitions. As a result, Mr. Higgs is entitled to review under § 2241 because § 2255 is "inadequate or ineffective to test the legality of [Mr. Higgs's] detention" or sentence. 28 U.S.C. § 2255(e). Because there are unquestionably additional unknown details about what precisely the Government told Mr. Gloria, and what precisely the Government told the state authorities considering whether to prosecute Mr. Gloria for murder, Mr. Higgs's 2d Amended Petition also includes a request for an evidentiary hearing before this Court.

In addition, in his 2d Amended Petition, Mr. Higgs also argues that his indictment did not charge a capital offense, and therefore, the trial court lacked jurisdiction to try and sentence Mr. Higgs for capital offenses. The indictment returned against Mr. Higgs did not contain even a passing reference to a single statutory aggravator, which is a necessary element of each capital offense. As a result, Mr. Higgs was convicted of and sentenced to death for charges the grand jury never made against him, and thereby deprived of his Fifth Amendment rights. The prohibition on relitigating claims raised on direct appeal bars raising these issues in a § 2255 motion and Mr. Higgs has demonstrated in his 2d Amended Petition that § 2241 is a proper vehicle for reviewing the constitutionality of his death sentences in light of intervening law.

Mr. Higgs respectfully seeks a stay of execution so that the Court can fully and fairly review his compelling claims for relief.

2

## PROCEDURAL HISTORY

On December 21, 1998, Mr. Higgs, along with co-defendant Willis Haynes, was indicted in the United States District Court for the District of Maryland on charges connected with the January 27, 1996, shooting deaths of Tanji Jackson, Tamika Black, and Mishann Chinn. On December 20, 1999, a grand jury returned a Second Superseding Indictment charging Mr. Higgs with multiple counts of murder (18 U.S.C. § 1111(a)), three counts of kidnapping resulting in death (18 U.S.C. § 1201(a)), and related firearms offenses.[1]

The cases against Mr. Haynes and Mr. Higgs were severed for trial. Mr. Haynes was tried first and sentenced to life in prison without release. Mr. Higgs was tried next and on October 11, 2000, was found guilty of three counts each of first-degree premeditated murder, first-degree murder committed during a kidnapping, and kidnapping resulting in death, along with firearms charges. *See United States v. Higgs*, 353 F.3d 281, 289 (4th Cir. 2003) (*Higgs-1*).

With regard to each of the six counts of murder (18 U.S.C. § 1111(a)) and each of the three counts of kidnapping resulting in death (18 U.S.C. § 1201(a)), the petit jury found the existence of three statutory aggravating factors:

(1) multiple killings in a single criminal episode under 18 U.S.C. § 3592(c)(16);

(2) previous conviction of a violent felony involving a firearm under 18 U.S.C. § 3592(c)(2); and

(3) previous conviction for a serious federal drug offense under 18 U.S.C. § 3592(c)(12).

With regard to the six murder counts, the jury found an additional statutory aggravating factor that the deaths occurred during the commission of a kidnapping. *See* 18 U.S.C.

---

[1] The Government proceeded to trial on the Second Superseding Indictment and it is the operative document.

§ 3592(c)(1). The jury recommended death sentences on the nine death-eligible counts. *Higgs-1*, 353 F.3d at 289.

The Fourth Circuit upheld the convictions and sentences on direct appeal. It rejected Mr. Higgs's Fifth Amendment challenge alleging that the Second Superseding Indictment failed to adequately allege a statutory aggravating factor, an element necessary to charge a capital offense under the Federal Death Penalty Act. *Higgs-1*, 353 F.3d at 300-301. Certiorari was denied. *Higgs v. United States*, 542 U.S. 999 (2004).

Mr. Higgs then filed a motion for relief under 28 U.S.C. § 2255 in the Maryland district court. On April 7, 2010, the district court denied the § 2255 motion without argument, discovery, or a hearing. *United States v. Higgs*, 711 F. Supp. 2d 479 (D. Md. 2010) (*Higgs-2*). Mr. Higgs then sought a COA from the Fourth Circuit on numerous issues. The circuit denied a COA on all but one issue, and subsequently on that issue denied relief. *United States v. Higgs*, 663 F.3d 726 (4th Cir. 2011) (*Higgs-3*), *cert. denied,* 568 U.S. 1069 (2012).

