**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**TERRE HAUTE DIVISION**

| | | |
|---|---|---|
| **DUSTIN J. HIGGS,** | * | |
| **Petitioner,** | * | |
| **v.** | * | |
| | | **No. 2:20-cv-00665-JPH-DLP** |
| **T. J. WATSON,** | * | |
| **Respondent.** | * | |

**GOVERNMENT OPPOSITION TO MOTION FOR A STAY OF EXECUTION**

More than 20 years ago, Dustin Higgs ordered the cold-blooded murder of three innocent young women on federal lands. He was convicted after a jury trial of multiple first degree murder, kidnapping, and firearms offenses, and sentenced to death. The convictions and sentences were upheld throughout exhaustive challenges on direct appeal and in post-conviction proceedings under 28 U.S.C. § 2255 and Rule 60—all of which were rejected. Now, just weeks before Higgs's scheduled execution, he seeks a stay to prevent the carrying out of his sentence based on supposedly "new" evidence that he concedes has been in his possession for more than eight years, and a "new" Supreme Court decision handed down seven years ago. No such relief is appropriate here, for two reasons.

First, Higgs cannot establish the significant likelihood of success necessary to support a stay of execution. *See Lambert v. Buss*, 498 F.3d 446, 447 (7th Cir. 2007). Congress has provided in 28 U.S.C. § 2255(e) that federal prisoners may not use a petition for a writ of habeas corpus to circumvent the normal federal post-conviction review procedures that Section 2255 itself affords, unless they show that Section 2255 is "inadequate or ineffective" to assert their claims. Higgs makes no such showing here. Indeed, he already asserted these very same claims in his earlier

proceedings, and they were rejected because they lack merit.  As to Higgs's claim under *Brady v. Maryland*, 373 U.S. 83 (1963), the district court that presided over his trial determined that any additional "evidence that [trial witness Victor] Gloria may have received consideration for his testimony beyond that disclosed by the Government," including specifically the "benefits in relation to . . . charges he potentially faced in Baltimore" on which Higgs's present motion focuses, "could not have further undermined [Gloria's] already low credibility, nor would it have created a 'reasonable probability' of a more favorable verdict."  *Higgs v. United States*, 711 F. Supp. 2d 479, 508-09 (D. Md. 2010).  And as to Higgs's claim that his indictment was defective because it failed to allege a statutory aggravator, the Fourth Circuit determined that "[t]he indictment is not defective as to the first-degree murder charges because it sufficiently alleged the 'death during commission of another crime' aggravator," and because "[t]he Fifth Amendment Indictment Clause does not require an indictment to allege prior convictions that expose a defendant to an enhanced penalty."  *United States v. Higgs*, 353 F.3d 281, 301, 304 (4th Cir. 2003).  Higgs asks this Court to consider those same claims anew and reach a different result, but Section 2255(e) squarely bars such relitigation of claims.  Further, his claims are barred by the law of the case doctrine.  *United States v. Aramony*, 166 F.3d 655, 661 (4th Cir. 1999) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815-16 (1988)) ("'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'").

Second, Higgs also cannot show that the balance of equities favors entry of a stay here. *See Lambert*, 498 F.3d at 447.  The Supreme Court has repeatedly held that a court considering a stay of execution "must . . . apply 'a strong equitable presumption against the grant of a stay where

2

a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay.'" *Hill v. McDonough*, 547 U.S. 573, 584 (2006) (citation omitted). Here, Higgs concedes that the evidence he offers in support of his *Brady* claim has been in his possession since 2012, and rests his request to relitigate his claim of indictment error on the Supreme Court's 2013 decision in *Alleyne v. United States*, 570 U.S. 99 (2013). He identifies no reason for his decision to wait until December 2020 to assert those claims, and this Court should not allow him to use such gamesmanship to frustrate the "important interest in the timely enforcement of a [death] sentence." *Bucklew v. Precythe*, 139 S. Ct. 1112, 1133 (2019) (citation and internal quotation marks omitted); *see id.* at 1134 ("Courts should police carefully against attempts to use such challenges as tools to interpose unjustified delay. Last-minute stays should be the extreme exception, not the norm, and the 'last-minute nature of an application' that 'could have been brought' earlier . . . 'may be grounds for denial of a stay.'" (citation omitted)). The United States of America respectfully submits this Response in opposition to Higgs's Motion for a Stay of Execution. The petition should be denied. Higgs has received due process at the highest levels of the criminal justice system. Notably, none of Higgs' claims assert his innocence of the crimes charged and he remains without remorse for what he did.

## FACTUAL BACKGROUND

### Higgs's Triple Murder

On January 26, 1996, Dustin Higgs arranged a triple-date that descended into triple-murder. *United States v. Higgs*, 353 F.3d 281, 289 (4th Cir. 2003). Higgs, along with Willis Mark Haynes and Victor Gloria, drove from Higgs's apartment in Maryland to Washington, D.C. to pick up

3

Tanji Jackson, Tamika Black, and Mishann Chinn. *Id*. They stopped at a liquor store and returned to Higgs's apartment. *Id*.

After the six socialized in the apartment for a time, Higgs and Jackson got into an argument and the three women left to return to their respective homes in Washington, D.C. *Id.* at 289-90. Higgs, watching the women leave from his balcony, saw Jackson appear to write down his license plate number. *Id.* Higgs said that Jackson was "writing down [his] s***," which Gloria interpreted as an intention to retaliate. *Id.*

Higgs responded, "f*** that," grabbed his coat, and said, "come on." *Id.* He retrieved a silver .38 caliber firearm and put it in his pocket. *Id.* The three men entered Higgs's vehicle and drove to where the three women were walking on the side of the road. *Id.* Higgs persuaded them to get into the van with a promise of a ride home. *Id.* Higgs started driving towards Washington, D.C. *Id.* Along the way, Higgs and Haynes leaned towards each other and engaged in a hushed conversation. *Id.*

Instead of driving the women home, Higgs drove into the Patuxent National Wildlife Refuge. *Id.* Eventually, he pulled the vehicle over at a secluded location. *Id.* One of the women asked if Higgs was going to "make [them] walk from [t]here," and he responded, "something like that." *Id.*

After the women got out of the van, Higgs pulled out the pistol and handed it to Haynes, who put it behind his back and also exited the van. *Id.* As Higgs watched in the rearview mirror, Haynes shot Jackson and Black in the chest and Chinn in the back of the head, killing all three. *Id.* at 290-91.

Haynes re-entered the vehicle. *Id.* at 290. Needing to "get rid of the gun," Higgs drove to the Anacostia River and threw the gun in the water. *Id.* They returned to Higgs's apartment and cleaned the scene: wiping down the patio doors and "everything else, the bathroom, the doorknobs, the stereo" and threw away items the women might have touched. *Id.* Higgs and Haynes dropped Gloria off at a fast food restaurant. *Id.* Higgs told Gloria to "keep [his] mouth shut." *Id.*

## **PROCEDURAL BACKGROUND**

### **Higgs's Nine Death Sentences**

In 1998, Higgs and Haynes were indicted on three counts each of first-degree premeditated murder, in violation of 18 U.S.C. § 1111(a), first-degree murder committed in the preparation or attempted preparation of kidnapping, in violation of 18 U.S.C. § 1111(a), kidnapping resulting in death, in violation of 18 U.S.C. § 1201(a), and using a firearm in the commission of a crime of violence, in violation of 18 U.S.C. § 924(c).[1] *Higgs*, 353 F.3d at 294. The government filed a notice of its intent to seek a death sentence for the murder and kidnapping charges. *Id.*

A jury found Higgs guilty as charged. *Higgs*, 353 F.3d at 294. The verdict forms specified that the jury found Higgs guilty of the first degree premeditated murder of Black, Chinn, and Jackson. *See* Government's Exhibit A, Verdict Form.

At the penalty phase, the jury returned a sentence of death for each of the murder and kidnapping counts. *Id.* The district court imposed nine death sentences. *Id.* at 295. The court

---

[1] The cases were severed for trial. *Higgs*, 353 F.3d at 294. Haynes, who confessed, was tried first and convicted. *Id.* The jury was unable to reach a unanimous verdict on the death sentence, by all accounts because Haynes had only just turned 18 at the time of the murders. *Id.* Thus, Haynes was sentenced to concurrent life terms for the first-degree murder and kidnapping counts and to a consecutive 45-year term for the firearm offenses. *Id.*

also imposed consecutive terms of 5, 20, and 20 years, for a total of 45 years for the three § 924(c) convictions. *Id.*

Higgs appealed, raising twenty separate claims. *Id.* The Fourth Circuit affirmed. *Id.* at 334. As is relevant here, Higgs argued that his indictment was constitutionally defective because it failed to allege all the statutory intent and aggravating factors relied upon by the government. *Id.* at 299. In its published opinion, the Fourth Circuit rejected this claim, ruling:

> So long as one statutory aggravating factor is alleged in the indictment and the petit jury finds that statutory aggravating factor to exist, the indictment is not defective as to the capital offense charged. The elements of the offense of conviction have been charged in the indictment, submitted to the jury, and proven beyond a reasonable doubt.

