**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION**

_____

DUSTIN HIGGS,

                Petitioner,

      v.

T.J. WATSON, Warden,
Federal Correctional Complex, Terre Haute,

                Respondent.

_____

)
)
)
)
)
)
)
)
)
)
)
)
)

No. 2:20-cv-00665-JPH-DLP

**DEATH PENALTY CASE**

\*EXECUTION SCHEDULED
FOR JANUARY 15, 2021\*

_____

**REPLY TO RESPONDENT'S OPPOSITION TO PETITIONER'S
MOTION FOR A STAY OF EXECUTION**

_____

Petitioner, Dustin Higgs, through counsel, respectfully submits this reply to the government's opposition to Mr. Higgs's Motion for a Stay of Execution. ECF Nos. 15 & 18.

**ARGUMENT**

I.    **Mr. Higgs Has Demonstrated a Likelihood of Success on the Merits of his *Brady* Claim and that Relief is Appropriate under 28 U.S.C. § 2241.**

After Mr. Higgs's initial § 2255 proceedings had been completed, he discovered evidence that, prior to his trial, federal authorities had contacted state authorities and sought to persuade them that its key witness, Victor Gloria, had not committed an unrelated murder then under investigation by state authorities. At the time, Mr. Gloria was a suspect in that killing, after being named as the perpetrator by several witnesses.

The government did not reveal its actions to the defense at trial. And even when Mr. Higgs sought to raise a similar claim in § 2255 proceedings, despite the absence of documentary evidence, the government continued to hide its interactions with state law enforcement officials on Mr. Gloria's behalf. The evidence of those interactions was not revealed until Mr. Higgs's lawyers gained access to a state police file after § 2255 proceedings were complete. Until then, review of the evidence subsequently discovered, and now before this Court, was impossible.

Having successfully blocked review of the evidence it hid during the initial § 2255 proceedings, the government now seeks to be rewarded for having successfully hidden this evidence for so long. In its view, there is no vehicle that would allow Mr. Higgs to litigate a claim that the suppression of the evidence detailing its interactions with state officials violated his due process rights under *Brady v. Maryland*, 373 U.S. 83 (1963). If the government has its way, it will execute Mr. Higgs without meaningful judicial review of its suppression of relevant, material evidence found therein.

The government's effort to avoid review of its ethical and constitutional failures violates the fundamental principles underlying the *Brady* doctrine. "Prosecutors' dishonest conduct or unwarranted concealment should attract no judicial approbation." *Banks v. Dretke*, 540 U.S. 668, 696 (2004).

Prosecutors play a special role in the criminal justice system. Their obligation to refrain from improper conduct must be faithfully observed. *Id.; Berger v. United States,* 298 U.S. 78, 88 (1935). Nowhere is this more important than in a capital case; the duty to enforce *Brady* "with painstaking care is never more exacting than it is in a capital case." *Kyles v. Whitley*, 514 U.S. 419, 422 (1995). There should be no reward for a prosecutor's violation of *Brady*; no escaping judicial review of its misconduct. Section 2241 must stand as a safeguard to avoid such a result.

However, the government argues that Mr. Higgs failed to timely seek review of the *Brady* claim raised in his § 2241 petition and that this "delay" provides an "independently sufficient reason" for denying the motion for a stay of execution. *See* ECF No. 18 at 35–36 (Gov't Resp.). This argument ignores the fact that the government's own actions are the very reason that Mr. Higgs has not yet received a merits ruling on this claim, despite repeated and timely attempts to obtain such a review.

Mr. Higgs has pursued every available opportunity to have his claim heard in a timely manner. As detailed in the habeas petition and motion for stay, Mr. Higgs sought to litigate a similar claim in § 2255 proceedings even before the suppressed evidence was discovered. After discovery of the suppressed evidence, he sought to re-open his initial § 2255 proceedings through a Rule 60(d) motion and sought additional evidence to support a claim through Freedom of Information Act requests and litigation.

Contrary to the government's assertions, Mr. Higgs has not sat on his hands, or otherwise sought to delay review of these serious *Brady* violations. Mr. Higgs promptly and repeatedly sought review of the claim presented in this § 2241 petition. At every step, the government opposed any careful scrutiny or review of its conduct. Mr. Higgs's inability to obtain a merits review of this claim is directly attributable to the government's active concealment of the relevant information through the duration of the § 2255 proceedings. Given these circumstances, it is inappropriate for the government to invoke equitable principles to argue that Mr. Higgs should have discovered this evidence sooner or somehow obtained a merits ruling on this claim at an earlier stage.

