UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| DUSTIN J. HIGGS, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) No. 2:20-cv-00665-JPH-DLP |
| | ) |
| T. J. WATSON, | ) |
| | ) |
| Respondent. | ) |

**ORDER DENYING MOTION FOR STAY OF EXECUTION**

Dustin John Higgs is a federal prisoner who is scheduled to be executed on January 15, 2021. He has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 and a motion to stay execution. In his petition, Mr. Higgs argues that the government suppressed evidence before trial and that the trial court lacked jurisdiction to sentence him to death because his indictment was deficient. Mr. Higgs previously raised these arguments in other cases and after being reviewed, those claims were rejected. The applicable law, specifically the savings clause, 18 U.S.C. § 2255(e), does not permit Mr. Higgs to raise those arguments again in this case. And even if he could, Mr. Higgs has not shown a strong likelihood that he can bring his claims in a 28 U.S.C. § 2241 petition. Mr. Higgs has not shown a strong likelihood of success and the other factors that the Court must consider do not weigh in his favor. The motion to stay execution is denied.[1]

---

[1] The District of Maryland, where Mr. Higgs was convicted and sentenced, has held that it cannot amend Mr. Higgs's judgment of conviction to specify that Mr. Higgs should be executed in accordance with Indiana law. *United States v. Higgs*, No. 8:98-cr-520, dkt. 657 (D. Md.

1

# I.

# FACTUAL AND PROCEDURAL BACKGROUND[2]

The United States Court of Appeals for the Fourth Circuit discussed the details of Mr. Higgs's crimes, trial, and sentencing on direct appeal. *United States v. Higgs*, 353 F.3d 281, 289–95 (4th Cir. 2003 ("*Higgs I*"). Most relevant to this petition is the summary of Mr. Higgs's convictions and sentences:

> [Mr. Higgs] was . . . convicted by a federal jury of three counts of first-degree premeditated murder, *see* 18 U.S.C.A. § 1111(a) (West 2000), three counts of first degree murder committed in the perpetration or attempted perpetration of a kidnapping, see *id.*, and three counts of kidnapping resulting in death, *see* 18 U.S.C.A. § 1201(a)(2) (West 2000), all of which are punishable by life imprisonment or death. [He] was also convicted of three counts of using a firearm "during and in relation to [a] crime of violence." 18 U.S.C.A. § 924(c) (West 2000). Ultimately, [Mr.] Higgs received nine death sentences under the Federal Death Penalty Act of 1994, one for each murder and kidnapping count, and a consecutive 45-year sentence for the firearm convictions. See 18 U.S.C.A. § 924(c)(1).

*Id.* at 289 (some citations omitted).

On appeal, Mr. Higgs argued, among other things, that "his capital convictions and death sentences must be vacated because the indictment failed to charge [him] specifically with . . . the aggravating factors required under 18 U.S.C.A. § 3592(c)." *Higgs I*, 353 F.3d at 295. While his direct appeal was pending, Mr. Higgs filed a motion for new trial based on alleged *Brady* violations

---

Dec. 29, 2020). That issue is not before the Court. *Id.* at 13. The government's appeal of that order is pending in the Fourth Circuit Court of Appeals, and Mr. Higgs has not withdrawn his motion to stay execution here.

[2] The district court aptly summarized relevant background information in *Higgs v. Daniels*, No. 2:16-cv-321-JMS-MJD, dkt. 42 (S.D. Ind. Apr. 30, 2020). Significant portions of the background section below are drawn directly from that order.

different from those at issue here. The Fourth Circuit affirmed the convictions and sentences imposed, and the district court denied the motion for new trial.

Mr. Higgs next filed a motion pursuant to 28 U.S.C. § 2255 in the United States District Court for the District of Maryland, raising the same arguments that he presents in this case. Specifically, Mr. Higgs argued that the government failed to disclose evidence of benefits purportedly offered in exchange for Victor Gloria's testimony. *United States v. Higgs*, 711 F. Supp. 2d 479, 507 (D. Md. 2010) ("*Higgs II*"). He also raised the same insufficiency of the indictment argument that he made on direct appeal. *Id.* at 537. The district court denied the motion, and the Fourth Circuit affirmed. *United States v. Higgs*, 663 F.3d 726 (4th Cir. 2011).