Mr. Higgs then filed a motion in the District Court of Maryland seeking to set aside his final judgment under Federal Rule of Civil Procedure 60(d) due to fraud on the court. The 60(d) motion argued that the Government did not disclose all of the benefits received prior to trial by the Government's key witness, cooperating co-defendant Victor Gloria. In particular, the motion alleged Mr. Gloria was a suspect in an unrelated state murder prosecution, but that he was not charged after federal prosecutors and agents intervened on his behalf, and that the Government never disclosed these facts. The motion was denied by the district court, *United States v. Higgs*, 193 F. Supp. 3d 495 (D. Md. 2016) (*Higgs-4*), and a COA was again denied in the Fourth Circuit, *Higgs v. United States*, No. 16-15 (4th Cir. 2017). The Supreme Court denied certiorari. *Higgs v. United States*, 138 S. Ct. 2572 (2018) (Mem.).

4

Meanwhile, Mr. Higgs sought and was denied permission from the Fourth Circuit to file a successive motion for relief pursuant to 28 U.S.C. § 2255, predicated on the United States Supreme Court's decision in *Johnson v. United States*, 576 U.S. 591 (2015). *See* ECF No. 13, *In re Higgs*, No. 16-8 (4th Cir. June 27, 2016). Following the Fourth Circuit's denial of permission to file a successive § 2255 motion, Mr. Higgs filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 in this Court, in a further attempt to litigate his *Johnson* claim.[2]  That petition was denied on April 30, 2020, ECF No. 42, *Higgs v. Daniels*, No. 2:16-cv-321-JMS-MJD (S.D. Ind. Apr. 30, 2020), and is currently pending on appeal in the United States Court of Appeals for the Seventh Circuit, *Higgs v. Watson*, No. 20-2129 (7th Cir.).

Mr. Higgs also filed a lawsuit in this Court seeking to obtain documents contained in his police investigative file pursuant to the Freedom of Information Act. The parties' cross-motions for summary judgment were each granted in part and denied in part in this Court. *See* ECF No. 73, *Higgs v. United States Park Police*, No. 2:16-cv-96-JMS-MJD (S.D. Ind. June 25, 2018). The Seventh Circuit granted the Government's cross-appeal and determined that the Government was not obliged to turn over any additional documents to Mr. Higgs. *Higgs v. United States Park Police*, 933 F.3d 897, 900 (7th Cir. 2019).

On August 4, 2020, the Government moved in the Maryland district court to amend Mr. Higgs's final judgment. In so moving, the Government sought to have the district court designate Indiana as the state in which to implement Mr. Higgs's death sentence. *See* ECF No. 640, *United States v. Higgs*, No. 98-cr-520-PJM (D. Md. Aug. 4, 2020). As of this filing, the Maryland

---

[2]  Mr. Higgs filed a second motion for permission to file a successive § 2255 petition in the Fourth Circuit following the Supreme Court's decision in *United States v. Davis*, 139 S. Ct. 2319 (2019). That motion was likewise denied. *See* ECF No. 20, *In re Higgs*, No. 20-2 (4th Cir. Feb. 6, 2020).

district court has yet to rule on the Government's motion. Nonetheless, on November 20, 2020, the Government informed Mr. Higgs that it had scheduled his execution for January 15, 2021.

<u>**MR. HIGGS IS ENTITLED TO A STAY OF EXECUTION**</u>

The standard for issuance of a stay is like that for issuance of a preliminary injunction. The moving party must show: (i) a significant possibility of success on the merits; (ii) irreparable harm will result in the absence of the stay; (iii) the balance of harms is in favor of the moving party; and (iv) the public interest supports a stay. *Hill v. McDonough*, 547 U.S. 573, 584 (2006). Mr. Higgs meets these requirements.