*Id.* (internal citations omitted). The Fourth Circuit then held that "[t]he indictment . . . sufficiently alleged the 'death during commission of another crime' aggravator," and accordingly "is not defective as to the first-degree murder charges." *Id.* at 301. And the Fourth Circuit additionally held that "the indictment is not defective as to either the first-degree murder counts or the kidnapping-resulting-in-death counts" because the "prior conviction" aggravators supporting those counts were "not required to be alleged in the indictment" in light of *Almendarez-Torres v. United States*, 523 U.S. 224 (1998). *Higgs*, 353 F.3d at 301-02.

The Supreme Court denied Higgs's subsequent petition for writ of certiorari. *Higgs v. United States*, 543 U.S. 999 (2004).

**<u>Post-Conviction Motions</u>**

Following his unsuccessful direct appeal, Higgs filed a motion for a new trial in the District of Maryland. *See United States v. Higgs*, 95 F. App'x 37 (4th Cir. 2004). That motion was denied by the district court and affirmed by the Fourth Circuit. *Id.* at 38.

6

In November 2005, Higgs filed a motion under 28 U.S.C. § 2255, asserting twenty-five claims of error.  *Higgs v. United States*, 711 F. Supp. 2d 479 (D. Md. 2010).  Among them was a claim alleging the indictment was insufficient for failing to allege the intent and aggravating factors that were considered during the sentencing phase of his trial.  *Id.* at 538.  The district court denied Higgs's § 2255 motion in all respects, "finding merit in none of them."  *Id.* at 557.  With respect to the insufficiency claim, the court found it was procedurally barred as previously litigated and also meritless under the Fourth Circuit's binding decision on direct appeal.  *Id.* ("*Higgs I* remains the controlling authority on the matter, obliging the Court to accept the decision that Higgs' indictment is constitutionally sound.").

Another claim alleged that the government offered cooperator Victor Gloria "benefits in relation to state charges pending against him in Virginia as well as charges he potentially faced in Baltimore"—specifically "that state charges were never brought against Gloria for a homicide in Baltimore."  *Id.* at 508.  The Court rejected this claim too, finding:

> Higgs, quite simply, has failed to demonstrate any causal connection between Gloria's testimony in this federal case and whatever treatment he may have received in the state jurisdictions.

> Even were the Court to find that the prosecution failed to turn over any of this evidence, and again assuming the factual accuracy of the supposed benefits, Higgs has not demonstrated its materiality.  Gloria's credibility as a witness was thoroughly explored and impugned by Higgs' counsel through vigorous cross-examination.  Gloria openly confessed to an extensive criminal history, going so far as to state that "if it is going to help Victor Gloria, Victor Gloria will do whatever he has to do."  Unquestionably counsel established that Gloria was a witness of dubious reliability, whose testimony the jury could weigh accordingly.  In other words, any evidence that Gloria may have received consideration for his testimony beyond that disclosed by the Government could not have further undermined his already low credibility, nor would it have created a "reasonable probability" of a more favorable verdict.

*Id*. at 508-509 (quoting *Kyles v. Whitley*, 514 U.S. 419, 434 (1995) (quoting *United States v. Bagley*, 473 U.S. 667 (1995)).

The Fourth Circuit granted a certificate of appealability only as to a claim related to lead bullet analysis, and affirmed the district court's decision, citing *inter alia* "overwhelming evidence of Higgs's role in the murders." *United States v. Higgs*, 663 F.3d 726, 742 (4th Cir. 2011). The Supreme Court denied Higgs's petition for a writ of certiorari. *Higgs v. United States*, 133 S. Ct. 787 (2012).

In December 2014, Higgs filed a Motion for Relief from Final Judgment Pursuant to *Hazel-Atlas Glass Co. v. Hartford-Empire Co.* and Federal Rule of Civil Procedure 60(d). ("Rule 60 Motion"), asking the district court to set aside the denial of his § 2255 motion based on newly discovered evidence, alleging that he "unearthed evidence from a police file that he says proves the U.S. Government committed fraud on the Court during the § 2255 proceedings." *United States v. Higgs*, 193 F. Supp. 3d 495, 496 (D. Md. 2016). The new evidence Higgs relied on was a series of handwritten notes from the police file concerning a Baltimore murder investigation showing that Victor Gloria was a suspect in the 1998 killing of one Martrelle Creighton, who was stabbed during a fight in the Baltimore Inner Harbor. *Id*. at 499-505.

The district court denied the Rule 60 Motion, writing:

> The Court has no trouble concluding that Higgs has failed to meet his "very high bar" of showing by clear and convincing evidence that Gloria received leniency in the Creighton case in exchange for his testimony in the federal trial. *See Fox*, 739 F.3d at 136-37; *see also Herring*, 424 F.3d at 390 (employing a "demanding standard" for independent actions alleging fraud on the court). There was no fraud on the Court during § 2255 proceedings.

> It is therefore unnecessary to discuss at length the issue of materiality of the Government's supposed fraud. If there was no fraud, as the Court finds here,

8

materiality is a moot point.  Suffice it to here reiterate what the Court said when ruling on Higgs's § 2255 Motion:

> Even were the Court to find that the prosecution failed to turn over any of this evidence, and again assuming the factual accuracy of the supposed benefits, Higgs has not demonstrated its materiality.  Gloria's credibility as a witness was thoroughly explored and impugned by Higgs' counsel through vigorous cross-examination.  Gloria openly confessed to an extensive criminal history, going so far as to state that "if it is going to help Victor Gloria, Victor Gloria will do whatever he has to do." Unquestionably counsel established that Gloria was a witness of dubious reliability, whose testimony the jury could weigh accordingly. *In other words, any evidence that Gloria may have received consideration for his testimony beyond that disclosed by the Government could not have further undermined his already low credibility, nor would it have created a "reasonable probability" of a more favorable verdict.*

*Higgs III*, 711 F.Supp.2d at 508 (emphasis added).

*Higgs*, 193 F. Supp. 3d at 513-14 (emphasis in original).  Higgs appealed to the Fourth Circuit, which denied a certificate of appealability and dismissed the appeal.  *United States v. Higgs*, Case No. 16-15.

In 2016, Higgs filed an application with the Fourth Circuit to file a second or successive § 2255 motion.  *In re: Dustin Higgs*, No. 16-008, (4th Cir. May 23, 2016).  In his motion, he sought to challenge his § 924(c) convictions under *Johnson v. United States*, 135 S. Ct. 2251 (2015), which invalidated the residual clause of the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), as unconstitutionally vague.  *Id.*  The Fourth Circuit summarily denied the application. *Higgs*, No. 16-008, Doc. No. 13 (June 27, 2016).

Three months later, Higgs filed a petition for writ of habeas corpus under 28 U.S.C. § 2241, in this district, again raising a claim under *Johnson*.  ECF No. 3, in Case No. 2:16-cv-00321-JMS-MJD.  The district court stayed the proceedings, pending the outcome of *United States v. Davis*, 139 S. Ct. 2319 (2019), where the Supreme Court ultimately held that the residual clause of 18

9

U.S.C. § 924(c)(3)(B) was unconstitutionally vague.  Subsequently, this Court denied Higgs's §

2241 petition, finding that he could not meet the savings clause of 28 U.S.C. § 2255(e) because

*Davis* was a constitutional ruling, and not one of statutory interpretation.  ECF No. 42, in Case No.

2:16-cv-00321-JMS-MJD.

Higgs appealed this Court's denial to the Seventh Circuit.  *Higgs v. T. J. Watson*, Case No.

20-2129.  The appeal is fully briefed, with oral argument scheduled for January 5, 2021.

Following *Davis*, Higgs filed another application in the Fourth Circuit to file a successive

§ 2255 motion, raising a claim under *Davis*.  *In re: Dustin Higgs*, No. 20-002.  On February 6,

2020, the Fourth Circuit summarily denied Higgs's application.  *Id*. at Doc. No. 17.