On the merits, the government argues that there could be no *Brady* violation because there is no evidence that the government actually conferred any benefits upon Mr. Gloria. ECF

No. 18 at 26 (Gov't Resp.). The government does not deny that federal authorities had discussions with state authorities about the Baltimore murder, or that the federal authorities provided information supporting the view that Mr. Gloria was not responsible for the murder. Nonetheless, the government argues that because there is no evidence that it affirmatively requested benefits for Mr. Gloria from state authorities or that state authorities agreed to provide those benefits in response, the government had no duty to disclose these contacts with state authorities. *Id.* This argument misconstrues *Brady.*

No formal request or agreement is necessary to show a witness's bias and motivation to testify favorably for the government. The "thrust" of *Brady* "has been to ensure that the jury knows the facts that might motivate a witness on giving testimony." *Brown v. Wainwright*, 785 F.2d 1457 (11th Cir. 1986). It is up to the jury to decide whether the government's actions, be they formal or informal, direct or implicit, create doubts about a witness's credibility. *Wearry v. Cain,* 136 S. Ct. 1002, 1006-07 (2016) (witness's efforts to obtain a benefit were material even though no deal was ever struck).

No hard-and-fast guarantee is required, and merely the "possibility of a reward" requires disclosure. *United States v. Bagley*, 473 U.S. 667, 683 (1985); *see Tassin v. Cain*, 517 F.3d 770, 777 (5th Cir. 2008) (*Brady* claim established where there was no "firm promise of leniency," but only an understanding that witness "expected to gain beneficial treatment in sentencing"); *DuBose v. LeFevre*, 619 F.2d 973, 978 (2d Cir. 1980) (claim established where prosecutors had agreed to "do the right thing," with a misdemeanor plea possible). The government cannot hide evidence simply because it asserts there was no direct request for the state authorities to treat Mr.

Gloria favorably.[1] The thrust of the government's request was clear, no matter how indirectly it was made.

Additionally, no formal or specific agreement is required to trigger the constitutional demands of disclosure. *See, e.g.*, *LaCaze v. Warden La. Corr. Inst. for Women*, 645 F.3d 728, 735 (5th Cir. 2011); *Reutter v. Solem*, 888 F.2d 578, 582 (8th Cir. 1989); *Brown*, 785 F.2d at 1465. Under this approach, "[t]he fact that there was no agreement . . . is not determinative of whether the prosecution's actions constituted a *Brady* violation." *Reutter*, 888 F.2d at 582.

The government also relies on the Maryland district court's suggestion, in denying the Rule 60 motion, that Mr. Gloria's credibility was low even without the suppressed evidence. In the government's view, any additional evidence that could impeach Mr. Gloria's credibility was not material because trial counsel had attempted to impeach Mr. Gloria on other grounds. ECF No. 18 at 27–28 (Gov't Resp.). Such reasoning, however, is contrary to Supreme Court authority. *See e.g. Banks v. Dretke*, 540 U.S. 688, 702 (2004) (suppressed impeachment evidence was material even though witness was impeached on other grounds); *Wearry*, 136 S. Ct. at 1006–07 (suppressed evidence that could have been used to impeach key witness was material even though witness had been impeached with prior inconsistent statements). Courts of appeals have likewise rejected such arguments. *See, e.g., Douglas v. Workman*, 560 F.3d 1156, 1174 (10th Cir. 2009) (suppressed evidence that substantially enhances the impeachment evidence produced at trial will usually be material, even where the witness has been impeached on other grounds). Indeed, the fact that Mr. Gloria's credibility was already low only makes the government's suppression more harmful. With the key witness's credibility hanging by a thread, the federal

---

[1] An evidentiary hearing may be necessary to test the accuracy of these assertions. The need for a hearing to fully determine the facts underlying Mr. Higgs's claim provides additional reasons to grant a stay.

authorities' attempts to forestall the state from charging Mr. Gloria in a separate murder could have led a reasonable juror to cut that last thread.