Mr. Higgs later filed an application in the Fourth Circuit to file a second or successive § 2255 motion raising claims unrelated to those presented here. The Fourth Circuit denied leave to file.

In August 2016, Mr. Higgs filed a § 2241 petition for a writ of habeas corpus in this Court alleging that his § 924(c) convictions violate due process. This Court denied habeas relief. On January 11, 2021, the Seventh Circuit Court of Appeals affirmed.

On December 14, Mr. Higgs filed a *pro se* petition for writ of habeas corpus. He has since filed two amended petitions—the latest one filed by counsel. The second amended petition raises two claims: (1) that the government suppressed evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963); and (2) that the trial court lacked jurisdiction to impose a sentence of death.

3

## II.

## DISCUSSION

A motion for stay of execution requires the Court to consider four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009).

### A. Likelihood of Success

Both the Seventh Circuit and Supreme Court have rejected the "better than negligible" standard for a showing of likely success on the merits. *See Purkey v. United States*, 964 F.3d 603, 618 (7th Cir. 2020). Instead, Mr. Higgs must make a strong showing that he is likely to obtain relief. Because this is a § 2241 petition, he must make a strong showing (1) that there is a "structural problem" with § 2255 that prevented him from raising the issues that he presents in this case and (2) that he would be entitled to relief on the merits if the issues he raises were relitigated. *Lee v. Watson*, 2019 WL 6718924, at *1 (7th Cir. Dec. 6, 2019).

### 1. § 2255 and the Savings Clause

"As a general rule, a federal prisoner wishing to collaterally attack his conviction or sentence must do so under § 2255." *Chazen v. Marske*, 938 F.3d 851, 856 (7th Cir. 2019). Congress created within § 2255 a narrow exception to the "general rule" that requires a federal prisoner to bring a collateral attack

under § 2255. Section 2255(e), aptly described by the Seventh Circuit as the "savings clause" and the "safety valve," "recognizes a narrow pathway to the general habeas corpus statute, section 2241." *Purkey*, 964 F.3d at 611; *see Webster v. Daniels*, 784 F.3d 1123, 1135 (7th Cir. 2015) (en banc).

Under the savings clause, a prisoner can seek a writ of habeas corpus under § 2241 only if the prisoner can show "that the remedy by [§ 2255] motion is inadequate or ineffective to test the legality of his detention." 28 U.S.C. § 2255(e). Without that showing, a district court cannot reach the merits of the arguments raised in the petition. *Id.* (petition otherwise "shall not be entertained"); *Webster*, 784 F.3d at 1124 (petition "must be dismissed at the threshold" if § 2255(e) is not satisfied).

The Seventh Circuit has identified three specific paths by which a claim may satisfy the savings clause—although these are not the only paths that may satisfy the savings clause. *See In re Davenport*, 147 F.3d 605, 611–12 (7th Cir. 1998) (claim relying on Supreme Court decision of statutory interpretation made retroactive to cases on collateral review); *Garza v. Lappin*, 253 F.3d 918, 921–23 (7th Cir. 2001) (claim relying on decision issued by international tribunal after § 2255 proceedings were completed); *Webster*, 784 F.3d at 1135–44 (claim relying on evidence that existed but was unavailable at the time of trial and showed that defendant was categorically ineligible for the death penalty). While the fact patterns of *Davenport, Webster* and *Garza* are not the only paths that may bring a claim within the scope of the savings clause, under any circumstance a petitioner must (at least) make "a compelling showing

5

that, as a practical matter, it would be impossible to use section 2255 to cure a fundamental problem" with the challenged conviction or sentence. *Purkey*, 964 F.3d at 615; *see Webster*, 784 F.3d at 1136 ("[T]here must be some kind of structural problem with section 2255 before section 2241 becomes available.").

      **2.**    **Likelihood of Satisfying the Savings Clause**

          **a.**    ***Brady* Claim**

Mr. Higgs alleges that the government violated due process by withholding evidence about (1) Mr. Gloria's status as a suspect in the Baltimore murder and (2) the government's intervention in the Baltimore Police Department's investigation of that crime. While Mr. Higgs previously raised this claim in his initial § 2255 motion, here he presents additional evidence that he has obtained since his initial § 2255 proceedings concluded. Mr. Higgs argues that § 2255 is inadequate or ineffective because it bars him from renewing his previously raised *Brady* claim after obtaining newly discovered evidence, which he alleges was suppressed by the government.