**I.     Mr. Higgs Can Demonstrate a Significant Possibility of Success on the Merits of His Claim.**

In a capital case, the likelihood of success factor is satisfied when the plaintiff makes a "substantial showing of the denial of a federal right." *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983) (citation and quotation marks omitted). That showing is made if the "issues are debatable among jurists of reason; that a court could resolve the issues in a different manner; or that the questions are adequate to deserve encouragement to proceed further." *Id.* at 893 n.4 (citation and quotation marks omitted).

**A.     Mr. Higgs's 2d Amended Petition Establishes That He Was Denied Due Process Under *Brady v. Maryland*.**

The critical witness against Mr. Higgs was Victor Gloria, a cooperating co-defendant whom one of the trial prosecutors admitted was indispensable to obtaining Mr. Higgs's convictions and, by extension, death sentences. Prior to Mr. Higgs's trial, Mr. Gloria became a suspect in the unrelated homicide of Martrelle Creighton in Baltimore. The federal prosecutors charged with trying Mr. Higgs were in contact with state authorities in Baltimore charged with investigating the Creighton homicide, and later informed those state authorities that they

6

believed the witnesses identifying Mr. Gloria as the perpetrator of the Creighton murder were conspiring to frame him. The Baltimore authorities declined to charge Mr. Gloria with any crime and did not even interview him despite his undisputed presence during the commission of the murder.

A *Brady* violation has three elements: (1) suppression by the prosecution of evidence that is both (2) favorable to the accused and (3) material to guilt or punishment. *Banks v. Dretke*, 540 U.S. 668, 691 (2004). The duty to disclose material exculpatory evidence extends to evidence in the possession of the police, regardless whether prosecutors are aware of it. *Kyles v. Whitley*, 514 U.S. 419, 437 (1995). The Supreme Court has made clear that "[i]mpeachment evidence . . . as well as exculpatory evidence, falls within the *Brady* rule." *United States v. Bagley*, 473 U.S. 667, 676 (1985); *see also Giglio v. United States*, 405 U.S. 150, 154 (1972) ("When the 'reliability of a given witness may well be determinative of guilt or innocence,' nondisclosure of evidence affecting credibility falls within this general rule.") (quoting *Napue v. Illinois*, 360 U.S. 264, 269 (1959)).

> 1. *The Government Withheld Exculpatory Evidence of Mr. Gloria's Lenient Treatment in Exchange for His Testimony.*

Evidence that the Government actively intervened to protect Mr. Gloria from being prosecuted for murder to preserve his credibility in this case constitutes impeachment evidence that must be disclosed pursuant to *Brady.* The Government has never disputed that it did not inform counsel for Mr. Higgs prior to trial that it was aware Mr. Gloria was a suspect in Mr. Creighton's murder and had multiple contacts on Mr. Gloria's behalf with the state authorities who were deciding whether to prosecute him.

The essence of the Government's argument when this claim was raised during the § 2255 proceedings and again during the 60(d) proceedings in the District of Maryland was instead that

7

Baltimore authorities declined to prosecute Mr. Gloria entirely of their own accord, and thus Mr. Gloria received no benefit from federal authorities that they were required to disclose. It was a mere happy coincidence for the Government that the critical witness in a case they had been investigating for over three years did not become irredeemably tainted when Baltimore authorities exercised their purportedly independent judgment to decline to charge Mr. Gloria. The Government further argued that the prosecutors "had no duty or ability to predict, much less inform Higgs of benefits, or acts of grace, that coincidentally flowed to [Mr. Gloria] after this trial." ECF No. 519, *United States v. Higgs*, No. 98-cr-520-PJM, Motion to Strike at 86 (D. Md. Nov. 8, 2006).