On December 14, 2020, Higgs filed a *pro se* petition for habeas corpus relief under 28

U.S.C. § 2241, along with a motion for leave to proceed *in forma pauperis* and a motion for leave

to file *pro se*.  ECF No. 1.[2]  On December 23, 2020, Higgs filed through counsel a Motion for

Leave to Amend Petition for Writ of Habeas Corpus, requesting leave to file the attached Second

Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241.  ECF No. 14.  Higgs

also filed through counsel a Motion for Stay of Execution.  ECF No. 15.  The Court granted the

request to amend, and directed the government to respond to the Motion for Stay of Execution on

or before January 4, 2021.  ECF No. 16.

---

[2]     On December 17, 2020, Higgs filed an amended *pro se* petition, a motion for leave to proceed *in forma pauperis* and a motion for leave to file *pro se*.  ECF No. 8.  This Court denied the latter two as duplicative of the motions previously granted and amended its Show Cause Order to require the government to respond to the amended petition "rather than the original petition."  ECF No. 11.

## LEGAL FRAMEWORK

A stay of execution is a form of equitable relief in which the standards for a preliminary injunction generally apply. *See Williams v. Chrans*, 50 F.3d 1358, 1360 (7th Cir. 1995). A capital prisoner seeking a stay of execution pending additional legal proceedings bears the burden of demonstrating: (1) he will suffer irreparable harm if a stay is not granted; (2) he has a significant likelihood of success on the merits in the pending legal proceedings; and (3) the balance of equities (the harms to the prisoner and the government, as well as the interests of the public at large) weigh in favor of a stay. *Lambert v. Buss*, 498 F.3d 446, 447 (7th Cir. 2007); *see Nken v. Holder*, 556 U.S. 418, 434 (2009).

The requirement that the movant "make a '*strong* showing' of probable success on the merits" is a demanding one—a court may not grant a stay even if it is based on a "significant possibility" of success or a finding "that evaluating [the defendant]'s arguments will take more time." *Lee v. Watson*, No. 19-3399, 2019 WL 6718924, at *1 (7th Cir. Dec. 6, 2019) (unpublished) (quoting *Nken*, 556 U.S. at 434) (emphasis added). Indeed, the Supreme Court recently vacated a stay of execution for a federal prisoner where the Seventh Circuit had found only that the prisoner's claims were "worthy of further exploration" and that a stay would permit more "time for consideration and deliberation." *Purkey v. United States*, 964 F.3d 603, 618 (7th Cir.), *stay vacated*, 141 S. Ct. 195 (July 15, 2020); *see also Purkey v. United States*, 812 F. App'x 380, 382 (7th Cir. 2020) (unpublished) (clarifying that, to issue a stay, the likelihood of success must be "strong enough to satisfy *Nken*'s first requirement").

The Seventh Circuit has also observed that "[t]he prospect of irreparable injury" is "not itself enough" to justify a stay of execution, *Lee*, 2019 WL 6718924, at *1, because irreparable

11

injury is generally taken as a given in capital cases, *Chrans*, 50 F.3d at 1360.  As for the remaining equitable considerations, when a defendant's conviction and sentence have been upheld on direct appeal and collateral review, a court must recognize the government's "strong interest in proceeding with its judgment." *Lambert*, 498 F.3d at 452 (quoting *Nelson v. Campbell*, 541 U.S. 637, 649 (2004)); *see Bucklew v. Precythe*, 139 S. Ct. 1112, 1133-34 (2019) (explaining that "[b]oth the State and the victims of crime have an important interest in the timely enforcement of a [death] sentence" that has been upheld on direct appeal and collateral review, and "[c]ourts should police carefully against attempts to use [further] challenges as tools to interpose unjustified delay") (quotation marks omitted).

## LEGAL ANALYSIS

## I.     Higgs Cannot Establish A Significant Likelihood Of Success On His Claims

As an initial matter, Higgs's motion for a stay of execution should be denied because he cannot make a strong showing that he is likely to prevail on the merits.  On the contrary, 28 U.S.C. § 2255(e) bars Higgs's attempt to assert under § 2241 claims that he could have litigated—and indeed *did* litigate—under § 2255.

### A. Federal Prisoners Cannot Use A Petition For A Writ of Habeas Corpus Under § 2241 To Assert Claims That Could Have Been, Or Were, Asserted Under § 2255

"As a general matter, § 2255 provides the exclusive means for a federal prisoner to collaterally attack his conviction or sentence." *Beason v. Marske*, 926 F.3d 932, 935 (7th Cir. 2019); *see Chazen v. Marske*, 938 F.3d 851 (7th Cir. 2019) ("[A] federal prisoner wishing to collaterally attack his conviction must do so under § 2255 in the district of conviction."); *Light v. Caraway*, 761 F.3d 809, 812 (7th Cir. 2014) (same); *Kramer v. Olson*, 347 F.3d 214, 217 (7th Cir.

2013) ("A Section 2255 motion is ordinarily the 'exclusive means for a federal prisoner to attack his conviction."); *Hill v. Werlinger*, 695 F.3d 644, 647-48 (7th Cir. 2012) (same).

Under § 2255, a prisoner has a one-year window to collaterally attack his conviction (running from one of four dates specified in the statute). 28 U.S.C. § 2255(f). A prisoner is generally limited to one motion under § 2255, unless he receives permission to file a second or successive motion from the appropriate court of appeals. 28 U.S.C. § 2255(h). A second petition may be authorized if: (1) there is compelling newly discovered evidence of innocence or (2) it is based on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court." *Id*.; *see also Purkey v. United States*, 964 F.3d 603, 611 (7th Cir. 2020).

However, § 2255 also contains a "savings clause." § 2255(e). This is a "narrow pathway" permitting a prisoner to file a claim under § 2241 in his district of confinement. *Purkey*, 964 F.3d at 611; *Chazen*, 938 F.3d at 856 (citing *Light*, 761 F.3d at 812). The savings clause reads as follows:

> An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.

28 U.S.C. § 2255(e).

That language "focus[es] on procedures rather than outcomes." *Taylor v. Gilkey*, 314 F.3d 832, 835 (7th Cir. 2002). Thus, "something more than a lack of success with a section 2255 motion must exist before the savings clause is satisfied." *Webster v. Daniels*, 784 F.3d 1123, 1136 (7th Cir. 2015) (en banc). Put differently, "§ 2255 is 'inadequate or ineffective' only when a structural problem in § 2255 forecloses even one round of effective collateral review." *Taylor*, 314 F.3d at

13

835; *see also Chazen*, 938 F.3d at 856 (citing *In re Davenport*, 147 F.3d 605, 609 (7th Cir. 1998));

*Montana v. Cross*, 829 F.3d 775, 783 (7th Cir. 2016).  Section 2255 is not inadequate or ineffective

simply because a prisoner may be barred from filing a second § 2255 motion, a point the Seventh

Circuit has made abundantly clear.  "To hold otherwise . . . would be to nullify the limitations on

successive petitions," such that "the careful structure Congress has created to avoid repetitive

filings would mean little or nothing."  *Garza v. Lappin*, 253 F.3d 918, 921-22 (7th Cir. 2001)

(citing *Davenport*, 147 F.3d at 608).

The interplay between § 2255 and § 2241 was explained in *Fulks v. Krueger*, 2019 WL

4600210, at *2 (S.D. Ind. Sept. 20, 2019).  There, the court observed, "Prior to the enactment of

28 U.S.C. § 2255 in 1948, federal prisoners wishing to file a collateral attack on their convictions

or sentences were required to petition for a writ of habeas corpus—codified at 28 U.S.C. § 2241—

in the federal district court in which they were incarcerated.'"  *Id*. (quoting *Davenport*, 147 F.3d

at 608).  In enacting § 2255, Congress crafted a new procedure that diverted federal prisoner habeas

attacks from the district of confinement into the "'more convenient' jurisdiction of the sentencing

court," *United States v. Hayman*, 342 U.S. 205, 219 (1952), while still "afford[ing] federal

prisoners a remedy identical in scope to federal habeas corpus," *Davis v. United States*, 417 U.S.

333, 343 (1974).  To that end, § 2255(a) provides that "[a] prisoner in custody . . . claiming the

right to be released upon the ground that the sentence was imposed in violation of the Constitution

or laws of the United States . . . may move the court which imposed the sentence to vacate, set

aside or correct the sentence."  28 U.S.C. § 2255(a).