The government does not dispute that Mr. Gloria's credibility was key to its case. Evidence that federal authorities contacted state authorities in an effort to convince them that, despite evidence to the contrary, Mr. Gloria did not commit the Baltimore murder, demonstrates that Mr. Gloria was beholden to those federal authorities and had ample motive to continue to seek help and support them by testifying against Mr. Higgs. In fact, after being contacted by federal authorities, the state authorities dropped their investigation into Mr. Gloria altogether. Such evidence would have allowed the jury to consider the lengths the government was willing to go to assist Mr. Gloria and, in turn, the length Mr. Gloria was willing to go to secure that assistance. This type of evidence could lead a juror to doubt the accuracy of Mr. Gloria's testimony. *Dennis v. Sec'y, Pa. Dep't of Corr.*, 834 F.3d 263, 299–300 (3d Cir. 2016) (en banc) (cross-examination does not equate to actual impeachment; suppression of impeachment evidence relating to key witness was material and violated *Brady* even though defense counsel at trial cross-examined and challenged her credibility); *Lambert v. Beard*, 633 F.3d 126, 134 (3d Cir. 2011), *judgment vacated on other grounds sub nom. Wetzel v. Lambert*, 132 S. Ct. 1195 (2012), *on remand,* 537 F. App'x 78 (3d Cir. 2013) (suppressed evidence of prior inconsistent statement material even though defense counsel impeached witness's credibility with other inconsistencies).

Indeed, the impeachment value of the suppressed evidence was particularly strong. Mr. Gloria was a suspect in a murder, and if so charged, would have faced the possibility of imprisonment for life. The seriousness of the potential charges provided him with especially strong motivation to cooperate with those trying to help him. *United States v. Salem*, 578 F.3d

682, 689 (7th Cir. 2009) ("to say that there is no reasonable probability that the jury could reach a different result, even if the evidence showed that the government's star witness was never charged for his direct involvement in a violent gang murder, ignores the differences between the drug and gun crimes about which [the star witness] was questioned [at trial] and [his undisclosed involvement in a] first-degree homicide.").

The government further contends that the suppressed evidence is not material because there was some other evidence that corroborated Mr. Gloria's testimony. ECF No. 18 at 28 (Gov't Resp.). But that is not the test of materiality, and the Supreme Court has granted relief in cases even where there was significant other evidence of guilt. *See e.g. Kyles*, 514 U.S. at 437 (suppressed evidence that could have been used to challenge the credibility of two of the governments' four main witnesses was material even though it did not impact the other two witnesses). Here, the corroborative evidence does not change the fact that the government's case rises or falls on Mr. Gloria's credibility, particularly with respect to the first degree murder charges, where Mr. Gloria's testimony supplied all of the critical evidence.

In support of its argument that § 2255 is adequate and effective, the government asserts that (1) *Brady* claims are often brought under § 2255 and (2) that the additional evidence of the government's *Brady* violations that Mr. Higgs uncovered after the conclusion of his § 2255 proceedings was "proffered to the district court in Higgs's Rule 60 Motion." Gov't Resp. at 24. The government suggests that in denying the Rule 60(d) motion the district court reached the merits of the newly discovered evidence of Mr. Higgs's *Brady* claim.

This argument disregards the important differences between the standard a district court applies when evaluating a *Brady* claim at the § 2255 stage and the stringent fraud on the court standard applicable to Mr. Higgs's Rule 60(d) motion. Fraud on the court is found only in "the

7

most egregious cases," such as "bribery of a judge or juror, or improper influence exerted on the court by an attorney, in which the integrity of the court and its ability to function impartially is directly impinged." *Great Coastal Express, Inc. v. Int'l Bhd. of Teamsters*, 675 F.2d 1349, 1356 (4th Cir. 1982). The movant must also prove the fraud by "clear and convincing evidence." *See Square Constr. Co. v. Wash. Metro. Area Transit Auth.,* 657 F.2d 68, 71 (4th Cir. 1981). Crucially, doing so also requires an "intentional plot to deceive the judiciary." *Fox v. Elk Run Coal Co.*, 739 F.3d 131, 136 (4th Cir. 2014).

The district court's denial of the 60(d) motion turned on these stringent standards: the district court held that Mr. Higgs could not prove by clear and convincing evidence the existence of an egregious intentional plot to deceive the court, the "high burden of proof required to grant a Rule 60(d) motion." *United States v. Higgs,* 193 F. Supp. 3d 495, 508 (D. Md. 2016).