There is an established avenue under the savings clause to bring a claim based on newly discovered evidence. The newly discovered evidence must have (1) existed at the time of trial, (2) not been available to the petitioner through the exercise of diligence, and (3) demonstrate that the petitioner is categorically ineligible for the sentence imposed. *Webster*, 784 F.3d at 1139. Mr. Higgs has made a strong showing that his *Brady* claim satisfies the first two requirements. Although Mr. Higgs was able to present the evidence he obtained in 2012 from the Baltimore Police Department in a judicial proceeding (his Rule 60(d) motion),

that doesn't cure potential prejudice created by not having had the evidence available to use at trial or during the original 2255 proceeding. Rule 60(d) requires a showing of fraud on the court and does not provide a "full and fair opportunity to contest [a] conviction." *Collins v. Holinka*, 510 F.3d 666, 667 (7th Cir. 2007) (per curiam). Regardless, Mr. Higgs has not made a strong showing that he can satisfy *Webster*'s third requirement—that he is categorically ineligible for the death penalty.

Recognizing this obstacle, *see* dkt. 19 at 9, Mr. Higgs seeks to create a special rule for *Brady* claims within the context of § 2255(e) to discourage the government from suppressing evidence after trial. He contends that "section 2255 is inadequate because it allows the Government to violate *Brady* but still render relief impossible where the claim involves newly discovered evidence that was unavailable during the initial § 2255 proceeding." Dkt. 17 at 35.

The new evidence identified by Mr. Higgs is far from trivial because Mr. Gloria's testimony was crucial to the government's case. *Cf. Sims v. Hyatte*, 914 F.3d 1078, 1088 (7th Cir. 2019) ("[S]uppression of strong and non-cumulative evidence related to the credibility of an important witness is material under *Brady*, at least when the witness's testimony is critical to the prosecution's case."). The new evidence brings to light serious questions about the government's involvement in the Baltimore investigation of Mr. Gloria, as well as the non-disclosure of that information before trial. But that is not enough to show "that the remedy by [§ 2255] motion is inadequate or ineffective to test the legality of his detention." 28 U.S.C. § 2255(e).

To the contrary, § 2255(h) already provides petitioners an avenue for collateral relief based on newly discovered evidence. *See* 28 U.S.C. § 2255(h)(1) (allowing a second or successive petition based on "newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense"). Congress could have, but did not, include a *Brady* exception when it enacted § 2255 in 1996, well after *Brady* was decided.³ *Cf. Webster*, 784 F.3d at 1138 (finding savings clause available, in part, because "Congress could [not] have contemplated" petitioner's constitutional claim).

Because Mr. Higgs has not made a strong showing that he may raise his *Brady* claim in a § 2241 petition—under *Webster* or some other way—the Court cannot reach the merits of his claim. *Webster*, 784 F.3d at 1124.

### b.   Claim of Defective Indictment

Mr. Higgs alleges that the indictment did not charge a capital offense and that the trial court therefore lacked jurisdiction to try him for first-degree murder or kidnapping resulting in death. He argues that he can raise this claim in a § 2241 petition because he could not do so in a § 2255 motion after litigating it on direct appeal.⁴ Dkt. 17 at 50–51.

---

³ Subsection (h) was not denoted as such until 2008, but the language of § 2255(h)(1) was included in the 1996 amendments to § 2255.
⁴ Mr. Higgs *did* raise the claim in his § 2255 proceedings, and the district court rejected it both on procedural grounds and on the merits. *Higgs v United States*, 711 F. Supp. 2d 479, 538 (D. Md. 2010). The Court reads Mr. Higgs's petition as arguing that he is procedurally barred from raising his claim for a third time in a successive § 2255 motion.

8

No established savings clause path would allow Mr. Higgs to raise his claim in a § 2241 petition. The closest is that outlined *Davenport*: a claim based on a new, retroactive Supreme Court holding of statutory interpretation. 147 F.3d at 611–12. But Mr. Higgs relies on *Alleyne v. United States*, 570 U.S. 99 (2013), which held that any fact that increases the penalty for the crime is an "element" that must be charged in the indictment and found by a jury beyond a reasonable doubt. 570 U.S. at 103, 113–14. This is a constitutional holding not based on statutory interpretation, so it does not fit within *Davenport*.