These arguments lack merit. The police had strong reason to suspect Mr. Gloria as he was either directly or indirectly implicated by multiple witnesses as the person who stabbed Mr. Creighton. And it is highly likely that Mr. Gloria knew that the federal authorities responsible for making a downward departure motion and a sentencing recommendation in the federal case were aware of his involvement in the Baltimore case, as the Maryland district court found during the 60(d) litigation. *Higgs-4*, 193 F. Supp. 3d at 511 n.12 ("[I]t seems plausible that the AUSA's knowledge of the friendship and theory of the conspiracy came from her questioning Gloria himself about the Creighton murder.").

In other words, Mr. Gloria knew that the federal prosecutors knew that he was a suspect in Mr. Creighton's killing, because the federal prosecutors questioned him about it. The federal prosecutors knew that they were shielding him from the state prosecutors, and that they were turning around and feeding information he gave them to the state authorities. Moreover, the federal prosecutors likely told Mr. Gloria during these conversations that they would be speaking to state authorities further. Regardless, mere knowledge that federal prosecutors were aware of

8

the Baltimore investigation created a powerful incentive on Mr. Gloria's part to ingratiate himself to the maximum possible extent with the Government.[3]  This information was thus exculpatory within the meaning of *Brady*, as it constitutes "evidence that the defense might have used to impeach the Government's witnesses by showing bias or interest." *Bagley*, 473 U.S. at 676. *See also Giglio*, 405 U.S. at 154 (*Brady* rule encompasses "evidence affecting credibility").

2.     <em>The Withheld Information Was Material.</em>

It is impossible to overstate the importance of Mr. Gloria to the Government's case. As the Fourth Circuit noted on direct appeal, "[m]ost of the facts surrounding the murders of the three women were obtained from [Mr. Gloria's] eyewitness testimony." *Higgs-1*, 353 F.3d at 289 n.1; *see also id.* at 313-14 (evidence of kidnapping, felony, and premeditated murder is all derived from Mr. Gloria's testimony).

Furthermore, given that Mr. Gloria's testimony served as the central pillar for the Government's case against Mr. Higgs, it is evident that the jury credited that testimony, regardless of trial counsel's attempts to impeach his credibility.

Lastly, the assertion that additional impeachment of Mr. Gloria would not have made any difference is erroneous. The suppressed impeachment evidence of Mr. Gloria's involvement in an ongoing murder investigation was different in force and in kind from the impeachment developed at trial, and it gave Mr. Gloria additional motivation – of which the jury was not

---

[3]  Baltimore authorities neither charged Mr. Gloria with Mr. Creighton's murder nor interviewed him, even though they charged Keith and Kevin Scott with first-degree murder – in spite of the fact that there was little evidence to substantiate such charges. In the absence of knowledge that Mr. Gloria was a key witness in a high-profile federal murder prosecution, it is highly unlikely that Baltimore authorities would have declined to charge Mr. Gloria – who was present at the time of the murder and implicated far more directly by several witnesses, including disinterested witnesses – without, at the very least, interviewing him.

9

aware – to curry favor with the Government. Nor does it matter whether a formal agreement was in place not to prosecute Mr. Gloria in Baltimore in exchange for his testimony. As the Seventh Circuit explained in *United States v. Salem*, 578 F.3d 682 (7th Cir. 2009), "to say that there is no reasonable probability that the jury could reach a different result, even if the evidence showed that the government's star witness was never charged for his direct involvement in a violent gang murder, ignores the differences between the drug and gun crimes about which [the star witness] was questioned [at trial] and [his undisclosed involvement in a] first-degree homicide." 578 F.3d at 689.

The mere fact that Mr. Gloria knew he was under investigation, and that the federal authorities with whom he was cooperating were in contact with state authorities, constituted powerful impeachment evidence. The suppression of the Baltimore homicide evidence was material.

### 3.    Relief Is Appropriate Under 28 U.S.C. § 2241

While Mr. Higgs asserted a *Brady* claim in his motion under 28 U.S.C. § 2255, he lost this challenge, in large measure, because he did not have hard evidence to support it given that the Government had refused to turn over the police and prosecutor's file. It was not until two years after the denial of Mr. Higgs's § 2255 motion that he was able to obtain the Baltimore Police Department's 640-page file through a subsequent request. The materials in the file substantiated his § 2255 allegations.