"As a rule, the remedy afforded by section § 2255 functions as an effective substitute for

the writ of habeas corpus, [28 U.S.C. § 2241], that it largely replaced.'"  *Fulks*, 2019 WL 4600210,

14

at \*2 (quoting *Webster*, 784 F.3d at 1124); *Brown v. Caraway*, 719 F.3d 583, 586 (7th Cir. 2013) ("Federal prisoners who seek to bring collateral attacks on their conviction or sentences must ordinarily bring an action under 28 U.S.C. § 2255, 'the federal prisoner's substitute for habeas corpus.'") (internal citation omitted). It does not follow, however, that habeas corpus relief under 28 U.S.C. § 2241 is a substitute for § 2255. Congress's original intent in codifying § 2255 was that this new motion be used instead of, not in addition to, the traditional habeas corpus remedy.

However, in a "narrow class of cases," *Kramer*, 347 F.3d at 217, a federal prisoner may seek traditional habeas corpus relief under § 2241 if § 2255's remedy "is inadequate or ineffective to test the legality of his detention," satisfying the savings clause. 28 U.S.C. § 2255(e). The fact "that one has lost the right to relief under § 2255 does not automatically mean that one gets relief under § 2241." *Cooper v. United States*, 199 F.3d 898, 901 (7th Cir. 1999). "It is only when a fundamental defect exists in the criminal conviction—a defect which cannot be corrected under § 2255—that we turn to § 2241." *Id*. "[I]n the overwhelming majority of cases § 2255 specifically prohibits prisoners from circumventing § 2255 and challenging their convictions or sentences through a habeas petition under § 2241." *United States v. Prevatte*, 300 F.3d 792, 799 (7th Cir. 2002) (quoting *Garza*, 253 F.3d at 921)).

Congress created § 2255(e) to serve as a safety hatch to "preserve and authorize access to the traditional habeas corpus relief under 28 U.S.C. § 2241 if the remedy available under § 2255 was 'inadequate or ineffective to test the legality of his detention." *Beason*, 926 F.3d at 935; *Shepherd v. Krueger*, 911 F.3d 861, 862 (7th Cir. 2018), *cert. denied*, 138 S. Ct. 1582 (2019). As codified, § 2255(e) is not available "if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him," or simply because "such court has denied him relief."

15

A petitioner must show "that the *remedy* by motion be inadequate or ineffective to *test* the *legality* of his detention." *Id.* (emphasis added).

The Seventh Circuit has stated that § 2255's motion remedy is inadequate or ineffective only when "a structural problem in § 2255 forecloses even one round of effective collateral review—and then only when . . . the claim being foreclosed is one of actual innocence," *Taylor*, 314 F.3d at 835, or, that the sentence is in excess of that permitted by law, *see*, *e.g.*, *Brown*, 719 F.3d at 587-88. Whether there is a structural problem, that is, whether § 2255 is "inadequate or ineffective to test the legality" of a prisoner's "detention," 28 U.S.C. § 2255(e), "focus[es] on procedures rather than outcomes." *Taylor*, 314 F.3d at 835. In other words, "something more than a lack of success with a section 2255 motion must exist before the savings clause is satisfied." *Webster*, 784 F.3d at 1136; see *Davenport*, 147 F.3d at 611 ("A procedure for postconviction relief can fairly be termed inadequate when it is so configured as to deny a convicted defendant *any* opportunity for judicial rectification of so fundamental a defect in his conviction as having been imprisoned for a non-existent offense." (emphasis in original)).

It is the petitioner's burden to establish that his remedy under § 2255 is inadequate or ineffective under these precedents. *Collins v. Bezy*, 2006 WL 418653 at *1 (S.D. Ind. Feb. 17, 2006) (citing *Jeffers v. Chandler*, 253 F.3d 827, 830 (5th Cir. 2001) and *Charles v. Chandler*, 180 F.3d 753, 756 (6th Cir. 1999)); *Turner v. Warden Coleman FCI (Medium)*, 709 F.3d 1328, 1333 (11th Cir. 2013) (quoting 28 U.S.C. § 2255(e)).

### B. Higgs cannot use § 2241 to relitigate claims that were rejected on direct appeal and/or in a previous § 2255 motion.

Higgs claims that his convictions and sentences were "obtained in violation of his right to due process of law where the government withheld evidence that it intervened in the Baltimore

16

murder investigation" involving Victor Gloria.  Petition at 19.  He also alleges that his indictment "did not charge a capital offense and, therefore, the trial court lacked jurisdiction" to try him for capital offenses.  *Id*. at 32.

As an initial matter, Higgs cannot clear the first decisive procedural barrier: § 2241 precludes relitigation of claims already presented and decided.  Here, Higgs already presented the same *Brady* claim concerning Victor Gloria in his § 2255 motion.  *See Higgs*, 711 F. Supp. 2d at 508 ("Higgs also claims that the Government offered Gloria benefits in relation to state charges pending against him in Virginia as well as charges he potentially faced in Baltimore.").  The district court rejected the claim, finding not only that Higgs "failed to demonstrate any causal connection between Gloria's testimony in this federal case and whatever treatment he may have received in the state jurisdictions," but also that "any evidence that Gloria may have received consideration for his testimony beyond that disclosed by the Government could not have further undermined his already low credibility, nor would it have created a 'reasonable probability' of a more favorable verdict."  *Id.*  And the Fourth Circuit affirmed the district court's denial, having granted a certificate of appealability only on a separate issue.  *Higgs*, 663 F.3d at 743.

That Higgs now points to particular evidence purportedly supporting his claim that the government offered Gloria additional benefits for his testimony does not undermine, or allow relitigation of, the earlier determination that any such evidence would have been immaterial.  Indeed, the Section 2255 court made just that point when Higgs attempted to relitigate the claim in a Rule 60 Motion using this same evidence, holding that "even assuming the factual accuracy of Higgs's allegations, he has failed to establish that evidence of benefits to Gloria beyond those already disclosed to the defense would have made a material difference to the outcome of § 2255

proceedings." *Higgs*, 193 F. Supp. 3d at 508; *Higgs*, Case No. 16-15 (denying certificate of appealability and dismissing appeal).

Higgs's claim concerning the sufficiency of the indictment faces the same insurmountable obstacle. Higgs asserted that claim both on direct appeal and in his § 2255 motion. On appeal, the Fourth Circuit ruled: "The elements of the offense of conviction have been charged in the indictment, submitted to the jury, and proven beyond a reasonable doubt. Any additional statutory or nonstatutory aggravating factors may be fairly viewed as sentencing considerations. *Higgs*, 353 F.3d at 299. In doing so, it rejected Higgs's current argument, *see* Petition at 35-38, that the indictment failed sufficiently to allege a single statutory aggravator, concluding that "[t]he indictment . . . sufficiently alleged the 'death during commission of another crime' aggravator," and accordingly "is not defective as to the first-degree murder charges." *Id.* at 301.

Higgs then brought the same claim to the district court in his § 2255 motion. *See Higgs*, 711 F. Supp. 2d at 538 (denying claim that the indictment was insufficient for failing to allege the intent and aggravating factors that were considered during the sentencing phase of his trial as previously litigated and meritless). The Fourth Circuit affirmed the district court's denial, *Higgs*, 663 F.3d at 730, and the Supreme Court denied Higgs's petition for a writ of certiorari. *Higgs*, 133 S. Ct. 787.

Thus, Higgs's § 2241 petition must be dismissed. "A claim presented in a second or successive habeas corpus application under section [2255] that was presented in a prior application shall be dismissed." 28 U.S.C. § 2244(b)(1); *cf. Taylor*, 314 F.3d at 836 (explaining that "[a]lthough § 2244 refers to § 2254 rather than § 2255," it is "equally applicable to § 2255 motions."). Indeed, the Supreme Court has held: "If the prisoner asserts a claim that he has already

18

presented in a previous federal habeas petition, the claim must be dismissed in all cases." *Tyler v. Cain*, 533 U.S. 656, 661 (2001) (citing to 28 U.S.C. § 2244(b)(1)).