*Brady*, however, does not require any proof of intentional government misconduct. Indeed, the prosecutor's state of mind is irrelevant. *See Kyles*, 514 U.S. at 437–38 (existence of *Brady* violation does not turn on good or bad faith of the prosecution); *Brady,* 373 U.S. at 87 (same). As such, a decision on whether the government defrauded the district court is not a substitute for a merits ruling on the new evidence of the *Brady* violation that remained concealed through the § 2255 proceedings. Simply put, a ruling on a Rule 60 motion does not equate to a merits ruling on a § 2255 petition. Mr. Higgs has not yet obtained a proper merits ruling on the new evidence of the *Brady* claim that, as a result of the government's misrepresentations, was not discovered until after the conclusion of his § 2255 proceedings.

Mr. Higgs has shown a significant possibility that his *Brady* claim will succeed. The government's misconduct should not escape review. His execution should be stayed.

**II.    Mr. Higgs is Likely to Succeed on the Merits of the Claim that His Indictment Did Not Charge a Capital Offense and, Therefore, the Trial Court Lacked Jurisdiction to Try Him for Capital Offenses.**

The government relies on a cramped misreading of the Seventh Circuit's Savings Clause cases to argue that Mr. Higgs's defective indictment claim cannot be reviewed under § 2241. The government contends that, to proceed under § 2241, Mr. Higgs must show that his claim either relies on an issue of statutory interpretation, as was the case in *In re Davenport*, 147 F.3d 605 (7th Cir. 1998), or on newly discovered evidence, as was the case in *Webster v. Daniels*, 784 F.3d 1123 (7th Cir. 2015). ECF No. 18 at 29–30 (Gov't Resp.). In other words, according to the government, the Savings Clause is only available where the facts closely align to those present in either *Davenport* or *Webster*.

However, the Seventh Circuit has rejected the idea that these two cases represent the only circumstances under which the Savings Clause is available. *See Purkey v. United States*, 964 F.3d 603, 611–12 (7th Cir. 2020) ("We do not agree with the idea that those cases [*In re Davenport*, *Garza*, and *Webster*] rigidly describe the outer limits of what might prove that section 2255 is 'inadequate or ineffective to test the legality' of a person's detention . . . ."). Rather, a petitioner need only show that § 2255 is "inadequate or ineffective" to challenge his conviction or sentence. And, just as the *Davenport* court found § 2255 to be inadequate where it denies the defendant the ability to challenge his imprisonment for a "nonexistent offense," 147 F.3d at 611, and the *Webster* court found § 2255 to be inadequate where it prevents the defendant from challenging his constitutionally prohibited sentence, § 2255 is inadequate here.

The government's response did not address Mr. Higgs's argument that § 2241 was available to challenge the jurisdiction of the trial court to impose a death sentence. A federal court has no jurisdiction, and thus no power, to sentence a defendant for a crime that was not

charged in an indictment. *Ex Parte Bain*, 121 U.S. 1, 13 (1887). The government's silence speaks volumes. Here, the indictment lacked any aggravating circumstance—the essential elements required for a death sentence—and thus did not charge him with a capital crime. Therefore, "[t]here was nothing before the court on which it could hear evidence or pronounce [a death] sentence. *Id.* at 13–14.

To reach a contrary conclusion requires an erroneous reading of the language in the Second Superseding Indictment and blind adherence to *Almendarez-Torres v. United States*, 523 U.S. 224 (1998). However, *Almendarez-Torres*'s "lonely exception," *United States v. McDowell*, 745 F.3d 115, 124 (4th Cir. 2014), to Sixth Amendment protections is irreconcilable with the Fifth and Sixth Amendment decisions handed down by the Supreme Court in the years following the direct appeal and § 2255 proceedings in Mr. Higgs's case.