Recognizing that his claim does not fit the *Davenport* path, Mr. Higgs argues that he may bring his claim under § 2241 because it challenges the jurisdiction of the district court to impose a death sentence. Dkt. 17 at 51. Specifically, he contends that a defective indictment deprives the trial court of subject matter jurisdiction. Dkt. 19 at 10–11.

But Mr. Higgs has not made a strong showing that his indictment was defective. The jury found three statutory aggravating factors that made Mr. Higgs eligible for the death penalty: (1) his prior conviction for a crime of violence, *see* 18 U.S.C. § 2592(c)(2); (2) his prior conviction for a serious federal drug offense, *see* 18 U.S.C. § 3592(c)12); and (3) the fact that he was convicted of multiple killings in a single criminal episode, *see* 18 U.S.C. § 3592(c)(16). *Higgs I*, 353 F.3d at 300. The "multiple killings" aggravator was not made a statutory aggravating factor until several months after Mr. Higgs's murders, so it could not form the basis for an adequate indictment of capital murder. *Id.* at 300–01. But the two other statutory aggravating factors are both "fact[s] of a prior conviction,"

9

which need not be alleged in the indictment. *Almendarez-Torres v. United States*, 523 U.S. 224, 226–27 (1998); *cf. Jones v. United States*, 526 U.S. 227, 243 n.6 (1999) ("[U]nder the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt.").

Mr. Higgs argues that *Alleyne* and its progeny cast doubt on *Almendarez-Torres*. But *Alleyne* expressly recognized the narrow exception for prior convictions and declined to revisit *Almendarez-Torres*. *Alleyne*, 570 U.S. at 111 n.1. Moreover, the Seventh Circuit has made clear that "*Almendarez–Torres* remains good law after *Alleyne*." *United States v. Brown*, 822 F.3d 966, 976 (7th Cir. 2016). Accordingly, Mr. Higgs has failed to show any defect in his indictment, let alone a fundamental defect in his conviction that might compel the creation of a new path for raising a claim under § 2241.

Even if Mr. Higgs could show a defect in the indictment, he has not made a strong showing that such a defect would have deprived the trial court of subject matter jurisdiction. *United States v. Muresanu*, 951 F.3d 833, 839 (7th Cir. 2020) ("[D]efects in an indictment do not deprive the court of subject-matter jurisdiction, and this is so even when the defect is a failure to state a federal offense."); *Hugi v. United States*, 164 F.3d 378, 380 (7th Cir. 1999) ("Subject-matter jurisdiction in every federal criminal prosecution comes from 18 U.S.C. § 3231, and there can be no doubt that Article III permits Congress to assign

10

federal criminal prosecutions to federal courts. That's the beginning and the end of the 'jurisdictional' inquiry.").

## B. Irreparable Harm, Public Interest, and Other Equitable Factors

While Mr. Higgs faces irreparable harm if the stay is denied, the public has an interest in the timely execution of criminal judgments. The public also has an interest in ensuring that the government does not suppress evidence from criminal defendants, and Mr. Higgs' *Brady* claim raises serious questions about a key witness regarding information that was not disclosed before trial.

The timing of this petition weighs against Mr. Higgs. He failed to bring his *Brady* and defective indictment claims earlier, even though nearly all the *Brady* evidence was in his possession in 2012 and *Alleyne* was decided in 2013.

Considering all the factors, most importantly Mr. Higgs's inability to make a strong showing that his claims are likely to succeed, the Court finds that a stay of execution is not warranted.

## III.

## Conclusion

Mr. Higgs's motion for stay of execution, dkt. [15], is **DENIED**.

**SO ORDERED.**

Date: 1/12/2021

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

Matthew C. Lawry
FEDERAL COMMUNITY DEFENDER
matthew_lawry@fd.org

Ellen Nazmy
UNITED STATES ATTORNEY'S OFFICE
ellen.nazmy@usdoj.gov

Sandra Wilkinson
UNITED STATES ATTORNEY'S OFFICE
sandra.wilkinson@usdoj.gov