Mr. Higgs's *Brady* claim is properly brought under § 2241 because the Government withheld evidence supporting the claim until after Mr. Higgs's § 2255 proceedings had concluded. It was thus impossible for Mr. Higgs to present this evidence during the original § 2255 proceedings, and he is precluded from attempting to use § 2255 to do so again now, due to

the strict barriers to raising successive § 2255 petitions. As a result, Mr. Higgs is entitled to review under § 2241 because § 2255 is "inadequate or ineffective to test the legality of [Mr. Higgs's] detention" or sentence. 28 U.S.C. § 2255(e).

Any denial of § 2241 review rewards the Government for its misconduct. Because the Government successfully hid the evidence until after the § 2255 proceedings were concluded, the Government's misconduct will never be reviewed, and the exculpatory evidence it failed to disclose will never be reviewed by any court. Habeas corpus review is needed to prevent such an unconscionable result.

**B.      Mr. Higgs's 2d Amended Petition Establishes That His Indictment Did Not Charge a Capital Offense and, Therefore, the Trial Court Lacked Jurisdiction to Try Him for Capital Offenses**

Mr. Higgs is also likely to succeed on the merits of his Fifth Amendment claim because, when properly analyzed and considered in light of recent Supreme Court precedent, the Second Superseding Indictment failed to allege any statutory aggravators, a necessary element of a capital offense. As a result, Mr. Higgs was deprived of his fundamental Fifth Amendment right to an indictment by grand jury. The prohibition on relitigating claims raised on direct appeal bars raising these issues in a § 2255 motion and Mr. Higgs has demonstrated that § 2241 is a proper vehicle for reviewing the constitutionality of his continued detention in light of intervening law.

The statutory eligibility aggravators are elements of the capital offense and, therefore, must be charged by a grand jury, sufficiently alleged in the indictment, submitted to the petit jury, and proven beyond a reasonable doubt. *Ring v. Arizona*, 536 U.S. 584 (2002); *United States v. Robinson*, 367 F.3d 278, 284 (5th Cir. 2004) ("*Ring*'s Sixth Amendment holding applies with equal force in the context of a Fifth Amendment Indictment Clause challenge, even though the Supreme Court has yet to hold as much in a capital case.").

However, the Second Superseding Indictment returned against Mr. Higgs did not contain even a passing reference to a single statutory aggravator, a necessary element of each capital offense. Nonetheless, the Fourth Circuit upheld the convictions and sentences on direct appeal and held that the Superseding Indictment adequately alleged at least one of the statutory aggravating factors ultimately found by the petit jury. *Higgs-1*, 353 F.3d at 300-301.

In rejecting Mr. Higgs's Fifth Amendment challenge, the Fourth Circuit held that statutory aggravators based on prior convictions are sentencing factors and, therefore, need not have been alleged in the indictment. *Higgs*, 353 F.3d at 302 (citing *Almendarez-Torres v. United States*, 523 U.S. 224, 226-27 (1998) for the proposition that a fact of a prior conviction which increases the maximum permissible sentence is not an element of a separate offense but merely a "penalty provision, which simply authorizes a court to increase the sentence for a recidivist.").

As more fully set forth in the 2d Amended Petition, *Almendarez-Torres* is not applicable to capital cases because the aggravating circumstances are not mere sentencing factors, but elements of the crime of capital murder. As a result, *Almendarez-Torres* is irreconcilable with intervening developments in the Supreme Court's Fifth and Sixth Amendment jurisprudence, including *Apprendi v. New Jersey,* 530 U.S. 466 (2000) and *Alleyne v. United States*, 570 U.S. 99 (2013). In *Alleyne*, the Supreme Court offered the following unequivocal rule: "When a finding of fact alters the legally prescribed punishment so as to aggravate it, the fact necessarily forms a constituent part of a new offense and must be submitted to the jury." 570 U.S. at 114-15. Under *Alleyne,* the statutory aggravators based on Mr. Higgs's prior convictions must be treated as elements of the capital offense and the Fifth Amendment requires that they be alleged in the indictment.