Because "[t]he claim [Higgs] now wants to present was presented before," "under § 2244(b) it *must* be dismissed." *Taylor*, 314 F.3d at 836 (emphasis in original). The law of the case doctrine requires it. This doctrine provides that "'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *United States v. Aramony*, 166 F.3d 655, 661 (4th Cir. 1999) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815-16 (1988)). Where a defendant has filed a motion to file a successive petition that is duplicative of an earlier motion that was denied, courts have not hesitated to dismiss the second motion on law of the case grounds. *See Rowe v. Dir., Dep't of Corr.*, 111 Fed. Appx. 150, 151 (4th Cir. 2004); *Harvin v. Rushton*, 104 Fed. Appx. 315, 315 (4th Cir. 2004); *See also Fuller v. United States*, 398 F.3d 644, 648 (7th Cir. 2005) (ruling that the "law of the case" doctrine dictates that "once this court has decided the merits of a ground of appeal, that decision establishes the law of the case and is binding on a [court] asked to decide the same issue in a later phase of the same case, unless there is some good reason for reexamining it.") (quoting *United States v. Mazak*, 789 F.2d 580, 581 (7th Cir.1986)).

Higgs relies on the Seventh Circuit's statement in *Roundtree v. Krueger*, 910 F.3d 312 (7th Cir. 2018), "that § 2255 is 'inadequate or ineffective' when 'it cannot be used to address novel developments either statutory or constitutional law, whether those developments concern the conviction or the sentence." *Id*. at 313 (citing *Davenport*, 147 F.3d at 605; *Brown*, 719 F.3d 583; *Webster*, 784 F.3d at 1123). But *Roundtree* qualified this, holding that "none of this circuit's decisions—and none in the circuits that agree with *Davenport*, *Brown*, and *Webster*—permits

19

relitigation under § 2241 of a contention that was actually resolved in a proceeding under § 2255, unless the law changed after the initial collateral review." *Roundtree*, 910 F.3d at 313. *See id*., at 313-14 ("An attempt to relitigate a theory, in the absence of an intervening change of law, was taken as a paradigm abuse of the writ.").

Stated differently, "the 'savings clause of § 2255 . . . will permit a federal prisoner 'to seek habeas corpus *only* if he had *no reasonable opportunity* to obtain earlier judicial correction of a fundamental defect in his conviction or sentence *because the law changed after his first 2255 motion*.'" *Prevatte*, 865 F.3d at (emphasis added) (quoting *Montana*, 829 F.3d at 783 (quoting *Davenport*, 147 F.3d at 611)).

The Seventh Circuit reiterated in *Hill v. Werlinger* that "'[i]nadequate or ineffective' means that 'a legal theory that could not have been presented under [Section] 2255 establishes the petitioner's actual innocence.'" *Werlinger*, 695 F.3d at 647-48 (citing *Taylor*, 314 F.3d at 835); *In re Davenport*, 147 F.3d at 608. Accordingly, Higgs "must first show that the legal theory he advances relies on a change in law that postdates his first § 2255 motion (for failure to raise a claim the first time around does not render § 2255 'inadequate') *and* 'eludes the permission in section 2255 for successive motions,'" *and* "supports a non-frivolous claim of actual innocence." *Kramer*, 347 F.3d at 217 (emphasis added). Higgs has not identified any new facts or new law that meet this substantial threshold. As discussed below, Higgs's reliance on *Alleyne v. United States* fails in this respect. *See*, Section I.C.2, *infra*. And Higgs has not even claimed actual innocence.

In short, Higgs's attempt to circumvent § 2255(h) and the strict litigation bar under § 2244(b)(2) by proceeding under § 2241 to relitigate his claims amounts to an abuse of the writ.

20

**C. Higgs does not meet his burden of demonstrating that a § 2255 motion is an inadequate or ineffective remedy, and his claims lack merit in any event.**

Even if Higgs had not actually litigated and lost his present claims in his earlier proceedings, § 2255(e) would still preclude his current habeas application. As discussed above, "§ 2255 is 'inadequate or ineffective' only when a structural problem in § 2255 forecloses even one round of effective collateral review." *Taylor*, 314 F.3d at 835; *see also Montana*, 829 F.3d at 783; *Davenport*, 147 F.3d at 611. Higgs identifies no structural problem with § 2255 that would satisfy that demanding requirement. And even if the savings clause did apply, Higgs's claims lack merit.

**1. Claim One: Higgs's allegation that his due process rights were violated under *Brady v. Maryland* fails to satisfy the savings clause, and lacks merit.**

Higgs's first claim alleges that his convictions and sentences were "obtained in violation of his right to due process of law where the government withheld evidence that it intervened in Baltimore murder investigation" involving Victor Gloria. Petition at 19. The sole basis for that claim is Higgs's assertion that the Assistant United States Attorney allegedly convinced the Baltimore City State's Attorney's Office not to charge Victor Gloria with murder. Higgs admits that this exact claim was previously litigated in the district court in both his § 2255 motion and Rule 60 motion, *id*. at 16-19, but insists that "newly discovered evidence" permits him to again revisit his baseless allegations. *Id*. at 29. Yet virtually all of this "new" evidence is the same material that was presented to the district court under Rule 60 in 2014. Indeed, Exhibits One through Thirty-Two to the instant motion, *see* ECF Nos. 13 through 13-32, are identical to Exhibits One through Thirty-Two to the Rule 60 Motion. *See* ECF No. 579-1, in Case No. 8:98-cr-00520-PJM.

21

Exhibits Thirty-Three through Thirty-Six, moreover, do not constitute new evidence, and in any event, do nothing more to evidence the alleged *Brady* violation. Exhibit Thirty-Three is an August 2012 declaration by Higgs's codefendant, Willis Haynes, asserting: "Dustin didn't threaten me. I was not scared of him. Dustin didn't make me do anything that night or ever." ECF No. 13-33. The declaration was signed by Haynes *more than eight years ago*,[3] and is directly contradicted by Haynes's own confession—in which he stated that "he had shot the women because he was afraid that Higgs would kill him if he did not kill the women." *United States v. Haynes*, 26 F. App'x 123, 131 (4th Cir. 2001).

Exhibits Thirty-Four and Thirty-Five are an order and a transcript in a separate, unrelated case—proffered for no other purpose than mudslinging—and have absolutely no bearing on the instant matter. *See* ECF Nos. 13-34, 13-35. Not only did the district court find Higgs' allegations about the Victor Gloria disclosures both baseless and immaterial, that issue did not even involve the same prosecutor as the one against whom Higgs has now gratuitously inserted for purely salacious reasons allegations raised by a different defendant against a different prosecutor in an unrelated case before a different judge fifteen years after Higgs was convicted. Exhibit Thirty-Six is the Second Superseding Indictment, and is not relied upon with respect to claim one. *See* ECF No. 13-36.

---

[3] Higgs made no attempt in 2012 – or at any time – to file a request for authorization to file a successive § 2255 motion pursuant to 28 U.S.C. § 2244 in the Fourth Circuit based on "newly discovered evidence" under 28 U.S.C. § 2255(h)(1) (permitting a successive § 2255 containing "newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense.").

None of the material provided constitutes newly discovered evidence, and none of it suffices to bring this claim within the § 2255 savings clause. Moreover, it does nothing to exculpate Higgs or establish that a violation of his right to due process of law occurred.

### a. The *Webster* standard does not allow Higgs's *Brady* claim to proceed under § 2241.[4]

In *Webster*, the Seventh Circuit announced a three-part test for determining whether a claim of newly discovered evidence can satisfy the savings clause: "First, the evidence sought to be presented must have existed at the time of the original proceedings." *Webster*, 784 F.3d at 1140 n. 9. "Second, the evidence must have been unavailable at the time of trial despite diligent efforts to obtain it. Third, and most importantly, the evidence must show that the petitioner is constitutionally ineligible for the penalty he received." *Id*.

The Seventh Circuit found that Webster satisfied the savings clause because he presented "newly discovered evidence" that he was intellectually disabled "that would demonstrate that he [was] categorically and constitutionally ineligible for the death penalty" under the Supreme Court's decisions in *Atkins v. Virginia*, 536 U.S. 304 (2002), and *Hall v. Florida*, 572 U.S. 701 (2014). However, the Seventh Circuit emphasized that only "a rare case" will qualify under this exception. *Webster*, 784 F.3d at 1140.

The Seventh Circuit recently reiterated that, even after *Webster*, "there must be a compelling showing that, as a practical matter, it would be impossible to use section 2255 to cure a fundamental problem. It is not enough that proper use of the statute results in denial of relief."

---

[4]    Higgs does not argue that his *Brady* claim satisfies the *Davenport* savings clause standard, and in fact it cannot, as *Davenport* only applies to new decisions of statutory interpretation, and not to a constitutional decision such as *Brady*. *Brown*, 719 F.3d at 586.

*Purkey*, 964 F.3d at 615.  The *Purkey* Court declined to extend the *Webster* exception to Sixth

Amendment ineffective assistance of counsel claims, even though Purkey had "raised serious

arguments" about his counsel's representation.  *Id*. at 617.