The government argues that "the 'relitigation bar' would not have prevented [Mr. Higgs] from seeking relief under § 2255 within a year of *Alleyne* being decided, because there is an exception to the relitigation bar for intervening changes in the law." ECF No. 18 at 31 (Gov't Resp.). That argument, however, ignores the fact that the Supreme Court has not yet reached the question of whether *Alleyne* is retroactive on collateral review. *See Simpson v. United States*, 721 F.3d 875, 876 (7th Cir. 2013) ("Unless the Justices themselves decide that Alleyne applies retroactively on collateral review, we cannot authorize a successive collateral attack based on §2255(h)(2) or the equivalent rule for state prisoners, 28 U.S.C. §2244(b)(2)(A)."). Thus, the Savings Clause standard is met because § 2255 is unavailable to address this fundamental flaw and objections to jurisdiction can be raised at any point. *See Purkey*, 964 F.3d at 615 (the Savings Clause standard is met when there is "a compelling showing that, as a practical matter, it would be impossible to use section 2255 to cure a fundamental problem."); *Gonzalez v. Thaler*,

10

565 U.S. 134, 141 (2012) ("Subject-matter jurisdiction can never be waived or forfeited. The objections may be resurrected at any point in the litigation . . . .").

The government's attacks on the merits of this claim are likewise unavailing. First, the government appears to imply that the multiple killings aggravator was alleged in the indictment, and that fact alone demonstrates that Mr. Higgs's indictment was not defective. *See* ECF No. 18 at 33–34 (Gov't Resp.). But that aggravator was invalid in this case because the multiple killings aggravator was not added to the Federal Death Penalty Act as a statutory aggravator until April 1996, three months after the murders occurred. Indeed, the Fourth Circuit has correctly held that the government cannot rely upon the multiple killings as a statutory eligibility aggravator because doing so would violate the Ex Post Facto Clause. *Higgs*, 353 F.3d at 300–01 ("[W]e hold that the 'multiple killings' aggravator cannot act as the sole statutory aggravator which rendered these murders death-eligible.").

Second, contrary to the government's suggestion, both the Fourth and Seventh Circuit have held that each count must be treated as a separate indictment and read independent of each other, absent express incorporation by reference of other counts. *See United States v. Hooker*, 841 F.2d 1225, 1231 (4th Cir. 1988); *United States v. Gordon*, 253 F.2d 177, 180 (7th Cir. 1958) ("It is the universal rule, so far as we are aware, that each count in an indictment is regarded as if it was a separate indictment. . . . It is true, of course, that one count may be aided by incorporating the allegations of another count by reference.") (internal citations omitted). These principles apply with special force where, as here, some but not all counts contain an express incorporation by reference clause. *See Hooker,* 841 F.2d at 1231 (holding that inclusion of an expression incorporation clause in some but not all counts is "a particularly striking omission," because it shows "that the grand jury knew how to incorporate by reference if it so chose"). As

such, the government's argument that the murder counts absorbed by osmosis the allegations contained in other counts violates Fourth and Seventh Circuit precedent.

Third, the government asserts that, even assuming that the indictment was defective, any such error was harmless. *See* ECF No. 18 at 35 (Gov't Resp.). However, the government failed to offer any support for its bald assertion that the error was harmless, let alone to respond to Mr. Higgs's argument that the deprivation of the Fifth Amendment right to an indictment by grand jury is jurisdictional and "far too serious to be treated as nothing more than a variance and then dismissed as harmless error." *Stirone v. United States*, 361 U.S. 212, 217–18 (1960); *see also United States v. Farr*, 536 F.3d 1174, 1184–85 (10th Cir. 2008) (Gorsuch, J.) (Fifth Amendment violation resulting from a constructive amendment of the indictment was reversible error *per se* without any further showing of prejudice). The grand jury error was structural, and not subject to harmless error analysis.

12

WHEREFORE, for the foregoing reasons and those explained in his motion for a stay of execution and his second amended § 2241 Petition, Mr. Higgs respectfully requests that the Court stay his execution pending its consideration of his *Brady* and Fifth Amendment Indictment Clause claims.

Respectfully submitted,

/s/ Matthew C. Lawry
Matthew C. Lawry, Pa. Bar No. 87221
Assistant Federal Defender
Federal Community Defender Office
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
(215) 928-0520
Fax: (215) 928-0826
Matthew_Lawry@fd.org

Dated: January 7, 2021

**CERTIFICATE OF SERVICE**

I, Matthew Lawry, hereby certify that on this 7th day of January, 2021, the foregoing was filed electronically through ECF/CM. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system:

Ellen Nazmy
Sandra Wilkinson
Assistant United States Attorneys
Office of the United States Attorney
36 S. Charles Street, 4th Floor
Baltimore, MD 21201

/s/ Matthew C. Lawry
Matthew C. Lawry