As to the only other remaining statutory aggravator (§ 3592(c)(1)), mere inclusion of the word kidnapping in the counts charging felony murder and kidnapping is not sufficient to allege the death during a kidnapping aggravator with respect to any of the six murder counts.[4] The six murder counts did not incorporate any other count by reference and, therefore, validity of the six murder counts cannot depend on the allegations contained in any other count. *See United States v. LeCoe*, 936 F.2d 398, 403 (9th Cir. 1991) ("each count in an indictment must stand on its own, and cannot base its validity on the allegations of any other count not specifically incorporated.").

The use of the word kidnapping in the felony murder counts tracks the statutory language setting forth the elements of felony murder and, absent inclusion of a statutory aggravator, a simple recitation of the elements of the felony murder statute charges murder – *not capital murder*. The other three murder counts, read alone, as they must be, do not contain a single reference to a kidnapping and, thus, fall short of alleging § 3592(c)(1) statutory aggravator.

In short, in the absence of a single sufficiently alleged statutory aggravator, Mr. Higgs was convicted of charges the grand jury never made against him. This deprivation of his basic Fifth Amendment rights "is far too serious to be treated as nothing more than a variance and then dismissed as harmless error." *Stirone v. United States*, 361 U.S. 212, 217 (1960). Therefore, Mr. Higgs's convictions and death sentences for six counts of first-degree murder and three counts of kidnapping resulting in death must be vacated.

---

[4] The final aggravator the petit jury found, (multiple killings, 18 U.S.C. § 3592(c)(16)), was not added to the Federal Death Penalty Act as a statutory aggravator until April 1996, three months after the murders occurred. Given this, the Government cannot rely upon the multiple killings as a statutory eligibility aggravator because doing so would violate the Ex Post Facto Clause. *Higgs*, 353 F.3d at 300-301 ("we hold that the 'multiple killings' aggravator cannot act as the sole statutory aggravator which rendered these murders death-eligible.").

Because relief under § 2255 is structurally unavailable, and because Mr. Higgs challenges the constitutionality of the continued implementation of his death sentence and confinement on death row in light of recent developments in the applicable law, proceeding under § 2241 is appropriate.

## II.     Mr. Higgs Will Suffer Irreparable Injury Without a Stay.

Mr. Higgs's execution is scheduled for January 15, 2021. The harm to Mr. Higgs of being put to death – where Mr. Higgs was not the shooter, where no evidentiary hearing has ever been held to resolve the outstanding issues stemming from Mr. Gloria's involvement in the Baltimore murder and determine whether the Government violated its *Brady* obligations, and where the trial court lacked jurisdiction to try and sentence Mr. Higgs for capital offenses – cannot be overstated.

The death penalty is precisely the type of irreparable harm that must "weigh[] heavily" towards the granting of a stay. *O'Bryan v. Estelle*, 691 F.2d 706, 708 (5th Cir. 1982); *see also Barefoot*, 463 U.S. at 893. In a capital case, the court "must be particularly certain that the legal issues have been sufficiently litigated, and the criminal defendant accorded all the protections guaranteed him by the Constitution of the United States." *O'Bryan*, 691 F.2d at 708 (internal quotation marks omitted (citing *Shaw v. Martin*, 613 F.2d 487, 491 (4th Cir. 1980))). Therefore, a stay is appropriate in a capital case when, as here, the legal issues present "serious questions that can be neither ignored nor brushed aside." *Bundy v. Wainwright*, 808 F.2d 1410, 1422 (11th Cir. 1987).

## III.    A Stay Will Not Substantially Harm the Government; the Potential Injury to Mr. Higgs Outweighs Any Harm to Respondents.