Under the *Webster* test, the material proffered here as "newly discovered evidence" does

not qualify as such.  While some of this "evidence"—specifically that which concerns the

Creighton murder—may have existed at the time of trial and may have been unavailable to Higgs,

it was available and proffered to the district court in Higgs's Rule 60 Motion, which was part of

the § 2255 proceeding.  Because *Brady* claims can be, and often are, brought under § 2255, this

is not a situation where it is "impossible to use section 2255 to cure a fundamental problem."  *See*

*Purkey*, 964 F.3d at 615.

In any event, even if the purported "newly discovered evidence" truly qualified as new,

Higgs still could not meet the *Webster* test because the "evidence" does nothing to render Higgs

"constitutionally ineligible for the penalty he received."  *Webster*, 784 F.3d at 1140 n. 9.  First, as

this Court recently held:

> *Webster* only applies to claims that an individual is 'categorically ineligible for the
> death penalty,' such as claims under *Atkins* and *Roper*.[5]  *Webster*, 784 F.3d at 1138-
> 40; *see id*. at 1140 n. 9 ("Because the Supreme Court has declared only two types
> of persons (minors and the intellectually disabled) categorically ineligible for a
> particular type of punishment, our ruling is as a matter of law limited to that set of
> people—those who assert that they fell into one of these categories at the time of
> the offense.").

---

[5]    In *Roper v. Simmons*, the Supreme Court held that imposition of "the death penalty on
offenders who were under the age of 18 when their crimes were committed" violates the Eighth
and Fourteenth Amendments.  *Roper v. Simmons*, 543 U.S. 551, 578 (2005).

24

*Purkey v. United States*, No. 2-19-CV-00414-JPH-DLP, 2019 WL 6170069, at \*7 (S.D. Ind. Nov. 20, 2019), aff'd, 964 F.3d 603 (7th Cir. 2020), *reconsideration denied*, 812 F. App'x 380 (7th Cir. 2020), and *cert. denied*, 141 S. Ct. 196 (2020).

Second, even if the *Webster* were not limited to *Atkins-* and *Roper*-type claims, Higgs has not identified any authority stating that a *Brady* violation makes a defendant categorically ineligible for a death sentence—or for any other type of sentence, for that matter.  In fact, as Judge Easterbrook explained (without contradiction) in *Webster*, "*no one* contends that § 2255 is inadequate to resolve a claim of ineffective assistance, or for that matter a claim that material evidence has been withheld in violation of *Brady*."  *Webster*, 784 F.3d at 1151 (Easterbrook, J., dissenting).

### b.  In addition to Higgs's inability to satisfy the *Webster* standard, his *Brady* claim also lacks any merit.

Even if Higgs <u>could</u> get past the *Webster* test, his *Brady* claim is as speculative and unsupported now as it was when he raised it in his § 2255 motion and Rule 60 motion.  Simply stated, there cannot be any *Brady* violation because the government never requested, convinced, or otherwise persuaded the Baltimore City State's Attorney's Office to refrain from charging Victor Gloria, and any evidence that it did would in any event have been immaterial in light of the other disclosures to the jury about the benefits Gloria did receive.

In order for suppression of evidence to violate a defendant's due process rights, the evidence must be material.  *Brady*, 373 U.S. at 87.  To be "material," evidence must be such as would create a "reasonable probability" of a different outcome at trial.  *United States v. Bagley*, 473 U.S. 667, 682 (1985).  Promises made by the government in consideration for testimony can be material, but only if they meet this "reasonable probability" standard.  *Giglio v. United States*,

25

405 U.S. 150, 154 (1972). The "newly discovered evidence" Higgs now relies upon simply does not show that a *Brady* violation occurred, for multiple reasons.

First, he still has not shown that the benefits he alleges were actually conferred. Higgs asserts that the Assistant United States Attorney (AUSA) assigned to his case contacted the Assistant State's Attorney (ASA) in Baltimore City and convinced the ASA not to charge Gloria in relation to the homicide of Martelle Creighton, in order to preserve Gloria's status as a witness in the Higgs case. Higgs bases his claim largely on documents that reflect contact between the ASA and the AUSA. Petition at 12-14. However, the communications show nothing more than the unexceptional fact that the ASA and local law enforcement had some communications with the AUSA and federal law enforcement, and that the AUSA provided information that could be relevant to the State homicide investigation.[6] *See* ECF No. 13-21 (Exhibit Twenty-One, note from ASA Mark Cohen to Baltimore homicide detective Robert Patton) and ECF No. 13-22 (Exhibit Twenty-Two, report by Det. Robert Patton). There is no indication in any of Higgs's exhibits that federal authorities requested any action by the Baltimore City prosecution team. *See* ECF Nos. 13-1 through 13-32. Nor is there any evidence that the Baltimore City authorities agreed not to charge Victor Gloria. *Id.* Indeed, Higgs's own "evidence" belies the existence of such a request or promise. *See* ECF No. 13-21 (Exhibit Twenty-One, note by ASA Cohen stating "*we* will decide on the next course of action, that is either writ Gloria + charge him or talk to his lawyer about the case.") (emphasis added).

---

[6]   Higgs places great emphasis on the fact that the AUSA at first shared only that Gloria's federal plea agreement was sealed, and later shared that Gloria was testifying against Higgs. Petition at 14. What bearing that has on Higgs's case remains is unexplained. Higgs has not identified a law prohibiting the sharing of such information with local law enforcement.

Second, he still has not shown that the alleged non-disclosure of benefits offered to Gloria would have been material, and thus violated *Brady*. As discussed above, the exact same evidence was provided to the district court in support of the Rule 60 motion, and the court rejected the claim. Now, Higgs claims that "the district court denied the Rule 60(d) Motion . . . because it determined that Mr. Higgs was not entitled to relief under the stringent fraud-on-the-court standard." Petition at 19. But Higgs omits a key aspect of the district court's ruling. In addition to finding that "[t]here was no fraud on the Court during § 2255 proceedings," the district court also "reiterate[d]" its prior finding about materiality:

> Even were the Court to find that the prosecution failed to turn over any of this evidence, and again assuming the factual accuracy of the supposed benefits, Higgs has not demonstrated its materiality. Gloria's credibility as a witness was thoroughly explored and impugned by Higgs' counsel through vigorous cross-examination. Gloria openly confessed to an extensive criminal history, going so far as to state that "if it is going to help Victor Gloria, Victor Gloria will do whatever he has to do." Unquestionably counsel established that Gloria was a witness of dubious reliability, whose testimony the jury could weigh accordingly. *In other words, any evidence that Gloria may have received consideration for his testimony beyond that disclosed by the Government could not have further undermined his already low credibility, nor would it have created a "reasonable probability" of a more favorable verdict.*

*Higgs*, 193 F. Supp. 3d at 513-14 (quoting *Higgs*, 711 F.Supp.2d at 508).

Thus, as the Rule 60(b) ruling makes clear, even if Higgs' allegations were not speculative and false, they still would not establish a *Brady* violation, because there is no "reasonable probability" that the outcome of trial would have been different if the evidence on which Higgs relies had been presented to the jury. That reflects not just the fact that the additional impeachment evidence would have had no effect on Gloria's "already low credibility," *Higgs*, 711 F.Supp.2d at 509, but also the district court's finding—which Higgs simply ignores—that Gloria's testimony

27

was "corroborated by the testimony of several other witnesses as well as physical evidence." *Id.*

at 501. Specifically, the court found:

> In addition to Gloria's testimony, highly damaging evidence included:
>
> > 1. Enidsia Darby's statement that Higgs told her that the victims were killed because Tanji Jackson was "snitching on one of them [Higgs or Haynes]." TT. Sept. 29, 2000 [Paper No. 355], at 33-35;
> >
> > 2. Higgs' attempt to manufacture alibis for himself by urging Phyllis Smith and Enidsia Darby to lie to investigators as to his whereabouts at the time of the murder, *Id.* at 31; TT. Sept. 29, 2000 [Paper No. 426], at 31-37;
> >
> > 3. Higgs' statement to Dominick Williams that he could not plead guilty to the Chaconia Nightclub shooting because he feared that the bullets found at that crime scene could be linked to those used to kill Black, Chinn, and Jackson—a statement tantamount to a confession, TT. Oct. 4, 2000, at 34;
> >
> > 4. Higgs' admission to Williams that the women were killed because they were "tripping," TT. Oct. 4, 2000, at 44-46;
> >
> > 5. Higgs's suggestion to Williams that his friends would stop Gloria from testifying, presumably by intimidating or killing him, *Id.* at 44, 49; and
> >
> > 6. Testimony from various witnesses that Higgs owned and had previously fired a .38 caliber gun, the same caliber used in the murders.
>
> *Id.* at 501.