The Government's interest in securing Mr. Higgs's execution before full and fair judicial review of his *Brady* and Fifth Amendment Indictment Clause claims is adherence to an arbitrary

14

schedule. Mr. Higgs's request for a stay is not based on any delay on his part. Until recently, the Government had not carried out an execution since 2003 and has had no execution protocol in place since 2011. In the meantime, Mr. Higgs has diligently pursued the claims raised in the 2d Amended Petition, seeking relief under 28 U.S.C. § 2255 in 2005 (through the denial of certiorari in 2012), seeking relief under Rule 60(d) (through the denial of certiorari in 2018), and seeking additional discovery to support the claim through FOIA litigation (denial affirmed by Seventh Circuit in 2019). When the Government announced Mr. Higgs's execution date on November 20, 2020, approximately one month ago, Mr. Higgs continued his ongoing litigation efforts and filed the 2d Amended Petition on December 23, 2020. *See* ECF No. 14-1.

Given the circumstances, Mr. Higgs was diligent in bringing his 2d Amended Petition, and the posture of his litigation therefore stands in contrast to those cases where last–minute stay requests have been denied due to a prisoner's delay. *See, e.g.*, *Nelson v. Campbell*, 541 U.S. 637, 649 (2004) (court may deny a stay of execution based on a civil rights claim when prisoner is abusive, *citing*, *Gomez v. United States Dist. Court for Northern Dist. of Cal.*, 503 U.S. 653 (1992)); *Hill*, 547 U.S. at 584 ("A court considering a stay must also apply a strong equitable presumption against the grant of a stay *where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay*.") (internal quotation marks and citations omitted).

In any event, under no scenario can the Government's interest in adhering to an arbitrarily accelerated execution schedule, set more than fifteen years after the last federal execution and packed into a lame-duck President's last week in office, outweigh the interest of the Petitioner and the public in ensuring that Petitioner's constitutional rights were not violated.

## IV.     The Public Interest Weighs in Favor of a Stay.

As the last man to be executed before the change in presidential administrations, Mr. Higgs's impending execution is highly publicized. The public interest is "in having a just judgment," *Arizona v. Washington*, 434 U.S. 497, 512 (1978), not simply in having an execution. The public has no interest in executing a man where the Government withheld critical information affecting the credibility of its star witness. Indeed, the opposite is true. The public interest lies in ensuring that the Government obeyed its ethical and constitutional duties, not that it successfully hid exculpatory evidence until after appellate and collateral proceedings were completed. In addition, the public has an interest in ensuring that the Government has complied with the requirements of the Fifth Amendment – less their own constitutional protections be diminished – and to ensure that a person will not be executed unless the trial court had the jurisdiction to try and sentence him for capital offenses.

This Court has an opportunity to remind the public that our justice system does not execute inmates without holding an evidentiary hearing while questions still remain about whether the Government withheld material information at trial and whether the trial court had jurisdiction to try the defendant capitally in the first place. To the extent there is a public interest in timely enforcement of a death sentence, that interest does not outweigh the public interest in knowing that the federal government will carry out an execution in conformity with the Constitution. The balance of harms weighs in Mr. Higgs's favor.

## REQUEST FOR RELIEF

WHEREFORE, for the foregoing reasons and those explained in his 2d Amended § 2241

Petition, Mr. Higgs respectfully requests that the Court stay his execution pending its

consideration of his *Brady* and Fifth Amendment Indictment Clause claims.

Respectfully submitted,

/s/ Matthew C. Lawry
Matthew C. Lawry
Federal Community Defender Office
for the Eastern District of Pennsylvania
The Curtis, Suite 545-West
601 Walnut Street
Philadelphia, PA 19106
215-928-0520
Matthew_Lawry@fd.org

December 24, 2020

**<u>CERTIFICATE OF SERVICE</u>**

I, Matthew C. Lawry, hereby certify that on this 24th day of December, 2020, the

foregoing was filed electronically through ECF/CM. Notice of this filing will be sent to

the following parties by operation of the Court's electronic filing system. Parties may

access this filing through the Court's system:

Ellen Nazmy
Sandra Wilkinson
Assistant United States Attorneys
Office of the United States Attorney
36 S. Charles Street, 4th Floor
Baltimore, MD 21201


/s/ Matthew C. Lawry
Matthew C. Lawry