Higgs's claims continue to lack the materiality necessary for a *Brady* claim, as the district

court has repeatedly explained. For all the reasons discussed herein, Higgs fails to satisfy the

*Webster* savings clause standard.

> **2.  Claim Two: Higgs's allegation that his Indictment did not adequately charge him with a capital offense likewise fails to satisfy the savings clause, and lacks merit.**

Higgs's second claim is likewise barred by § 2255, in addition to lacking merit. He alleges

that "the indictment did not charge a capital offense and, therefore, the trial court lacked

28

jurisdiction to try Mr. Higgs for capital offenses." Petition at 32. But, beyond the fact that Higgs has already litigated and lost this claim on direct appeal and in his § 2255 motion, and therefore cannot raise it again in the instant petition, *see* Section I.B., *supra*, this claim fails to satisfy the savings clause for multiple reasons.[7]

### a. The *Davenport* standard does not allow Higgs's Fifth Amendment claim to proceed under § 2241.[8]

Higgs argues that § 2255(e) permits him to assert his claim of a defective indictment in his present § 2241 petition because it depends on the Supreme Court's decision in *Alleyne*, which post-dated the conclusion of his § 2255 proceedings. *See* Petition at 45-46. In *Davenport*, the Seventh Circuit "established a three-part test to determine whether a petitioner satisfies § 2255(e)'s savings clause" through reliance on an intervening decision. *Chazen*, 938 F.3d at 856 (citing *Montana*, 829 F.3d at 784). It identified three requirements a habeas petitioner must meet in order to do so:

1. the claim relies on a statutory interpretation case, not a constitutional case, and thus could not have been invoked by a successive § 2255 motion;

2. the petitioner could not have invoked the decision in his first § 2255 motion and the decision applies retroactively; and

3. the error is grave enough to be deemed a miscarriage of justice.

*Id.* (quoting *Beason*, 926 F.3d at 935).

---

[7]   The Seventh Circuit has not yet decided whether to apply the substantive law of the circuit-of-confinement or the circuit-of-conviction. *Chazen v. Marske*, 938 F.3d 851, 864-65 (7th Cir. 2019) (Barrett, J., concurring). The choice-of-law issue is not decisive here, and the government cites both Fourth and Seventh Circuit precedent when available.

[8]   Higgs's second claim does not implicate *Webster* because he does not rely on newly discovered evidence. *Webster*, 784 F.3d at 1140 n. 9.

Because these three factors derive from *Davenport*, they are often colloquially referred to as the "*Davenport* factors." *Camacho v. English*, 872 F.3d 811, 815 (7th Cir. 2017); *see also Chazen*, 938 F.3d at 856. Higgs cannot satisfy any of them.

### i. Higgs relies on the Fifth Amendment and related constitutional decisions.

To fall within the *Davenport* exception, a prisoner such as Higgs must first show "that he relies on a 'statutory-interpretation case,' rather than a 'constitutional case.'" *Brown*, 719 F.3d at 586. That requirement reflects the fact that Congress itself has provided distinct requirements for assertion of new *constitutional* claims, *see* 28 U.S.C. 2255(h)(2), which Higgs does not contend he can satisfy.

Higgs fails this first *Davenport* requirement because, as he states in his brief supporting his § 2241 petition, his claim rests on the constitutional argument that the alleged defect in his Indictment was a "deprivation of his basic Fifth Amendment rights." Petition at 33. Rather than asserting a change in statutory interpretation, Higgs's claim rests entirely on the Fifth Amendment and various constitutional decisions by the Supreme Court, including, *inter alia*, *Stirone v. United States*, *Apprendi v. New Jersey*, *Ring v. Arizona*, and *Alleyne v. United States*. Petition at 33-35.

The fact that Higgs's claim relies entirely on the Fifth Amendment and related constitutional cases precludes him from showing that § 2255 is inadequate or ineffective to address his argument; if, as Higgs argues, he is entitled to relief under *Alleyne*, then 28 U.S.C. 2255(h)(2) would have allowed him to seek such relief by filing a second or successive § 2255 motion within a year of the Supreme Court's decision. *See* 28 U.S.C. 2255(f)(3). Indeed, the Seventh Circuit has expressly held in analogous circumstances that a "§ 2241 petition fails the first *Davenport* condition because *Alleyne* is a constitutional case, not a statutory-interpretation case." *Poe v.*

30

*LaRiva*, 834 F.3d 770, 773 (7th Cir. 2016).  The same principle applies to all the constitutional cases Higgs relies upon.

With no recourse under *Davenport*, Higgs contrives a case-specific exception.  He claims that § 2255 must be inadequate because the Fourth Circuit denied this same claim on direct appeal. *See* Petition at 46 ("Mr. Higgs is foreclosed from seeking relief through § 2255 because the relitigation bar precludes him from raising issues that have been addressed on direct appeal.").

But Higgs incorrectly focuses on outcomes.  *See Taylor*, 314 F.3d at 835.  The 'relitigation bar' would not have prevented him from seeking relief under § 2255 within a year of *Alleyne* being decided, because there is an exception to the relitigation bar for intervening changes in the law.[9] *See United States v. Bennerman*, 785 F. App'x 958, 962-63 (4th Cir. 2019) (explaining that a change in the controlling law constitutes an exception to the law of the case doctrine) (citing *Aramony*, 166 F.3d at 661).  *See also* 28 U.S.C. § 2255(h)(2) (permitting successive § 2255 motions that *inter alia* "rel[y] on a 'new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court.'").  Indeed, numerous successive § 2255 motions have been authorized in light of *Johnson v. United States*, 135 S.Ct. 2551 (2015), regardless of whether petitioners had previously challenged their recidivist enhancements.

Thus, Higgs cannot merely point to his prior lack of success on direct appeal and in his § 2255 motion, because "something more than a lack of success" is needed.  *Webster*, 784 F.3d at

---

[9]     Higgs's claim would have failed because *Alleyne* does not actually entitle him to relief, as the Supreme Court did not overrule *Almendarez-Torres* in *Alleyne*.  *See* note 10, *infra*.  But that has nothing to do with the asserted insufficiency of § 2255.

31

1136.  Instead, he must make "a compelling showing that, as a practical matter, it would be impossible to use section 2255 to cure a fundamental problem." *Purkey*, 964 F.3d at 615.

### ii. Higgs relies on decisions that were available to him at the time of his § 2255 motion, with one exception – *Alleyne* – which is not retroactive.

Under *Davenport*, the savings clause also requires a habeas petitioner to establish that he "could not have invoked the decision in his first § 2255 motion" and that "the decision applies retroactively." *Chazen*, 938 F.3d at 856.  Nearly all of the cases Higgs now relies upon existed at the time of his § 2255 motion, filed in November 2005.  Thus, it cannot be said that this claim is novel or that it was impossible for Higgs to raise it in his § 2255 motion.  In fact, as discussed above, he did raise the same claim in his § 2255 motion, as well on direct appeal.  And, in its decision, the Fourth Circuit cited many of the decisions Higgs now relies on, including *Stirone*, *Apprendi*, and *Ring*.

The one exception to the availability bar is *Alleyne v. United States*, which was decided in 2013.  That decision, however, does not satisfy *Davenport*'s retroactivity requirement, which parallels the retroactivity analysis required by *Teague v. Lane*, 489 U.S. 288 (1989), in cases brought by state prisoners in federal court.  *See*, *e.g*., *Van Daalwyk v. United States*, 21 F.3d 179, 180 (7th Cir. 1994) (holding retroactively principles articulated in *Teague* apply to collateral challenges to federal convictions); *Worman v. Entzel*, 953 F.3d 1004, 1009 (7th Cir. 2020) ("The north star precedent on the question of retroactivity in the law of habeas corpus came in *Teague v. Lane*").

"New constitutional rules are generally not retroactive for cases on federal habeas review." *Smith v. Comm'r, Alabama 'Dep't of Corr*., 924 F.3d 1330, 1338 (11th Cir. 2019), *cert. denied sub nom. Smith v. Dunn*, 141 S. Ct. 188, 207 L. Ed. 2d 1115 (2020) (citing *Teague*, 489 U.S. at

32

288).  And Higgs identifies no court that has held otherwise with respect to *Alleyne*.  On the contrary, the Seventh Circuit has observed that the Supreme Court has "decided that other rules based on *Apprendi* do not apply retroactively on collateral review," which "implies that the Court will not declare *Alleyne* to be retroactive," either.  *Simpson v. United States*, 721 F.3d 875, 876 (2013) (mem.).  *See also*, *e.g.*, *Camacho*, 872 F.3d at 814 ("Because neither *Alleyne* nor *Apprendi* has been found to be retroactive on collateral review, Camacho may not advance this claim in his § 2241 petition.").  And the Fourth Circuit has held the same.  *United States v. Stewart*, 540 Fed. Appx. 171 (4th Cir. 2013) ("*Alleyne* has not been made retroactively applicable to cases on collateral review.") (per curiam) (unpublished).[10]

Accordingly, Higgs fails to satisfy the second prong of the *Davenport* test.

### iii.   There was no miscarriage of justice.

The third condition for a prisoner to satisfy the *Davenport* test is that there must have been "a grave enough error to be deemed a miscarriage of justice."  *Brown*, 719 F.3d at 586.  Higgs did not suffer a miscarriage of justice for the reasons explained by the Fourth Circuit upon affirmance of his convictions and sentences on direct appeal.  *See Higgs*, 353 F.3d at 295-307.

Higgs asserts that he "was not charged with a capital offense because the indictment returned against him did not adequately allege a single statutory aggravator."  Petition at 35.  Specifically, he claims that the "multiple killings" aggravator that was presented to the grand jury

---

[10]    Higgs's reliance on *Alleyne* is also unavailing for the additional reason that *Alleyne* does not apply to "the fact of a prior conviction."  *Alleyne*, 570 U.S. at 111 n.1.  As the Supreme Court acknowledged in *Alleyne*, *Almendarez-Torres* held that the fact of prior convictions need *not* be included in the indictment as an element of the offense.  *See id.*; *see also Almendarez-Torres*, 523 U.S. at 228.  The Court did not overrule *Almendarez-Torres* in *Alleyne*, and this Court is accordingly bound by *Almendarez-Torres*, notwithstanding Higgs's criticisms of that decision.  *See* Petition at 40-42.

"did not render the counts death-eligible because of the Ex Post Facto Clause." *Id.* He also argues that "the grand jury was neither presented with nor passed upon the death during commission of a kidnapping aggravator." *Id.* at 36. And he argues that "*Alleyne* makes clear that prior conviction aggravators are elements of the capital offense and must be alleged in the indictment." *Id.* at 39.

As discussed above, these claims are identical to those raised on direct appeal, and in Higgs's § 2255 motion, and should dismissed on that basis alone. *See* Section I.B., *supra.* Indeed, the Fourth Circuit held that the "elements of the offense of conviction have been charged in the indictment, submitted to the jury, and proven beyond a reasonable doubt." *Higgs*, 353 F.3d at 299. And even if the Court were to consider Higgs's claims on the merits, they should be rejected for the same reasons as before.

The Fourth Circuit explained, and Higgs no longer disputes, that "so long as one statutory aggravating factor is alleged in the indictment and the petit jury finds that statutory aggravating factor to exist, the indictment is not defective as to the capital offense charged." *Id.* at 299. And here, the multiple killings factor was not the only aggravating factor alleged in the indictment. *See id.* at 301. Specifically, as the Fourth Circuit recognized:

> The indictment is not defective as to the first-degree murder charges because it sufficiently alleged the "death during commission of another crime" aggravator. The indictment specifically alleges that Higgs killed the three women "in the perpetration of, and attempted perpetration of a felony, to wit, kidnapping," J.A. 136, 141, 146, and charges further that Higgs "did knowingly, willfully and unlawfully seize, confine, inveigle, decoy, kidnap, abduct, carry away and hold [the women] for a reason which was of benefit to [him]." J.A. 138, 143, 148. Because the indictment charges facts supporting at least one aggravating factor, it is not defective as to the six capital murder counts charged under § 1111(a).

*Id.*

34

Higgs improperly seeks to relitigate the Fourth Circuit's reading of the indictment, *see* Petition at 36-38, arguing that the relevant counts of the indictment failed to make their incorporation of allegations offered elsewhere in the indictment sufficiently express. *See* Petition at 36-38. Higgs identifies no reason that he could not have made that same argument in his direct appeal or § 2255, nor does he identify any Fourth Circuit (or Seventh Circuit) precedent adopting the stringent express incorporation requirement on which his present briefing relies. But even if Higgs *could* show that the relevant counts of the indictment should have made the incorporation of allegations found elsewhere in the document express, Higgs cannot demonstrate that the omission of an express incorporation clause in an indictment that, taken as a whole, places the defendant on notice of all the necessary allegations creates the sort of "miscarriage of justice" that Seventh Circuit precedent requires. *Brown*, 719 F.3d at 586. On the contrary, as the Fourth Circuit found, "[e]ven assuming that the indictment was defective because it failed to allege the requisite statutory aggravating factor or factors, Higgs would not be entitled to have his convictions or sentences overturned" because any error would have been harmless. *Higgs*, 353 F.3d at 304-07.

Accordingly, no miscarriage of justice occurred here, and Higgs's claims again challenging the sufficiency of his Indictment must be dismissed.

## II.    Higgs's Delay In Bringing His Present Claims Provides An Independently Sufficient Basis For Denying A Stay

Beyond Higgs's failure to establish a significant likelihood of success on his claims, his motion for a stay of execution should also be denied for the independently sufficient reason that Higgs has engaged in inequitable delay in seeking it.

The Supreme Court has repeatedly emphasized that the public has a "powerful and legitimate interest in punishing the guilty," *Calderon v. Thompson*, 523 U.S. 538, 556 (1998)

35

(citation omitted), and that "[b]oth the [government] and the victims of crime have an important interest in the timely enforcement of a [death] sentence," *Bucklew v. Precythe*, 139 S. Ct. 1112, 1133 (2019) (quotation marks omitted); *see Nelson v. Campbell*, 541 U.S. 637, 650 (2004) (describing "the [government]'s significant interest in enforcing its criminal judgments"); *Gomez v. United States Dist. Court*, 503 U.S. 653, 654 (1992) (per curiam) (noting that "[e]quity must take into consideration the [government]'s strong interest in proceeding with its judgment"). And in light of that interest, the Court has held that a court considering a stay of execution "must . . . apply 'a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay.'" *Hill v. McDonough*, 547 U.S. 573, 584 (2006) (quoting *Nelson*, 541 U.S. at 650).

That strong equitable presumption applies with full, dispositive force here. Higgs's *Brady* claim relies on evidence that he concedes has been in his possession since 2012, and his argument that he should be permitted to relitigate his claim of indictment error rests on the Supreme Court's 2013 decision in *Alleyne*. If Higgs believed those claims had merit, there would have been no legitimate basis for delaying in his assertion of them for more than seven years. Instead, his assertion of those claims at this late date—along with a new request for an evidentiary hearing and "all necessary discovery," Petition at 48—represents a transparent attempt to simply accomplish further delay in carrying out his sentence, notwithstanding the claims' underlying lack of merit. This Court should not countenance that sort of gamesmanship, and should instead permit the United States to carry out as scheduled the lawfully imposed sentence that Higgs received for the horrific premediated murder of three innocent young women.

36

## CONCLUSION

For the foregoing reasons, Higgs's motion to stay execution should be denied with prejudice.

Respectfully submitted,

Josh J. Minkler
United States Attorney

By:     _____/s/_____
Ellen E. Nazmy
Special Assistant United States Attorney
6500 Cherrywood Lane, Suite 200
Greenbelt, Maryland 20770
Telephone: (301) 344-4433
E-mail: Ellen.Nazmy@usdoj.gov


_____/s/_____
Sandra Wilkinson
Special Assistant United States Attorney
6500 Cherrywood Lane, Suite 200
Greenbelt, Maryland 20770
Telephone: (301) 344-4433
E-mail: Sandra.Wilkinson@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on January 4, 2021, a copy of the foregoing Return to Order to Show Cause was filed electronically.  Service of this filing will be made on all ECF-registered counsel by operation of the court's electronic filing system.  Parties may access this filing through the court's system.

By:    _____/s/_____
Ellen E. Nazmy
Special Assistant United States Attorney
6500 Cherrywood Lane, Suite 200
Greenbelt, Maryland 20770
Telephone: (301) 344-4433
E-mail: Ellen.Nazmy@usdoj.gov